IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONAL WILDLIFE FEDERATION, IDAHO WILDLIFE FEDERATION, WASHINGTON WILDLIFE FEDERATION, SIERRA CLUB, TROUT UNLIMITED, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, IDAHO RIVERS UNITED, IDAHO STEELHEAD AND SALMON UNITED, NORTHWEST SPORTFISHING INDUSTRY ASSOCIATION, FRIENDS OF THE EARTH, SALMON FOR ALL, and COLUMBIA RIVERKEEPER,

        Plaintiffs,

    vs.

NATIONAL MARINE FISHERIES SERVICE,

        Defendant,

  and

NORTHWEST IRRIGATION UTILITIES, PUBLIC POWER COUNCIL, WASHINGTON STATE FARM BUREAU FEDERATION, FRANKLIN COUNTY FARM BUREAU FEDERATION, GRANT COUNTY FARM BUREAU FEDERATION, and INLAND PORTS AND NAVIGATION GROUP,

        Intervenor-Defendants.

CV 01-640-RE

OPINION AND ORDER

Page 1

COLUMBIA SNAKE RIVER IRRIGATORS
ASSOCIATION and EASTERN OREGON
IRRIGATORS ASSOCIATION

     Plaintiffs,

    vs.               CV 03-1341-RE

DONALD L. EVANS, in his official capacity
as Secretary of Commerce, NOAA
FISHERIES, and D. ROBERT LOHN,
in his official capacity as Regional Director
of NOAA Fisheries,

     Defendants.

REDDEN, Judge:

  The matters before the court are the joint motions to consolidate these actions (doc. 481 in CV 01-640-RE and doc. 10 in CV 03-1341-RE).[1] For the reasons that follow, the court denies the motions.

## BACKGROUND

  In December 2000, defendant NOAA Fisheries issued a biological opinion (2000BiOp) pursuant to Section 7(a)(2) of the Endangered Species Act (ESA), 16 U.S.C. § 1536(a)(2), regarding the impact of Federal Columbia River Power System (FCRPS) operations on 12 salmon Evolutionary Significant Units (ESUs). NOAA Fisheries concluded that continuing FCRPS operations are likely to jeopardize the continued existence of, and to adversely modify the critical habitat of, eight salmon ESUs.

  To avoid jeopardy and adverse modification of critical habitat, the 2000BiOp proposed a reasonably prudent alternative (RPA). The RPA included short-term federal actions to modify hydro-power operations to improve the survival of salmon passing through FCRPS dams and reservoirs, and short- and long-term federal actions relating to mitigation activities affecting salmon habitat, hatchery, and harvest (three "Hs").

  The RPA also included short- and long-term non-federal, state, regional, tribal,

---

[1] The motions were filed on behalf of COLUMBIA SNAKE RIVER IRRIGATORS ASSOCIATION and EASTERN OREGON IRRIGATORS ASSOCIATION (Irrigators) in CV 03-1341-RE and National Marine Fisheries Services (now known as NOAA Fisheries) in both cases. NOAA has since withdrawn its support for consolidation.

Page 2 - OPINION AND ORDER

and private off-site mitigation actions, primarily related to the three "Hs," which if implemented would avoid jeopardy to the eight affected salmon ESUs.

The 2000BiOp authorizes incidental take of salmon related to FCRPS operations, but does not authorize incidental take of salmon related to the off-site mitigation activities.

## MOTION TO CONSOLIDATE

The motions to consolidate seek to consolidate <u>Columbia Snake River Irrigators Assoc. v. Evans</u>, CV 03-1341-RE (<u>Irrigators v. Evans</u>) with <u>National Wildlife Federation v. National Marine Fisheries Service</u>, CV 01-640-RE (<u>NWF v. NMFS</u>).

Fed. R. Civ. P. 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

A.   **Comparison of Cases**.

   1.   **NWF v. NMFS.**

In <u>NWF v. NMFS</u>, plaintiffs, non-profit environmental and conservation organizations, supported by several treaty tribes and the State of Oregon acting as *amici curiae,* challenged the 2000BiOp on the ground that NOAA Fisheries' no-jeopardy conclusion in the RPA relies on future federal, state, and private mitigation actions that have not undergone Section 7 consultations and/or are not reasonably certain to occur.

In addition, plaintiffs and the treaty tribes challenge the science used by NOAA Fisheries in supporting its no-jeopardy conclusion in the RPA. They assert as follows: (a) the analytical methodology used by NOAA Fisheries in the 2000BiOp does not rationally connect NOAA Fisheries' no-jeopardy conclusion with available scientific information and does not explain what weight it gave to all the relevant information available to it; (b) NOAA Fisheries' Incidental Take Authorization is flawed because NOAA Fisheries failed to track previously authorized incidental take of salmon and therefore is in no position to determine the effect on salmon of the actions now

authorized, which will involve an incidental take; (c) the 2000BiOp fails to ensure that the RPA will not jeopardize Snake River salmon because the juvenile fish transportation program whereby Snake River salmon smolt are collected and transported around the FCRPS dam system continues to jeopardize four Snake River salmon ESUs.

On May 7, 2003, this court granted the plaintiffs' motion for summary judgment. The court held the 2000BiOp's no-jeopardy opinion was arbitrary and capricious:

> [NOAA Fisheries'] reliance on federal range-wide, off-site mitigation actions that have not undergone section 7 consultation and non-federal range-wide, off-site mitigation actions which are not reasonably certain to occur was improper and, as to eight of the salmon ESUs, the no-jeopardy opinion in the RPA is arbitrary and capricious.

