FILED'05 MAR 02 16:36USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONAL WILDLIFE FEDERATION, IDAHO WILDLIFE FEDERATION, WASHINGTON WILDLIFE FEDERATION, SIERRA CLUB, TROUT UNLIMITED, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, IDAHO RIVERS UNITED, IDAHO STEELHEAD AND SALMON UNITED, NORTHWEST SPORTFISHING INDUSTRY ASSOCIATION, SALMON FOR ALL, COLUMBIA RIVERKEEPER, AMERICAN RIVERS, INC., FEDERATION OF FLY FISHERS, and NW ENERGY COALITION,

        Plaintiffs,

and

STATE OF OREGON,

        Intervenor-Plaintiff,

    vs.

NATIONAL MARINE FISHERIES SERVICE,

        Defendant,

and

NORTHWEST IRRIGATION UTILITIES, PUBLIC POWER COUNCIL, WASHINGTON

CV 01-640-RE (Lead Case)
CV 05-23-RE
(Consolidated Cases)

OPINION AND ORDER

Page 1  -  OPINION AND ORDER

STATE FARM BUREAU FEDERATION, FRANKLIN COUNTY FARM BUREAU FEDERATION, GRANT COUNTY FARM BUREAU FEDERATION, NORTHWEST REQUIREMENT UTILITIES, PACIFIC NORTHWEST GENERATING COOPERATIVES, INDUSTRIAL CUSTOMERS OF NORTHWEST UTILITIES, ALCOA, INC., and INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS,

      Intervenor-Defendants.

---

COLUMBIA SNAKE RIVER IRRIGATORS ASSOCIATION and EASTERN OREGON IRRIGATORS ASSOCIATION

      Plaintiffs,

   vs.

DONALD L. EVANS, in his official capacity as Secretary of Commerce, NOAA FISHERIES, and D. ROBERT LOHN, in his official capacity as Regional Director of NOAA Fisheries,

      Defendants.

HAGGERTY, Chief Judge:

   The matter before the court is the motion (doc. 9 filed in CV 05-23-RE) of Columbia Snake River Irrigators Association and Eastern Oregon Irrigators Association (Irrigators) to disqualify Judge Redden from presiding over these cases. On March 1, 2004, Judge Redden consolidated CV 05-23-RE with CV 01-640-RE, designating CV 01-640-RE the Lead Case. The Irrigators have requested oral argument on their motion, but none is necessary to resolve this motion. For the reasons that follow, the court **DENIES** the motion.

## BACKGROUND

In December 2000, National Marine Fisheries Service (NOAA)[1] issued a biological opinion (2000BiOp) pursuant to section 7(a)(2) of the Endangered Species Act (ESA) regarding the impact of Federal Columbia River Power System (FCRPS) operations on 12 salmon Evolutionary Significant Units (ESUs). In the 2000BiOp, NOAA concluded that continuing FCRPS operations are likely to jeopardize the continued existence of, and to adversely modify the critical habitat of, eight salmon ESUs. To avoid jeopardy and adverse modification of critical habitat, the 2000BiOp proposed a reasonably prudent alternative (RPA). The RPA included short-term federal actions to modify hydro-power operations to improve the survival of salmon passing through FCRPS dams and reservoirs, and short- and long-term federal actions relating to mitigation activities that would avoid jeopardy to the salmon.

National Wildlife Federation and other plaintiffs (NWF) sued NOAA, alleging the 2000BiOp was legally infirm. <u>National Wildlife Federation, et al. v. National Marine Fisheries Service</u>, CV 01-640-RE (<u>NWF v. NMFS</u>). On May 7, 2003, Judge Redden granted NWF's cross-motion for summary judgment and held the 2000BiOp was arbitrary and capricious because it relied on federal mitigation actions that had not undergone section 7 consultation and non-federal mitigation actions were not reasonably certain to occur. <u>See</u> Opinion and Order, dated May 7, 2003. Judge Redden did not order the 2000BiOp vacated, but rather remanded it to NOAA to correct the problems with the RPA

> in order to give [NOAA] the opportunity to consult with interested parties to insure that only those range-wide off-site federal mitigation actions which have undergone section 7 consultation, and range-wide off-site non-federal mitigation actions that are reasonably certain to occur, are considered in the determination whether any of the 12 salmon ESUs will be jeopardized by continued FCRPS operations.

