IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, IDAHO WILDLIFE FEDERATION, WASHINGTON WILDLIFE FEDERATION, SIERRA CLUB, TROUT UNLIMITED, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, IDAHO RIVERS UNITED, IDAHO STEELHEAD AND SALMON UNITED, NORTHWEST SPORTFISHING INDUSTRY ASSOCIATION, SALMON FOR ALL, COLUMBIA RIVERKEEPER, AMERICAN RIVERS, INC., FEDERATION OF FLY FISHERS, and NW ENERGY COALITION, | CV 01-640-RE (Lead Case)<br>CV 05-23-RE<br>(Consolidated Cases)<br><br>OPINION AND ORDER<br>OF REMAND |

                Plaintiffs,

and

STATE OF OREGON,

                Intervenor-Plaintiff,

    vs.

NATIONAL MARINE FISHERIES SERVICE,
U.S. ARMY CORPS OF ENGINEERS, and
U.S. BUREAU OF RECLAMATION,

                Defendants,

1 - OPINION AND ORDER OF REMAND

and

STATE OF IDAHO, NORTHWEST IRRIGATION
UTILITIES, PUBLIC POWER COUNCIL,
WASHINGTON STATE FARM BUREAU
FEDERATION, FRANKLIN COUNTY FARM
BUREAU FEDERATION, GRANT COUNTY FARM
BUREAU FEDERATION, NORTHWEST
REQUIREMENT UTILITIES, PACIFIC
NORTHWEST GENERATING COOPERATIVES,
INDUSTRIAL CUSTOMERS OF NORTHWEST
UTILITIES, ALCOA, INC., INTERNATIONAL
ASSOCIATION OF MACHINISTS & AEROSPACE
WORKERS, CLARKSTON GOLF & COUNTRY CLUB,
STATE OF MONTANA, and KOOTENAI TRIBE OF IDAHO,

    Intervenor-Defendants.

---

COLUMBIA SNAKE RIVER IRRIGATORS
ASSOCIATION and EASTERN OREGON
IRRIGATORS ASSOCIATION

    Plaintiffs,

  vs.

CARLOS M. GUTIERREZ, in his official capacity
as Secretary of Commerce, NOAA
FISHERIES, and D. ROBERT LOHN,
in his official capacity as Regional Director
of NOAA Fisheries,

    Defendants.

REDDEN, Judge.

  On May 26, 2005, in CV 01-640, I issued an Opinion and Order granting summary judgment in favor of plaintiffs that the 2004 Biological Opinion (2004BiOp) issued by defendant NOAA Fisheries (NOAA) addressing proposed operations of the Federal Columbia River Power System (DAM operations) by defendants Army Corps of

2 - OPINION AND ORDER OF REMAND

Engineers and the Bureau of Reclamation (Action Agencies) violated the requirements of Section 7 of the Endangered Species Act (ESA), 16 U.S.C § 1536(a)(2). I found NOAA's opinion that DAM operations would not jeopardize the continued existence of listed salmon species was arbitrary and capricious because it was based on a flawed framework of analysis that improperly segregated elements of the proposed action NOAA deemed to be nondiscretionary, and compared rather than aggregated the effects of the proposed action on listed salmon species. In addition, I found NOAA's analysis of the effects of the proposed action on critical habitat was arbitrary and capricious, and its analysis of the likelihood of recovery as well as survival of the listed species was inadequate.

On September 2, 2005, I ordered the parties to submit proposals regarding the contents of an order of remand in light of my rulings on summary judgment.

On September 30, 2005, I conferred with all of the parties and advised them, in part, as follows:

I will remand the 2004BiOp, ordering NOAA and, where applicable, the Action Agencies, to (1) prepare a new biological opinion consistent with my May 26, 2005, Opinion and Order, (2) provide the court and the parties and *amici* with reports of the progress of the remand on a quarterly basis, the first report being due 90 days after the date of this Order of Remand, and (3) if requested, meet with the parties and *amici* promptly after any quarterly report is filed to discuss any concerns raised by the report.[1]

---

[1] See Federal Defendant's Proposal for Remand Order, p. 2.

