

***United States District Court***
**District of Oregon**
1527 United States Courthouse
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Chambers of
JAMES A. REDDEN
United States District Judge

Phone: 503-326-8370
Fax: 503-326-8379

FILED'09 MAY 18 14:46USDC-ORP

May 18, 2009

To: Counsel of Record, National Wildlife Federation v. NMFS, CV 01-640 RE
Re: 2008 Biological Opinion

Dear Counsel,

I applaud the new administration's efforts to understand, and become more fully engaged in the complex issues presented by this case. At our April 2, 2009 meeting, Federal Defendants, the State of Oregon, the Nez Perce Tribe, and the National Wildlife Federation committed to jointly exploring all "possible legal avenues" for resolving this matter. To further those goals, this letter briefly sets out the court's tentative position on the validity of the 2008 Biological Opinion, and suggests additional actions that may avoid another remand.

I still have serious reservations about whether the "trending toward recovery" standard complies with the Endangered Species Act, its implementing regulations, and the case law. Even if "trending toward recovery" is a permissible interpretation of the jeopardy regulation, the conclusion that all 13 species are, in fact, on a "trend toward recovery" is arbitrary and capricious because:

(1) Federal Defendants improperly rely on speculative, uncertain, and unidentified tributary and estuary habitat improvement actions to find that threatened and endangered salmon

and steelhead are, in fact, trending toward recovery;

(2) Federal Defendants' own scientists have concluded that many of the proposed estuary mitigation measures (and the assumed benefits) are unsupported by scientific literature;

(3) Federal Defendants assign implausible and arbitrary numerical survival improvements to tributary habitat actions, even though they have not identified specific habitat actions beyond 2009, and there is no scientific data to support those predictions;

(4) The BiOp does not identify any performance standards to measure whether the proposed habitat improvements actually result in the predicted survival improvements, which are necessary to ensure that the species avoid jeopardy (*i.e.*, "trending toward recovery");

(5) The BiOp does not articulate a rational contingency plan for threatened and endangered species in the event that the proposed habitat improvements and other remedial actions fail to achieve the survival benefits necessary to avoid jeopardy; and

(6) Federal Defendants do not provide a rational explanation, based on the best available science, for their decision to curtail both spring and summer spill.

You will recall that all of these issues were set forth in the court's previous letters to counsel, and discussed at length at oral argument and during our April 2, 2009 meeting. At that meeting, Federal Defendants insisted that they "cannot, and will not, amend" the 2008 BiOp. It is clear that the concept of "adaptive management" is flexible enough to allow us to implement additional and/or modified mitigation actions within the structure of the existing BiOp. Federal Defendants' recent agreement with the State of Washington, and its modification of spring spill are examples of the flexibility inherent in "adaptive management." With that in mind, I urge you to consider implementing some, or all, of the following measures as part of the adaptive management process:

• committing additional funds to estuary and tributary habitat mitigation, monitoring, and

evaluation;

• identifying specific tributary and estuary habitat improvement projects beyond December 2009;

• providing periodic reports to the court, and allowing for independent scientific oversight of the tributary and estuary habitat mitigation actions;

• committing additional flow to both the Columbia and Snake Rivers;

• developing a contingency plan to study specific, alternative hydro actions, such as flow augmentation and/or reservoir drawdowns, as well as what it will take to breach the lower Snake River dams if all other measures fail (*i.e.*, independent scientific evaluation, permitting, funding, and congressional approval); and

• continuing ISAB's recommended spring and summer spill operations throughout the life of the BiOp.

With a commitment to these additional and specific mitigation actions, independent scientific review, and the development of a contingency plan, the parties and the entire region may be able to avoid the additional costs and uncertainty of yet another round of consultation and litigation. Federal Defendants have spent the better part of the last decade treading water, and avoiding their obligations under the Endangered Species Act. Only recently, have they begun to commit the kind of financial and political capital necessary to save these threatened and endangered species, some of which are on the brink of extinction. We simply cannot afford to waste another decade.

All of us know that aggressive action is necessary to save this vital resource, and now is the time to make that happen. I am encouraged by recent news that Federal Defendants have already committed additional funds to both tributary and estuary habitat improvement. Additionally, the U.S. Bureau of Reclamation expects to deliver the oft-promised (but seldom

delivered) 487,000 acre-feet of flow augmentation from the upper Snake River in 2009. These are positive developments, and demonstrate that the parties are finally starting to work together. If the parties can come to an agreement, I am optimistic that we can make this BiOp work and achieve what the previous BiOps have not.

Very Truly Yours,

James A. Redden
United States District Judge