**RICK EICHSTAEDT, OSB #972550**
rick@eichstaedtlaw.net
Eichstaedt Law, LLC
25 West Main Avenue, Suite 320
Spokane, Washington 99201
Telephone: 509.251.1424
rick@eichstaedtlaw.net

Attorney for the Coeur d'Alene Tribe

THE HONORABLE MICHAEL H. SIMON

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| NATIONAL WILDLIFE FEDERATION, *et al.*, <br>    Plaintiffs, <br><br>  and <br><br> STATE OF OREGON, <br><br>    Intervenor-Plaintiff, <br><br>    v. <br><br> NATIONAL MARINE FISHERIES SERVICE, *et al*., <br><br>    Defendants, <br><br>    and <br><br> NORTHWEST IRRIGATION UTILITIES, *et al*., <br><br> Intervenor-Defendants. | Case No. 3:01-cv-00640-SI <br><br> COEUR D'ALENE TRIBE'S MOTION TO INTERVENE AS PLAINTIFF AND MEMORANDUM IN SUPPORT |

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 1

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

## I.      LR 7-1 CERTIFICATE OF COMPLIANCE

Counsel for the Coeur d'Alene Tribe ("Tribe") certify that they have conferred in good faith with counsel for the other parties and *amici* prior to filing this Motion to Intervene.  Counsel for Nez Perce Tribe, the State of Idaho, the Spokane Tribe, the Colville Tribe, the State of Oregon, the Northwest Power and Conservation Council indicated that they do not oppose the Motion.  Counsel for Federal Defendants take no position and will not oppose the Motion.  Counsel for Kootenai Tribe of Idaho indicated that the Tribe will take no position on the Motion. No party indicated opposition to this motion although the Tribe did not receive a response from all parties and *amici*. All parties reserve their rights, claims, and defenses regarding the Proposed Supplemental Complaint.

## II.      MOTION TO INTERVENE

The Tribe moves to intervene as a plaintiff in this matter pursuant to Fed. R. of Civ. P. 24(a) and (b) in the above-captioned case. This Motion is supported by the memorandum contained in this document as required by LR 7-1(c).  A copy of the Tribe's proposed complaint is attached hereto as Exhibit 1.

## III.      MEMORANDUM

The Tribe should be permitted to intervene, either as a matter of right or permissively, based upon the impact to the Tribe's interests and rights resulting from the outcome of this litigation.

///

///

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 2

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

A.    BACKGROUND.

1.    *Interests of the Tribe.*

The Coeur d'Alene Tribe is a federally recognized Indian Tribe. From time immemorial the people of the Coeur d'Alene Tribe or "Schee-chu-umsch" lived on more than 3.5 million acres in an area now known as northern Idaho and eastern Washington. In *Coeur d'Alene Tribe v. U. S.,* 4 Indian Claims Commission 13, at 34 (1955) (Supp. 000005-34), the Indian Claims Commission found that the Tribe held aboriginal or Indian Title to the area from Lake Pend Oreille in the north, to the Clearwater divide in the south, and from the present Montana/Idaho boundary in the east, to a point a few miles into present State of Washington on the west. This includes the entire Coeur d'Alene River/St. Joe River/Lake Coeur d'Alene drainage.

The Coeur d'Alenes are a water people. In the heart of the Tribe's aboriginal homeland is Lake Coeur d'Alene, fed by two large navigable rivers (Coeur d'Alene River and St. Joseph River) and drained by a third (Spokane River).

Archaeological, ethnographic, and linguistic studies, as well as tribal traditions and histories, confirm that the Coeur d'Alenes located the majority of their villages along the Lake and rivers, and relied on the water resource to ensure their survival. The Tribe depended on the waterways for a year-round source of fish, small mammals, waterfowl, and plant materials. The Tribe's spiritual, religious, and social life centered around the Lake and rivers.

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 3

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424



Historically, the Coeur d'Alene Tribe's fishing territory extended from the North Fork of the Clearwater River on the southern margin to Lake Pend Oreille and the Clark Fork River on the north and included Coeur d'Alene Lake and its major tributaries - the Coeur d'Alene, St. Joe and St. Maries Rivers - the upper portion of the Spokane River to Spokane Falls, Latah (Hangman) Creek, and the headwaters of the Palouse River. Additionally, historical and anthropological sources place the Coeur d'Alene as occasionally fishing for salmon at Kettle Falls, on the Clearwater River, at the confluence of the Palouse and Snake Rivers, and, between 1900 and 1957, at Celilo Falls. Ridolfi, Inc., Heritage Fish Consumption Rates of the Coeur d'Alene Tribe (Dec. 16, 2016) at 3. Historically, the Coeur d'Alene Tribe depended on runs of anadromous salmon and

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 4

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

steelhead along the Spokane River and Latah Creek, as well as resident and adfluvial forms of trout and char in Coeur d'Alene Lake, for survival. *Id.* at 3-4.

