SCOTT ERIK ASHPHAUG
Acting United States Attorney
COBY HOWELL
Senior Trial Attorney
U.S. Department of Justice
c/o U.S. Attorney's Office
1000 SW Third Avenue
Portland, Oregon 97204-2902
Tel: (503) 727-1023 | Fax: (503) 727-1117
Email: Coby.Howell@usdoj.gov

JEAN E. WILLIAMS, Acting Assistant Attorney General
ROMNEY PHILPOTT, Senior Attorney
MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1810 (Philpott): (303) 844-1479 (Eitel)
Fax: (303) 844-1350
Email: Romney.Philpott@usdoj.gov; Michael.Eitel@usdoj.gov

*Attorneys for Federal Defendant*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

**NATIONAL WILDLIFE FEDERATION,** et al.,

        Plaintiffs,

  v.

**NATIONAL MARINE FISHERIES SERVICE,** et al.,

        Defendants.

Case No.: 3:01-cv-00640-SI

**FEDERAL DEFENDANTS' MOTION TO DISMISS CROSS-CLAIM**

FED. DEFS.' MOTION TO DISMISS

**MOTION**

Federal Defendants move the Court to dismiss the cross-claim of Intervenor-Defendant Columbia-Snake River Irrigators Association ("CSRIA") for lack of jurisdiction. Under Federal Rule of Civil Procedure 12(b)(1), the Court should dismiss the cross-claim because CSRIA fails to establish Article III standing for the claim. Pursuant to Local Rule 7-1, counsel for the Corps conferred with counsel for CSRIA and discussed the grounds for this motion, but the parties have been unable to resolve their dispute.

**INTRODUCTION**

In January 2021, plaintiffs National Wildlife Federation et al. ("NWF Plaintiffs") filed their Eighth Supplemental Complaint challenging the National Marine Fisheries Service's ("NMFS") July 24, 2020 Biological Opinion ("BiOp") for the continued operation and maintenance of the Columbia River System ("CRS"). The NWF Plaintiffs also challenged the U.S. Army Corps of Engineers ("Corps") and U.S. Bureau of Reclamation's ("Reclamation") Final Environmental Impact Statement ("FEIS") for Columbia River System Operations ("CRSO") and their Joint Record of Decision ("ROD").[1] ECF 2311 ¶ 5. Intervenor-Defendant CSRIA subsequently filed an answer containing a cross-claim against the Corps and Reclamation. ECF 2312. While CSRIA generally disputes the NWF Plaintiffs' claims, ECF 2312 ¶¶ 18-19, it also asserts that the Corps and Reclamation violated the National Environmental Policy Act ("NEPA") because of alleged defects in the FEIS's analyses of two action alternatives that the agencies did *not* adopt.

---

[1] Bonneville Power Administration ("Bonneville") was a co-lead agency in preparing the FEIS and executing the ROD, but is not a party to this litigation because this Court does not have jurisdiction to review claims against it. ECF 2311 at 4 n.1.

FED. DEFS.' MOTION TO DISMISS            2

Given its focus on the analysis of alternatives the agencies did not adopt, CSRIA fails to allege any concrete or imminent injury to itself or its members—and it cannot establish Article III standing for its cross-claim. CSRIA alleges no harm resulting from the alternative that the agencies *did* adopt—rather, it describes only potential injuries that its members might have sustained had the agencies adopted a different alternative in their ROD. As such, its criticisms of the alleged deficiencies in the FEIS constitute—at most—the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Such allegations do not establish a cognizable injury in fact for purposes of Article III standing. *Id*. Nor can CSRIA satisfy Article III's redressability requirement because the remedy it seeks could not cure any hypothetical injury to its interests.

CSRIA accordingly fails to invoke this Court's subject matter jurisdiction for its cross-claim, which the Court should dismiss.

## BACKGROUND

In 2016, this Court held that NMFS violated the Endangered Species Act ("ESA") in issuing a 2014 Biological Opinion ("BiOp") addressing the CRS and that the Corps and Reclamation violated NEPA when they adopted and implemented the 2014 BiOp and associated Reasonable and Prudent Alternative ("RPA"). *See generally* ECF 2065. Since then, the Federal Defendant agencies have been engaged in a comprehensive resource and time-intensive effort to comply with the ESA and NEPA when operating the fourteen dam and reservoir federal projects on the Columbia and lower Snake rivers that comprise the CRS. With respect to NEPA, the Corps, Reclamation, and Bonneville (together the "co-lead agencies") formally commenced their process in September 2016, when they issued their Notice of Intent to Prepare an Environmental

Impact Statement.  81 Fed. Reg. 67,382 (Sept. 30, 2016).  After formulating rigorous analyses of potential impacts to the resources affected by the CRS and undertaking a concerted effort to ensure robust public and stakeholder review and input, the co-lead agencies issued the FEIS in July 2020.  Notice of Availability, 85 Fed. Reg. 46,094-95 (July 31, 2020).