The court also concluded:

> [R]emand is appropriate in order to give [NOAA Fisheries] the opportunity to consult with interested parties to insure that only those range-wide off-site federal mitigation actions which have undergone section 7 consultation, and range-wide off-site non-federal mitigation actions that are reasonably certain to occur, are considered in the determination whether any of the 12 salmon ESUs will be jeopardized by continued FCRPS operations.

Opinion and Order, May 7, 2003, p. 26.

This court remanded the 2000BiOp to NOAA Fisheries for a period of one year. In a supplemental order dated July 3, 2003, the court set forth the parameters of the remand to NOAA Fisheries:

> The parties should keep in mind that, because the remand to the [NOAA Fisheries] was on the basis of threshold preliminary issues, the court has yet to address or make findings as to the science underlying the defendant agency's conclusions as to each of the threatened or endangered salmon species. The court therefore does not intend to delve into the science during the remand period.

Supplemental Order, July 3, 2003, p. 2.

The court also addressed its expectations regarding status and progress reports. Finally, the court stated:

> At the conclusion of the remand period, the court expects a final report that summarizes what progress has or has not been made to bring the 2000 Biological Opinion and its RPA into compliance with the requirements of the Endangered Species Act, and that identifies all
>
> mitigation actions, including hydropower, hatchery, and habitat actions, that will be undertaken to ensure that compliance.

Page 4  - OPINION AND ORDER

Id. at p. 3.

NOAA Fisheries took the position in the 2000BiOp that, absent further mitigation actions, the existence of at least eight salmon ESUs will be jeopardized by continued FCRPS operations. The plaintiffs' motion for summary judgment, NOAA Fisheries' response, and this court's opinion and order granting summary judgment all assume those salmon ESUs are jeopardized. The issue on summary judgment was whether the RPA proposed by NOAA Fisheries was sufficient to avoid that jeopardy. The remand to NOAA Fisheries is intended to create the opportunity for NOAA Fisheries to develop an RPA that includes future mitigation actions that are reasonably certain to occur and, therefore, reasonably certain to achieve the result of avoiding jeopardy to the salmon ESUs from continued FCRPS operations.

### 2.    Irrigators v. Evans.

Contrary to the premise of all parties in NWF v. NMFS that at least eight salmon ESUs are jeopardized by continued FCRPS operations in the absence of some form of RPA, the plaintiffs in this case allege the 2000BiOp is arbitrary and capricious because there is no basis for an opinion that continued FCRPS operations jeopardize any salmon ESUs. The plaintiffs allege that NOAA Fisheries acted arbitrarily and capriciously, and thereby violated Section 7(a)(2) of the ESA:  (a) by failing to use the best scientific and commercial data available to identify the effects of the agency action on salmon ESUs; (b) by demanding that the action agencies provide for the recovery of listed species without regard to the effects of the agency action; (c) by failing to use the best scientific and commercial data available to identify and evaluate the risk to salmon ESUs from continued FCRPS operations; and (d) by making decisions in the 2000BiOp in violation of the Administrative Procedure Act's rulemaking procedures set forth in 5 U.S.C. § 533.

In summary, the plaintiffs allege NOAA Fisheries' conclusion that salmon ESUs are jeopardized by continued FCRPS operations is wrong, and NOAA Fisheries violated the

ESA in reaching that conclusion.

**B.    Discussion.**

Plaintiffs in NWF v. NMFS strongly oppose consolidation. NOAA has also withdrawn its support for consolidation. See NWF v. NMFS, Steering Committee Meeting, February 12, 2004, Transcript of Proceedings, p. 8. This court concludes consolidation is not appropriate because although common questions of law and fact regarding the validity of the 2000BiOp are pending before the court arising from these two cases, substantial unnecessary costs and undue delay would accrue were the cases to be consolidated.

One week after the court issued its opinion on summary judgment in NWF v. NMFS, Irrigators sought to file an *amicus curiae* brief in that case to raise the same issues they now raise in Irrigators v. Evans and which they seek to consolidate with NWF v. NMFS. The court denied permission because the request for an *amicus* brief was untimely.

After the summary judgment was entered in NWF v. NMFS, the court ordered a one-year remand period for the purpose of trying to resolve the flaws the court found in the 2000BiOp. NOAA Fisheries, the plaintiffs, the intervenors, and the *amici* have worked diligently and expended considerable time and resources towards that goal. That time and effort would be substantially for nought if the court were to allow consolidation of the issues raised by plaintiffs here with the issues now pending in NWF v. NMFS. In light of the allegations the plaintiffs make in this case, any consolidation of the case with NWF v. NMFS would also require the court to reconsider its ruling on summary judgment. As a consequence, there would be a substantial delay in making a final decision on the continuing validity of the 2000BiOp.

The court concludes the plaintiffs have failed to establish that such a delay would be justified, particularly since the plaintiffs had the opportunity to be heard before the court made its ruling on summary judgment and did not avail themselves of that opportunity.

## **CONCLUSION**

For the foregoing reasons, the court **DENIES** the joint motions to consolidate (doc. 481 in CV 01-640-RE and doc. 10 in CV 03-1341-RE).

IT IS SO ORDERED.

Dated this 2nd day of March, 2004.

 /S/ James A. Redden  
James A. Redden  
United States District Judge