---

[1] National Marine Fisheries Service (NMFS) is a subagency of the National Oceanic and Atmospheric Administration (NOAA). NMFS has now changed its name to NOAA Fisheries. NMFS is referred to herein as NOAA.

Page 3 - OPINION AND ORDER

Opinion and Order, May 7, 2003, p. 26. The court originally ordered a one-year remand period, but the court and the parties later agreed to a six-month extension.

Thereafter, on June 9, 2003 (one month after Judge Redden had granted NWF's motion for summary judgment), the Irrigators, together with the Washington State Potato Commission, filed a motion for leave to file an *amicus curiae* memorandum in NWF v. NMFS, challenging the legality of the 2000BiOp. Judge Redden denied that motion as untimely because the cross-motions for summary judgment in the case had already been fully briefed, argued, and ruled upon, and the 2000BiOp had been remanded to NOAA.

Thereafter, on September 30, 2003, the Irrigators filed a separate lawsuit against NOAA, CV 03-1341-RE (Irrigators 1). Irrigators 1 also challenged the 2000BiOP, alleging NOAA's conclusion that salmon ESUs are jeopardized by continued FCRPS operations is wrong and that NOAA violated the ESA in reaching that conclusion. As noted above, Judge Redden had already, four months earlier, entered an opinion on cross-motions for summary judgment timely filed by the parties in NWF v. NMFS, holding that the 2000BiOp was legally infirm and remanding it.

On January 13, 2004, the Irrigators filed a joint motion with NOAA in the NWF v. NMFS and Irrigators 1 for consolidation of the two cases. Plaintiffs opposed the motion. Although NOAA initially joined in the motion, it later withdrew its support. On March 2, 2004, Judge Redden denied the motion to consolidate. He concluded that consolidation was not appropriate because the 2000BiOp had been on remand to the agency almost five months, since May of 2003, and the parties to that case had been working and expending considerable time and resources towards the goal of resolving the flaws the court found in the 2000BiOp. In light of the allegations the Irrigators were making in Irrigators 1, consolidation would have required the court to reconsider its May 7, 2003, ruling on summary judgment and would have resulted in a substantial delay in making a final decision on the validity of the 2000BiOp. Further, Judge Redden concluded that the Irrigators had failed to establish that such a delay would be

justified, particularly since the Irrigators had the opportunity to be heard before Judge Redden's summary judgment ruling and did not avail themselves of that opportunity.

Before Judge Redden ruled on the motion to consolidate, the Irrigators filed a motion in Irrigators 1, on February 10, 2004, to disqualify him from presiding over the action. On March 4, 2004, I entered an opinion and order denying the motion to disqualify.

On March 12, 2003, defendants in Irrigators 1 filed a motion to stay the case. On June 3, 2004, Judge Redden granted defendants' motion to stay Irrigators 1, concluding that it would be a waste of judicial resources, as well as the resources of the parties, to proceed with Irrigators 1 until the remand period in NWF v. NMFS had ended and the fate of the 2000BiOp had been resolved. On August 2, 2004, the Irrigators appealed Judge Redden's grant of the motion to stay to the Ninth Circuit Court of Appeals. That appeal is still pending.

After working a year and a half during the remand period in NWF v. NMFS, on November 30, 2004, NOAA issued a new biological opinion (2004BiOp).

Thereafter, on January 7, 2005, the Irrigators filed CV 05-23-RE (Irrigators 2), alleging that the 2004BiOp is legally infirm. The case was initially assigned to Judge Owen Panner through the court's random assignment system, but was transferred to Judge Redden in accordance with the court's policy that one judge handles all related cases.

Thereafter, on January 28, 2005, the Irrigators filed the motion to disqualify Judge Redden that is at issue here.