3  - OPINION AND ORDER OF REMAND

I will grant NOAA and the Action Agencies one year to accomplish this goal, commencing on the date of this Opinion and Order of Remand. NOAA and the Action Agencies urged that no time limit be set, and that if a limit was set, it should be no less than two years. At this stage of the proceedings, I do not believe a remand period of more than one year is appropriate considering past actions on remand. I did make it clear, however, that if the Action Agencies are steadily accomplishing what they and NOAA set forth in their Proposal for Remand Order, pages 3-7, IA-C, as well as the requirements of this Order of Remand, I would likely grant necessary additional time. However, <u>it must be apparent that substantial progress is being made and will continue to be made</u>.

I should not and will not, however, allow another loss of valuable time as occurred during the remand of the 2000 Biological Opinion (2000BiOp). At the outset of that remand, NOAA and the Action Agencies expressed optimism in accomplishing what I had then ordered and they agreed that one year would be adequate. I eventually granted a 6-month extension, over the plaintiffs' objections, urging NOAA and the Action Agencies to accomplish what the remand order required. It became obvious, however, that the political branches were not appropriating or granting the funds needed to do the job. NOAA then abandoned the 2000BiOp and drafted yet another, the fatally flawed 2004BiOp. The entire remand time was lost and wasted. This remand, therefore, requires a somewhat detailed order and monitored progress. Collaboration with the sovereign parties is necessary and must occur. If good faith collaboration occurs requiring additional time, it will be granted.

The demise of the 2000BiOp and the 2004BiOp followed the pattern of earlier failures by NOAA to comply with the ESA. In 1993, for example, NOAA issued a biological opinion (1993BiOp) that DAM operations would not jeopardize listed salmon species. Judge Marsh held the 1993BiOp was invalid because NOAA had used a framework for analysis of jeopardy that improperly compared likely juvenile mortality from proposed DAM operations with low salmon runs that occurred during an unusually bad drought period from 1986-1990. Judge Marsh stated "the situation literally cries out for a major overhaul" and he urged NOAA to cease using uncertain scientific models in order to avoid finding jeopardy. See *IDF&G v. NMFS*, 850 F. Supp. 886, 900 (D. Or. 1994).

In 1995 and 2000, NOAA issued biological opinions that appeared to take Judge Marsh's admonition seriously. NOAA employed a framework for analysis that appropriately determined the current status of salmon species, and then added on the effects of the proposed DAM operations to determine whether that action would jeopardize listed species. As a result, in both biological opinions, NOAA concluded that unless reasonable and prudent alternative federal and non-federal mitigation actions (RPA) were taken, the proposed DAM operations would jeopardize the continued existence of listed species. Indeed, in the 2000BiOp, NOAA expressly recognized that, if all else failed, the Action Agencies would need to give serious consideration to breaching four dams on the lower Snake River.

As stated above, I found the 2000BiOp was flawed because many of the RPA mitigation actions were not reasonably certain to occur and I remanded it to NOAA to correct the flaws. Instead of correcting the flaws, which would have required funding of

5   -   OPINION AND ORDER OF REMAND

NOAA's efforts and active collaboration with the sovereigns, NOAA abruptly abandoned its analytical framework. The new framework ignored ESA regulations and NOAA's own handbook and, not surprisingly, found that the proposed DAM operations would not jeopardize listed species. This finding eliminated the need for an RPA, additional federal funding, or serious collaboration with any of the sovereigns. In sum, NOAA returned to the practice, criticized by Judge Marsh in 1995, of tailoring its framework for analyzing jeopardy in order to reach a no-jeopardy finding.

The May 26, 2005, Opinion and Order demonstrated that the runs for all 12 listed species, and the one species proposed for listing, continue to dwindle. Four of the species are in danger of extinction, and the remaining nine threatened species are likely to become endangered in the near future. *See* Attachment 1 to that Opinion and Order.

If the Executive and Legislative Branches do not allow NOAA to follow the law of the land, NOAA and the Action Agencies will fail again to take the steps that are plainly necessary to do what the ESA requires and what the listed species require in order to survive and recover. We are all aware of the demands of other users of the resources of the Columbia River and Snake River but we need to be far more aware of the needs of the endangered and threatened species.

A failure now will result in vacating the biological opinion. The Action Agencies and others will be exposed to liability for taking listed species under Section 9 of the ESA. This may sound benign to some, but the parties are aware of the severe consequences that would follow.

In such an event, the courts would be required "run the river." The Executive, Legislative, and especially the Judicial Branches abhor such action by the courts. Such

6  -  OPINION AND ORDER OF REMAND

a dysfunction of government is not a rational option. There must be cooperation between the parties and all of the three branches of government to avoid such an embarrassment.