The Coeur d'Alene Reservation consists of some 13,032 acres of tribal land, 55,583 acres of allotted land, and 330 Government owned acres. Statistical Record of Native North Americans 53 (M. Raddy ed. 1995). The Tribe claimed the beneficial interest, subject to the trusteeship of the United States, in the beds and banks of all navigable watercourses and waters (the "submerged lands") within the original boundaries of the Coeur d'Alene Reservation. *Idaho v. United States*, 533 U.S. 262 (2001). The Tribe also retained the right to hunt and fish within its reservation lands. *Menominee Tribe v. United States*, 391 U.S. 404, 405-06 (1968) (rights implied from treaty language describing title to the reservation as "held as Indian lands are held"). This included the right to fish anadromous fish entering the tribal lands on Latah Creek.

Tribal members are estimated to have consumed about 124,000 salmon and steelhead annually (1.3 million to 2.3 million pounds). This included the fishery on the Spokane River where Indians caught about 1,000 salmon a day at five weirs for a period of 30 days each year for a total harvest of 150,000 salmon. Estimates of fish consumption, including anadromous and resident fish, puts historic Tribal consumption per capita at between 300-1,000 pounds per year.

Anadromous fisheries in the Spokane River and Latah Creek (including fisheries destined for the Reservation) were eventually destroyed by the construction of the federal Chief Joseph and Grand Coulee Dams on the Columbia River. The loss of these habitats to anadromous fisheries has had a significant and continuing impact on Coeur d'Alene

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 5

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

Tribal cultural, economic, and social well-being.  These impacts have been largely unaddressed and unassessed by the defendants in this matter.

### 2.  Litigation and Subsequent Actions.

This action is the two-decade old challenge under the Endangered Species Act ("ESA") and National Environmental Policy Act ("NEPA") to the operation of the Federal Columbia River Power System ("FCRPS").  In its May 4, 2016 Order ("2016 Order"), this Court found that the Bureau of Reclamation ("BOR") and the Army Corps of Engineers ("Corps") violated both the ESA and NEPA in their implementation of the 2014 NOAA Fisheries Biological Opinion ("BiOp") prepared for the FCRPS.  *National Wildlife Federation, et al v. National Marine Fisheries Service*, *et al*., 01-cv-00640-SI, Dkt. 2065, 184 F. Supp. 3d 861 (D. Or. 2016).

Following the 2016 Order, the BOR, Corps, and the Bonneville Power Administration ("BPA")[1] (collectively "Action Agencies") initiated the development of an Environmental Impact Statement ("EIS") for the FCRPS.  Throughout the development of the EIS, the Tribe submitted detailed comments to the Action Agencies urging the Action Agencies to consider and analyze the potential for reintroduction of anadromous fish in the Upper Columbia above Chief Joseph and Grand Coulee Dams.

---

[1] Jurisdiction to review final action by BPA lies in the Ninth Circuit. *See Confederated Tribes of Umatilla Indian Res. v. Bonn. Power Admin.*, 342 F.3d 924, 928 (9th Cir. 2003) (citing 16 U.S.C. § 839f(e)). The Tribe has separately initiated an action raising identical claims to those proposed in its draft Complaint against BPA in the Ninth Circuit, which has original jurisdiction over petitions challenging BPA's final actions. Three separate petitions, including the Tribe's, were consolidated by the Ninth Circuit on January 13, 2021. No. 20-73761, 20-73762, & 20-73775. Dkt. Entry 7.

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 6

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

The Tribe's comments also urged the Agencies to consider the requirements of the Northwest Power and Conservation Council's ("Council") Fish and Wildlife Program ("Program"), as required by the Northwest Power Act. 16 U.S.C. § 839b(h)(11).

These requests fell on deaf ears.  During development of the EIS and the alternatives considered, the Action Agencies dismissed the Tribe's numerous requests to consider and analyze fish passage in the Upper Columbia, at one point stating during a public meeting that "fish passage was not even on our radar."

The Final Environmental Impact Statement ("FEIS") was issued by the Action Agencies for the CRSO on July 28, 2020 and the Record of Decision ("ROD") on September 28, 2020.  Neither the FEIS nor the ROD contained a detailed assessment of fish passage in the Upper Columbia River.

**B.    ARGUMENT.**

**1.    The Tribe satisfies the requirements for intervention as of right.**

A proposed intervenor must satisfy four criteria to intervene as a matter of right. *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986), cert. denied, 480 U.S. 946 (1987). The requirements are as follows:

1. The applicant's motion must be timely;

2. The applicant must assert an interest relating to the property or transaction which is the subject of the action;

3. The applicant must be so situated that without intervention, the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and

4. The applicant's interest must not be adequately represented by the existing parties.

*Id.*  As shown below, the Tribe meets all four criteria.