In the FEIS, the co-lead agencies analyzed six alternatives for the operation, maintenance, and configuration of the CRS.  ROD, 85 Fed. Reg. 63,834, 63,834 (Oct. 8, 2020).  These alternatives included a "no action" alternative and five action alternatives.  *Id.*  As relevant to CSRIA's cross-claim, one of the action alternatives—Multiple Objective Alternative 3 ("MO3")—included measures to breach the four lower Snake River dams (Lower Granite, Little Goose, Lower Monumental, and Ice Harbor dams).  *Id.* at 63,838.  *See also* Cross-claim ¶ 8 (addressing "the four-dam removal alternative").  Another alternative—Multiple Objective Alternative 4 ("MO4")—included measures to annually draw down the lower Snake River and Columbia River reservoirs to their minimum operating pools.  Excerpts of FEIS, attached hereto as Ex. A at 2-62; 2-69.[2]  *See also* Cross-claim ¶ 10 (alleging a failure to adequately evaluate impacts from "pool drawdowns on the mainstem [sic] Snake and Columbia Rivers, including the impact areas of Ice Harbor and Upper McNary Pools . . . and the lower McNary and John Day Pools . . .").  The FEIS also identified and evaluated the co-lead agencies' Preferred Alternative, which unlike MO3 and MO4, did not include measures that would either breach the four lower Snake River dams or annually draw down other dams to their minimum operating pools.  *Id.* at

---

[2] The Court may review the FEIS and ROD when resolving this Motion because when considering a motion to dismiss for lack of Article III standing, the court may consider evidence outside the pleadings, *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008), and the documents are central to and referenced in CSRIA's cross-claim.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (even when ruling on a Rule 12(b)(6) motion to dismiss, "a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned").

FED. DEFS.' MOTION TO DISMISS            4

7-22 to725.  The co-lead agencies issued their ROD in September 2020, which adopted the Preferred Alternative.  ROD, 85 Fed. Reg. at 63,834.

On January 20, 2021, the NWF Plaintiffs filed their Eighth Supplemental Complaint challenging, inter alia, the FEIS and ROD.  *See generally* ECF 2311.  Although under no obligation to do so, CSRIA filed an answer to the Eighth Supplemental Complaint.  ECF 2312.  CSRIA included a cross-claim against the Corps and Reclamation, alleging a violation of NEPA.  ECF 2312 at 6-7.  CSRIA alleges that the FEIS inadequately evaluates impacts and mitigation for alternatives that the co-lead agencies did not adopt.  Specifically, CSRIA alleges that the agencies failed to adequately evaluate impacts from dam breach (addressed in MO3) and "pool drawdowns" (addressed in MO4), and that the co-lead agencies failed to include mitigation to address the impacts of these alternatives.  Cross-claim, ¶¶ 8-13.[3]  CSRIA asks the Court to determine that the FEIS and ROD are unlawful "for failure adequately to address irrigation impacts and plan mitigation of irrigation sector impacts," and to issue a "limited remand" to the Corps and BOR for further consideration of those issues "while leaving the balance of the CRSO FEIS and 2020 ROD in place during such remand."  ECF 2312 at 9.

## STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of establishing jurisdiction.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  A challenge to jurisdiction under Rule 12(b)(1) may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  In

---

[3] CSRIA's pleading (ECF 2312) includes numbered responses in the answer portion, and numbered allegations in the cross-claim portion.  For purposes of this Motion, Defendants' citations to "Cross-claim ¶ X" refer to the numbered allegations beginning at page 6 of the pleading.

resolving a facial challenge under Rule 12(b)(1), the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). However, "[b]ecause subject-matter jurisdiction focuses on a court's power to hear a plaintiff's claim, a court resolving a motion to dismiss under Rule 12(b)(1) must give factual allegations closer scrutiny than required for a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim." *CAlifornians for Renewable Energy v. Cal. Pub. Utils. Comm'n*, No. 08-cv-1954- JL, 2009 WL 10700582, at *2 (N.D. Cal. Feb. 10, 2009), *aff'd* 401 Fed. Appx. 238 (9th Cir. 2010) (citing *Lipsman v Sec'y of the Army*, 257 F.Supp.2d 3 (D.D.C. 2003)).