## MOTION TO RECUSE

In their motion, the Irrigators assert that

> [N]otwithstanding the absence of any claims pending before him (other than the claims of the Irrigators which he later refused to hear), Judge Redden continued extraordinary and unlawful proceedings in the NWF case to steer federal decisionmaking concerning the FCRPS, providing special procedural rights for fishing interests, and continued to gather and review evidence from a variety of ex parte sources and information presentations in NWF "Steering Committee" meetings.

Page 5 - OPINION AND ORDER

Pl. Memo. in Support of Motion, pp. 2-3.

I note that an important concern of Judge Redden and all parties in <u>NWF v. NMFS</u> was that NOAA's actions, as required on remand, be completed within the one-year period allotted by the court. Along those lines, as part of the remand, the court required NOAA to file quarterly status reports containing comprehensive and cumulative assessments of the government's progress regarding both the section 7 consultations on federal mitigation actions and its efforts to ensure the non-federal mitigation actions would be reasonably certain to occur.

At an in-court status conference with the parties held July 21, 2003, NOAA outlined the actions it had taken and anticipated taking that were designed to comply with the court's May 7, 2003, order. Judge Redden suggested that a steering committee might be created to monitor the progress of the remand and facilitate the cooperation in consultation required to complete the remand. The parties agreed a steering committee would be a good way to monitor progress and cooperation. *See* transcript of July 21, 2003, in-court conference, and minute order dated July 21, 2003. At the status conference, NOAA's counsel noted a major goal during the remand was to provide significant information to the states, tribes, and other parties on the remand activities, and that the steering committee would be a good means of achieving and coordinating that goal. An express purpose of the steering committee was that the parties "remain on track" with their consultations and other activities. Judge Redden noted that section 7 consultations have a history of being problematic and not involving the kind of cooperation necessary on the difficult issues to be dealt with.

The steering committee meetings were open to all who wished to attend. Judge Redden made no rulings at the committee meetings. Transcripts of the meetings were produced and are available to anyone. Judge Redden attended and participated in the meetings to provide facilitation and support for the process, as requested and approved by the parties. I conclude that the steering committee meetings, and Judge Redden's attendance and participation at them, were not improper.

Page 6 - OPINION AND ORDER

Judge Redden's May 7, 2003, order provided specific direction to the government about what had to be done on remand. That is, the government was to revisit its RPA to ensure proper consultation regarding federal mitigation actions and that non-federal mitigation actions were reasonably certain to occur. Periodically during the remand, Judge Redden made appropriate observations that were a reflection of his concern, and that of the parties, that NOAA might be deviating from its express obligations under Judge Redden's order for the remand process, and that a deviation could result in a delay in the process of getting a legally valid biological opinion in place.

Contrary to the Irrigators' assertion in their motion, Judge Redden did not announce an intention to set aside the 2004BiOp. Rather, Judge Redden's comments related to his concern, and that of other parties, that if the new biological opinion were to be legally infirm in contravention of the court's order, it may have to be vacated with all the serious consequences that might entail. For example, at a steering committee meeting held September 28, 2004, Judge Redden discussed with the members the draft 2004BiOp that defendant had published for public comment. The draft 2004BiOp incorporated a new analytical approach by defendants for its jeopardy conclusion that eliminated the requirement of an RPA. This new approach was not contemplated in Judge Redden's remand of the 2000BiOp, which had required defendant to modify its RPA. Judge Redden stressed that the 2004BiOp was not final, but had merely been published for public comment. He then questioned plaintiffs and defendant about whether there was legal authority permitting defendant to change its baseline analysis and eliminate the RPA at this stage in the proceedings. He commented: "We're not here to make suggestions regarding the confidence or conclusions of the draft, but rather to ascertain whether it is likely that the Government is headed for a train wreck, and, if so, whether it can be avoided." Transcript, 9/28/04 Steering Committee, p. 6. The discussion that ensued resulted in plaintiffs and defendant agreeing the agency had the discretion to change its baseline analysis. I conclude that Judge Redden's comments and the discussion among the parties at the steering committee meetings

did not, as the Irrigators contend, amount to his prejudgment of the legal validity of the 2004BiOp.