If an extension of time is necessary and it will be granted if NOAA needs such to adequately consider the contributions of all the parties and, in particular, the plaintiffs and sovereigns. NOAA and the Action Agencies seem offended at the thought of doing more than merely listening to others, but more than that is needed to produce a biological opinion lodged without challenge.

This remand, like the remand of the 2000BiOp, requires NOAA and the Action Agencies to be aware of the possibility of breaching the four dams on the lower Snake River, if all else fails. The cooperation of the political branches (*i.e.*, money) may mean such an action will be unnecessary. If it must be considered, an extension might be required to study its impact and to prepare for its implementation. This should be incentive enough to all those who oppose breaching the dams to make sure this remand succeeds. "Speeching" on the dams will not avoid breaching the dams. Cooperation and assistance may.

The possibility of breaching the dams does not mean that another vast study is needed. In 2000, NOAA and the Action Agencies anticipated that breaching of the lower Snake River dams might be necessary to avoid jeopardizing listed species. As part of 2000BiOp, NOAA required the Action Agencies to submit annual progress reports regarding implementation of the RPA. The 2003 Progress Report required a "failure report" if "key actions" required in the RPA were not sufficiently implemented. NOAA stated that insufficient implementation might require the breaching of those

7   -   OPINION AND ORDER OF REMAND

dams. In fact, the 2003 Progress Report acknowledged that key actions in the RPA were not being sufficiently implemented.

In its proposal as to how the remand should proceed, NOAA states that it would be improper for me to issue an order that specifically identifies steps NOAA and the Action Agencies should take during the remand to produce a valid biological opinion, because to do so would inject the court into the deliberative process of the administrative agencies. I disagree. I recognize NOAA alone is charged with the responsibility of drafting a valid biological opinion. So far, they have not succeeded. Courts do defer to administrative agencies, and they should, and I have. Experience, however, shows that the court should, and sometimes must, be more than a passive participant in the remand process. The many failures in the past have taught us that the preparation or revision of NOAA's biological opinion on remand must not be a secret process with a disastrous surprise ending. The parties must confer and collaborate if we are to reach the goal of a valid biological opinion. The government's inaction appears to some parties to be a strategy intended to avoid making hard choices and offending those who favor the *status quo*. Without real action from the Action Agencies, the result will be the loss of the wild salmon. Based on prior history and the experience of the last remand, it is clear that progress can only be made if the agencies understand exactly what is required of them.

NOAA and the Action Agencies now argue that the remand order "leaves neither the substance nor the manner of preparing the new biological opinion" up to them. They also assert the remand order improperly subjects them to supervision of the "step-by-step actions taken on remand." NOAA cites to *Fed. Power Comm'n v.*

8  -  OPINION AND ORDER OF REMAND

*Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 333 (1976), for the proposition that <u>in the absence of "substantial justification,"</u> a court should not dictate to an administrative agency "the methods, procedures, and time dimension" of the remand. In this case the remand of the 2004BiOp, given the history of NOAA's failures to comply with the ESA, constitutes "substantial justification" for a process that is somewhat detailed and monitored by the court.

This Order of Remand does spell out the procedures NOAA and the Action Agencies must follow in consulting on a revised or new biological opinion. The order does not dictate the substance of the consultation or its results. It does require NOAA and the Action Agencies to comply with the procedures set forth in the ESA, the regulations promulgated under the ESA, and NOAA's handbook on the ESA.

The Ninth Circuit has spoken clearly on this issue. In a case involving the long-term failure of the Environmental Protection Agency (EPA) to fulfill its obligations under the Clean Water Act (CWA) to implement water quality protection measures in Alaska, the court upheld a district court's injunction ordering the EPA to take specific steps to remedy CWA violations in *Alaska Center for the Environment,* 20 F.3d 981 (9th Cir. 1994). Similar to this case, the court noted the long history of the EPA's failure to enforce the requirements of the CWA. In supporting the district court's efforts to end that record of failure, the Ninth Circuit stated:

> The district court has broad latitude in fashioning equitable relief . . . . In tailoring the relief granted, the district court correctly recognized that in order to bring about any progress toward achieving the congressional objectives of the CWA, the EPA would have to be directed to take specific steps. In selecting the remedy that it did, the district court acted with great restraint in requiring only that steps undeniably necessary . . . be

accomplished by deadlines that are far more lenient than those contained in the CWA itself.