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 7

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

    *a.   The Motion to Intervene is timely.*

In determining whether a motion to intervene is timely, three factors are weighed: (1) the state of the proceeding in which the applicant seeks to intervene, (2) the prejudice to other parties, and (3) the reason for and length of any delay. *County of Orange*, 799 F.2d at 537.  Defendants have not yet filed their Answers to the Amended Complaints in this matter.  There is no administrative record filed.  No substantive motions are pending. There is no prejudice to any party resulting from the timing of the intervention. This Motion to Intervene is timely.

    *b.   The Tribe has a significant interest in the subject of this action.*

The Ninth Circuit has "rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980); *see also Blake v. Pallan*, 554 F.2d 947, 952 (9th Cir. 1977). Rather, "the 'interest' test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuess v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

   Here, the subject of this litigation including claims regarding the adequacy of the EIS contained in the Plaintiffs' Eighth Supplemental Complaint, Dkt. No. 2311, will impact the Tribe's rights and interests, including its interest in ensuring that an EIS is developed that considers a wide range of alternatives.

    *c.   Denying intervention to the Tribe would impair its ability to protect its interest.*

The Tribe meets this requirement because the disposition of this action "may as a

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 8

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

practical matter" impair or impede the Tribe's ability to safeguard its protectable interests. *See Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 862 (9th Cir. 2016); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). That test is met here. A decision in favor of defendants would have far-reaching practical consequences for the Tribe's ability to safeguard its protectable interests—recovery of fisheries in the Upper Columbia River. Therefore, Tribe meets the third Rule 24(a)(2) factor.

### d. The existing parties will not adequately represent the Tribe.

An applicant for intervention of right need only make a minimal showing that "representation of [its] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (quoting 3B J. Moore, Federal Practice); *see also People of the State of Cal. v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986). A would-be intervenor is adequately represented if the following factors are met:

1. The interests of a present party to the suit are such that it will undoubtedly make all of the intervenor's arguments;

2. The present party is capable of and willing to make such arguments; and

3. The intervenor would not offer any necessary element to the proceedings that the other parties would neglect.

*County of Fresno*, 622 F.2d at 438–39.  Wright and Miller interpret the rule to place the burden on the party opposing the intervention to show that adequate representation of the applicant's interests is already present. 7C Wright & Arthur R. Miller, Federal Practice and Procedure, § 190g at 388–90.

The Tribe, as a sovereign tribal government, has interests separate from, and as critical as, the interests advanced by other plaintiffs in this matter.  Moreover, if other

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 9

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

plaintiffs prevail in this case, as they should, it is possible that this Court may craft a remedy that will not address and could harm the Tribe's unique sovereign interest. No other party can adequately represent the sovereign interest of the Tribe.

      **2.**      **In the alternative, the Tribe satisfies the requirements for permissive intervention.**

In the alternative, this Court should exercise its discretion to grant the Tribe permission to intervene under Rule 24(b). That rule provides in pertinent part that, "On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc*., 712 F.3d 1349, 1353 (9th Cir 2013) (quoting Fed. R. Civ. P. 24(b)(1)). Generally, permissive intervention requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Blum*, 712 F.3d at 1353 (quotation marks and citation omitted).

In determining whether to exercise its discretion to grant permissive intervention, the Court considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Tribe meets the requirements for permissive intervention here.

First, jurisdiction is easily established because this is a federal-question case. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F3d 836, 844 (9th Cir 2011) (explaining that jurisdictional requirement of permissive intervention satisfied where case presented federal question); *see also* 28 U.S.C. §1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 10

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424

the United States."). Second, the Tribe's motion is timely, as explained above. Third, also for the reasons described above, this case squarely presents a common question of law and fact between the Tribe's claims and the main action. Finally, defendants will suffer no conceivable prejudice, at this stage in the proceedings, due to intervention by the Tribe. Allowing the Tribe to intervene will aid the Court to better assess the effects and lawfulness of the Action Agencies' decision.

For these reasons, this Court should, in the alternative, exercise its discretion to allow Tribe to intervene.

## IV.    CONCLUSION

For the reasons discussed above, the Tribe is entitled to intervene as of right Alternatively, this Court should allow the Tribe to intervene on a permissive basis.

Dated the 11th day of March 2021.

_s/Rick Eichstaedt_
Rick Eichstaedt, OSB # 972550
Eichstaedt Law Office, PLLC
Telephone: 509.251.1424
rick@eichstaedtlaw.net

Attorney for Coeur d'Alene Tribe

COEUR D'ALENE TRIBE'S MOTION AND
MEMORANDUM TO INTERVENE AS PLAINTIFF -
PAGE 11

Eichstaedt Law, PLLC
25 West Main Ave., Ste. 320
Spokane, Washington 99201
Tel. No.: (509) 251-1424