## ARGUMENT

Consistent with Article III's case-or-controversy requirement, a party asserting an affirmative claim must establish that it has standing to sue. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Forest Conserv. Council v. Espy*, 835 F. Supp. 1202, 1219 (D. Idaho 1993) (determining that intervenor-defendant lacked standing to assert cross-claim), *aff'd*, 42 F.3d 1399 (9th Cir. 1994). To do so, the party must show: (1) "an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). When, as here, standing is addressed at the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration in original).

CSRIA fails to allege facts demonstrating that it has standing for its cross-claim. As discussed below, it fails to allege actual injury to itself as an organization or injury to any of its members. CSRIA also cannot establish that the Court order it seeks would redress any injury that it alleges. The Court therefore should dismiss CSRIA's cross-claim.

### A. CSRIA has not alleged actual injury to itself as an organization

CSRIA's cross-claim alleges direct injury to itself as an organization. *See* Cross-claim ¶ 14 (alleging that "[CSRIA] and its members are irreparably injured" by the FEIS). But CSRIA alleges no facts to support standing on that basis.

An "organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'" *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002); s*ee also Am. Diabetes Ass'n v. U.S. Dept. of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) ("an organization may establish 'injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular [conduct] in question,'" (quoting *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004))).

CSRIA alleges no facts that plausibly support an assertion of direct injury to it as an organization. It fails to even identify its mission, let alone allege how the FEIS or ROD frustrate that mission. *See* Cross-claim ¶ 1. Nor does CSRIA allege a cognizable diversion of its resources. *See generally* Cross-claim. Indeed, CSRIA "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088. Indeed, CSRIA cannot allege injury by complaining about alternatives that the agencies did *not* adopt, and therefore could not plausibly "affect [CSRIA] at all." *See id.*

FED. DEFS.' MOTION TO DISMISS                7

CSRIA's cross-claim provides no allegations of injury to it as an organization, and therefore it cannot establish standing on that basis.

### B.     CSRIA has not alleged a factual basis for associational standing

CSRIA likewise alleges no basis for associational standing based on injury to its members.  An organization can establish standing where "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Am. Diabetes Assoc.*, 938 F.3d at 1155 (quoting *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000)).  For the first element, CSRIA must establish that a member or members would have standing in their own right—namely that they "have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical, ... the injury is fairly traceable to the challenged action of the defendant; and ... it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Ecological Rts. Found.*, 230 F.3d at 1147 (internal quotation omitted).  CSRIA fails to do so.

### 1.     <u>CSRIA does not establish actual, imminent injury to its members.</u>

CSRIA fails on the first prong of the requisite standing analysis because it fails to allege any actual and imminent injury to its members.

CSRIA provides no factual allegations as to how its members' asserted interests have been injured by the FEIS or ROD.  Although CSRIA identifies its members' interest in using "reservoirs behind John Day, McNary, and Ice Harbor dams for irrigation water supply," it alleges no harm to those interests.  Cross-claim ¶ 3.  Likewise, CSRIA does not allege that its

members will be harmed because they will be unable to rely on the "continued operation of the FCRPS for economic power to pump irrigation water." *Id.*

CSRIA instead alleges potential injuries to its members *had* the agencies adopted MO3 or MO4. For instance, it alleges that "[t]he four-dam removal alternative would, *if adopted*, generate adverse effects on the Irrigators and its members." Cross-claim ¶ 8 (emphasis added). *See also id.* ¶ 9 (alleging that "CRSO FEIS alternatives involving dam removal or drawdowns would create distressed assets based on" various considerations); *id.* ¶ 10 (alleging CSRIA's concerns that the agencies take into account "the full effect of dam breaching and pool drawdowns on the mainstem Snake and Columbia Rivers); *id.* ¶ 11 (alleging that the agencies undervalued economic impacts because they failed to utilize CSRIA's land valuations and "a measure of value likely lost *in the event* the four-dam breaching alternative was selected") (emphasis added). But these allegations of potential injuries from MO3 or MO4 are immaterial: the co-lead agencies did not adopt either of these alternatives and therefore any theoretical harm they could have caused CSRIA's members is facially insufficient to show actual injury. *See Friends of the Earth, Inc*, 528 U.S. at 180–81 ("conjectural or hypothetical" injury cannot suffice to establish Article III standing).

Evaluating CSRIA's cross-claim in the context of "procedural injury" corroborates the absence of actual injury to its members. *See California ex rel. Imperial Cnty. Air Pollution Control Dist. v. U.S. Dept. of the Int.*, 767 F.3d 781, 790 (9th Cir. 2014) (addressing standing to assert a NEPA claim by addressing alleged procedural injury). The Supreme Court has established that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496; *see also WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir.