The Irrigators complain about Judge Redden's use of a technical advisor in this case, asserting such use constituted prohibited ex parte contacts. My review of the file in this case indicates that during the remand, with the agreement and encouragement of the parties, Judge Redden appointed Dr. Howard Horton as a technical advisor in the case. It is clear that a court has the inherent authority to appoint a technical advisor. Ex Parte Peterson, 253 U.S. 300, 312-13 (1920). Further, Judge Redden informed the parties that The Honorable Malcolm F. Marsh had responded in 1995 to an inquiry from the parties in an earlier case about Dr. Horton's services. Judge Marsh's April 4, 1995 letter, to which Judge Redden directed the attention of the parties, summarized the background and services to the court rendered by Dr. Horton since 1982, including the judges who appointed him and the cases on which he advised the court.

Judge Redden's appointment of Dr. Horton began with an inquiry he made at the January 16, 2004, steering committee meeting. Judge Redden was aware that other judges had utilized Dr. Horton's services in other cases involving similar technical and scientific issues. All parties agreed that Judge Redden should have access to Dr. Horton's services. NOAA indicated it would pay for those services.

It is well known that cases brought under the ESA can involve complex technical and scientific matters. Judge Redden has called upon Dr. Horton for the type of advice he has rendered to other judges, including Judges Craig, Marsh, and King. Dr. Horton has been providing technical and scientific services to courts for more than 20 years, and his training, experience, and involvement in cases such as this evidence that he is eminently qualified to serve as the court's technical advisor.

In the NWF v. NMFS case, Judge Redden consulted with Dr. Horton to augment his understanding of technical and scientific issues. His consultations with Dr. Horton have been to help him gain an understanding of the parties' issues and positions. Dr. Horton's role and duties correspond to those contemplated by the Ninth Circuit in

Page 8 - OPINION AND ORDER

<u>Federal Trade Commission v. Enforma Natural Products, Inc.</u>, 362 F.3d 1204, 1213 (9th Cir. 2004): "The role of a technical advisor is to organize, advise on, and help the court understand relevant scientific evidence. A technical advisor is a tutor who aids the court in understanding the 'jargon and theory' relevant to the technical aspects of the evidence." In this case, Dr. Horton helps Judge Redden understand the voluminous and highly-technical reports, studies, and opinions regarding the status of the fish and the impact of the FCRPS.

Judge Redden declined to set up a mechanism to report the substance of any <u>ex parte</u> communications between Dr. Horton and the court because such a mechanism would invade the confidentiality of the court's deliberations, as well as be onerous and difficult given the informal verbal nature of most of the interactions between Judge Redden and Dr. Horton. <u>Reilly v. United States</u>, 863 F.2d 149, 160 n.8 (1st Cir. 1988) (acknowledging the informal, frank and "freewheeling" nature of the discourse between a court and technical advisor). Dr. Horton and Judge Redden have discussed information found on the government's salmon recovery website, which has been promoted by the government as a convenient and accessible portal for information relevant to this case. They have also discussed various newspaper articles, editorials, and other information published for the general public (including statements from NOAA's representatives) that have included statistical or other scientific-related material or conclusions that the court sought to verify and understand.

Recusal is appropriate where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." <u>Yagman v. Republic Ins.</u>, 987 F.2d 622, 626 (9th Cir. 1993). Recusal is justified either by actual bias or the appearance of bias. Based on a fair understanding of the history and background of the cases involving the 2000BiOp and 2004BiOp, I conclude Judge Redden has exhibited neither actual bias or the appearance of bias.

## CONCLUSION

For these reasons, the court **DENIES** plaintiffs' motion to disqualify Judge Redden from presiding over this action.

IT IS SO ORDERED.

Dated this 2 day of March, 2005.

*[signature]*
Ancer L. Haggerty
United States District Judge

Page 10- OPINION AND ORDER