20 F.3d at 986. *See also Asarco, Inc. v. Occupational Safety and Health Administration,* 647 F.2d 1, 2 (9th Cir. 1981) (after ordering remand, the court "may adjust [its] relief to the exigencies of the case in accordance with the equitable principles governing judicial action.").

My Order of Remand requires NOAA to engage in a consultation process with the Action Agencies that meets the procedural requirements of the ESA. In *Thomas v. Peterson*, the court affirmed the role of the district court in issuing orders to the administrative agency to ensure the agency properly carries out its obligations under the ESA:

> [T]he strict substantive provisions of the ESA justify *more* stringent enforcement of its procedural requirements, because the procedural requirements are designed to ensure compliance with the substantive provisions. The ESA's procedural requirements call for a systematic determination of the effects of a federal project on endangered species. If a project is allowed to proceed without substantial compliance with those procedural requirements, there can be no assurance that a violation of the ESA's substantive provisions will not result. The latter, of course, is impermissible. *See TVA v. Hill.*"

753 F.2d 754, 764 (9th Cir. 1985) (emphasis in original).

My Order of Remand is specific because it must be clear to NOAA and the Action Agencies what is required of them on remand. Moreover, I intend to act promptly if adequate progress is not being made during the remand period. *See Maness v. Meyers,* 419 U.S. 449, 459 (1975) ("[O]rders must be complied with promptly

10 - OPINION AND ORDER OF REMAND

and completely, for the alternative would be to frustrate and disrupt the progress of the . . . [remand]."). See also Stewart v. O'Neill, 225 F. Supp.2d 6, 10 (D. D.C. 2002).

Based on the above, I ORDER the 2004BiOp be remanded to NOAA to make a jeopardy determination that complies with the requirements of the ESA and to correct the legal flaws identified in my Opinions and Orders issued on May 7, 2003, and May 26, 2005.

Subject to any further orders, the remand period shall be one year, during which the 2004BiOp shall remain in place. During the remand period, NOAA shall:

(1) Correct its improper segregation of the elements of the proposed action NOAA deems to be nondiscretionary;

(2) Correct its improper comparison, rather than aggregation, of the effects of the proposed action on the listed salmon and steelhead;

(3) Correct its flawed determinations as to whether the proposed action destroys or adversely modifies critical habitat;

(4) Correct its failure to consider the effects of the proposed action on both recovery and survival of the listed species in determining whether the proposed action is likely to jeopardize the continued existence of listed salmon and steelhead; and

(5) Correct its past reliance on mitigation measures that are not reasonably certain to occur and/or have not undergone Section 7 consultation.

During the remand period, NOAA and the Action Agencies, Army Corps of Engineers, and Bureau of Reclamation shall collaborate with the sovereign entities,

11 -   OPINION AND ORDER OF REMAND

including the States of Idaho, Montana, Oregon, and Washington, and the Tribes who are parties or *amici* in this action (the Nez Perce, Umatilla, Yakima, Warm Springs, and Kootenai Tribes) to achieve the goals of:

(a) Developing items to be included in the proposed action; and

(b) Clarifying policy issues and reaching agreement or narrowing the areas of disagreement on scientific and technical information.

NOAA shall file detailed written status reports regarding progress made on remand every 90 days, beginning on January 2, 2005. Any party or *amici* shall have 5 days to comment on the status reports. The court will hold status conferences approximately 5 days after comments are filed. The comments shall be 2 pages or less in length and shall be designed not for the purpose of objecting to NOAA's reports, but rather to assist the court, the parties, and *amici* in narrowing the issues to be addressed during the status conferences.

NOAA's first status report shall include, at a minimum, preliminary information from which the court, the parties, and *amici* are able to gain some understanding of (1) the legal framework NOAA intends to use in its jeopardy analysis; (2) the nature and scope of any proposed agency action and/or RPA; and (3) NOAA's plan for collaboration with the sovereign entities. If, at any time during the remand period, NOAA concludes the Action Agencies are not making sufficient progress in developing a proposed action and/or RPA that avoids jeopardy to the listed species, NOAA shall advise the court of that circumstance immediately and shall issue a "failure report"

12 - OPINION AND ORDER OF REMAND

similar to that required in the 2000BiOp, that advises the court and the parties of those additional measures, including the breaching of dams, that may be necessary to achieve a valid no-jeopardy finding.

I look forward to the first status report due on January 2, 2006.

IT IS SO ORDERED.

DATED this 7th day of October, 2005.

James A. Redden
United States District Judge

13 - OPINION AND ORDER OF REMAND