2013) ("a procedural injury claim therefore must be tethered to some concrete interest adversely affected by the procedural deprivation"). Thus, a plaintiff asserting procedural injury must demonstrate (1) that it has a procedural right that, if exercised, could have protected its concrete interests, (2) that the procedures in question are designed to protect those concrete interests, and (3) that the challenged action's threat to the concrete interests is reasonably probable. *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (citing *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–70 (9th Cir. 2003)).

CSRIA cannot establish a cognizable procedural injury because the procedural violations it alleges are not coupled with a threat to its members' concrete interests. *See id.*; *Fed. Election Comm. v. Akins*, 524 U.S. 11, 24 (1998) ("abstract" harm, such as "injury to the interest in seeing that the law is objected," lacks "the concrete specificity" necessary for standing). As discussed above, any alleged inadequate procedure arising from the agencies' failure to adequately analyze potential impacts from MO3 and MO4 did not harm CSRIA's members because the agencies did not select either of these alternatives. As such, CSRIA cannot assert that the agencies' alleged defective analyses in the FEIS made any threat to its members' interests "reasonably probable." *California*, 911 F.3d at 570.

In short, CSRIA seeks to do exactly what the Supreme Court has instructed that a claimant cannot do. It is asserting "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*." *Summers*, 555 U.S. at 496. This is insufficient to establish Article III standing for CSRIA's cross-claim, and it should be dismissed.

FED. DEFS.' MOTION TO DISMISS                10

### 2. CSRIA does not allege a redressable injury.

As demonstrated above, CSRIA does not identify any actual injury to its members resulting from the ROD or FEIS. But even if it had, CSRIA does satisfy its obligation of demonstrating redressability under the third prong of the standing analysis.

To establish Article III standing, a claimant must establish that its asserted injury-in-fact "is likely to be redressed by a favorable court decision." *WildEarth Guardians v. U.S. Dept. of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (quoting *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008)). A party asserting a procedural injury, such as CSRIA attempts to here, must show "that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action." *WildEarth Guardians*, 795 F.3d at 1156 (*quoting Gutierrez*, 545 F.3d at 1226–27). Thus, the Supreme Court has instructed that "[w]hen a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

Here, consistent with the discussion above, CSRIA cannot establish redressability because it does not allege that it was harmed by the "agency's ultimate decision of whether to take or refrain from taking a certain action." *See WildEarth Guardians*, 795 F.3d at 1156 (quoting *Gutierrez*, 545 F.3d at 1226-27). Indeed, CSRIA's cross-claim includes no indication that it even *wants* the agencies to "reconsider the decision" ultimately at issue in this litigation— the decision to adopt the Preferred Alternative. *See Massachusetts*, 549 U.S. at 517–18. But even if CSRIA were somehow claiming injury from that decision, the analysis it really wants the agencies to pursue—a more pessimistic analysis of the detrimental impacts of two rejected action

FED. DEFS.' MOTION TO DISMISS        11

alternatives—would not plausibly "prompt [them] to reconsider" that decision. *See id.* Accordingly, CSRIA cannot demonstrate any alleged injury that "is likely to be redressed by a favorable court decision," and its cross-claim should be dismissed on that basis as well. *See WildEarth Guardians*, 795 F.3d at 1154.

## CONCLUSION

CSRIA has failed to establish the jurisdiction of this Court for its cross-claim because it failed to allege facts that could support Article III standing to pursue the cross-claim. CSRIA's intervention as defendant in this case is ultimately aimed at *supporting* the decision made by the Corps and Reclamation in the ROD. Because of this focus, CSRIA's cross-claim asks little more than for the Court to engage in a meaningless exercise of scrutinizing alternatives not adopted to see if they hypothetically mesh with CSRIA's narrow institutional goals. Article III prohibits such advisory opinions on matters that CSRIA does not plausibly allege harm it or its members' cognizable interests. The Court therefore should dismiss CSRIA's cross-claim.

Respectfully submitted this 19th day of May, 2021.

JEAN E. WILLIAMS, Acting Assistant Attorney General

*/s/ Romney S. Philpott*
ROMNEY PHILPOTT, Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1810 | Fax: (303) 844-1350
Email: Romney.Philpott@usdoj.gov

MICHAEL R. EITEL, Senior Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section

FED. DEFS.' MOTION TO DISMISS            12

999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1479 | Fax: (303) 844-1350
Email: Michael.Eitel@usdoj.gov;

*Attorneys for Federal Defendants*

FED. DEFS.' MOTION TO DISMISS         13

## CERTIFICATE OF SERVICE

    I certify that on May 19, 2021, the foregoing was electronically filed with the Court's electronic filing system, which will generate automatic service upon all Parties enrolled to receive such notice.

                                        */s/ Romney S. Philpott*
                                        Romney Philpott