June 29th, 2022

Honorable Michael Simon
Oregon District Court

In re: NWF v. NMFS, Case No. 3:01-cv-00640-SI

Your Honor,

My name is *Him-ya-koom-seeloo*, Nez Perce Indian only,  (attached), enjoined by the law of nations. I am not an attorney. My only wish is to see the sovereigns accept their burdens and benefits, respectively.

On June 7th, 2022, I was granted a point of privilege and introduced the attached document, *expressio unius est exclusio alterius*, to the Natural Resources Subcommittee of the Nez Perce Tribe. A week later, on June 14th, I was granted another point of privilege to the Nez Perce Tribal Executive Council(NPTEC) meeting, minutes forth coming, if necessary. At this meeting, I was informed that none of the council members had received my document. So I hand delivered it to each of their mail boxes later that day. On June 28th, at another NPTEC meeting, I was granted another point of privilege and further explained the posit of the attached document to the members present. At this meeting, I was informed by the NPTEC that they would not be able to give me an answer to include my corrections of material fact until their next regular meeting of July 12th.

Per your order from October of last year, July 31st is when the parties are due before the court with a "long term" solution for salmon recovery. The 12th to the 31st of July is

only 19 days to apply the corrections of material fact to this case, if the NPTEC chooses to include these corrections.

The attached document doesn't not include any privileged information but rather entirely public except my personal information. Please keep my all personal information private until all parties are compliant with the law.

I am unofficially asking for a *sua sponte* continuance of the stay of proceedings of a month to August 31st, 2022 or as long as the court deems advisable per the merits of the attachment. Suspension of rules of the court are within the discretion of the court per LR 1-4. After several hours of reading and thought behind the jurisprudence of the United States Judiciary, please carry my respect and admiration to all persons under the Rule of Law.

Respectfully, dated this 61,104th day since June 11th, 1855,

Nez Perce Indian,
All Rights Reserved.



United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Northern Idaho Agency
P.O. Drawer 277
Lapawi, ID 83540-0277



TAKE PRIDE
IN AMERICA

IN REPLY REFER TO:
Office of the Superintendent

TO WHOM IT MAY CONCERN:

This is to certify that **AARON PATRICK GOULD**, Social Security No.           Tribal Identification No.            listed on the **Nez Perce Basic Membership Roll**, an official record of the Northern Idaho Agency, Lapwai, Idaho, as being **Nez Perce Indian Blood**, and having been born

*Greg LaFrance*
Superintendent

State of Idaho        )
                      )
County of Nez Perce   )

On this <u>29th</u> day of <u>June</u> in the year <u>2009</u>, before me <u>Gloria J. Greene</u>, personally appeared <u>Greg LaFrance</u>, known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

*Gloria J. Greene*
Notary Public in and for the State of **Idaho**, residing at **Lapwai**.
My Commission Expires **06-12-2012**.

Aaron Gould
Nez Perce Indian
June 7, 2022

## *expressio unius est exclusio alterius*

Comes now, Nez Perce Indian, Aaron Gould, to provide facts to declare the legal status of myself as a Nez Perce Indian and my interest in the role of fisheries master of administration in the current US Oregon District Court - Case No. 3:01-cv-00640-SI (National Wildlife Federation v. National Marine Fisheries Service, et al)(NWF v. NMFS,et al).

### Brief History of the Case

Beginning in the 1990's, several fish species from the Columbia River were petitioned and added to the Endangered Species List and as a requirement of the Endangered Species Act(ESA) the US Government Executive branch are required to produce a Biological Opinion(BiOp) containing a description of certain actions and/or non-actions that the Executive Branch would take to keep the ESA listed fish species in the Columbia River from going extinct and meet recovery and keep the Federal Columbia River Power System(FCRPS) in compliance with the ESA. The inception of this case begins with the plaintiffs suing the US Executive for arbitrary and capricious administration of the ESA under the Administrative Procedures Act(APA). There is no need to descend into the particulars of the case, the Joint Motion for a Stay from October 2021 requires a more direct & immediate declaration of reserved rights and interests of the Nez Perce people.

### Nez Perce History Clarification

On June 11th, 1855 the United States and my sovereign decided how we would tie ourselves together in a treaty of peace. Article III of the sovereign instrument reads as follows,

*expressio unius est exclusio alterius*

> *"And provided that, if necessary for the public convenience, roads may be run through the said reservation, and, on the other hand, the right of way with free access from the same to the nearest public highway is secured to them, as also the right, in common with **citizens of the United States**, to travel upon all public highways. The use of the Clear Water and other streams flowing through the reservation is also secured to **citizens of the United States** for rafting purposes, and as public highways.*
>
> *The exclusive right of taking fish in all the streams where running through or bordering said reservation is further secured to said Indians; as also the right of taking fish at all usual and accustomed places in common with **citizens of the Territory**; and of erecting temporary buildings for curing, together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle upon open and unclaimed land."*

### Territory or US - Citizenship Status

As it is clear in the text of the treaty, there is a distinct legal difference between who I, as a Nez Perce Indian, am required to consider while taking fish. There is no more "Citizen of the Territory" that I am required to consider. This missing fact is not in any of the United States jurisprudence, therefore ripe. It is mentioned most notably and probably from the most quoted fishing case in history, US v Winans, 1905. *"Citizens might share it, but the Indians were secured in its enjoyment by a special provision of means for its exercise." 198 US 391 at 381*. In all fish context(s), Territorial or US Citizen, might share it. Obviously, the only alternative to this sentence written by the Supreme Court of the United States(SCOTUS) is; Indians will decide if and when we share fish.

In 1969, Oregon Docket 68-513, US v Oregon, Judge Belloni of the Oregon District Court in writing the seminal *Belloni Decision*, was heavily influenced by *MAISON v. CTUIR*, the fishing case. Footnote 4 of this case reads, *"Of course, this does not mean that a state cannot, by reasonable laws and regulations, **exclude from fishing those of its citizens who are not parties to the treaty**." 314 F.2d 169 at 171, Maison v. CTUIR, 1963*. Subsequent proceedings of US v.

2

*expressio unius est exclusio alterius*

Oregon, Judge Marsh and King, have stated twice, *"I find that those treaties, and the judicial decisions which have struggled with their interpretations, have sought to achieve a system which recognizes an organized tribal structure as **the administrator** of rights reserved under the treaties in the form and substance which most closely resembles the framework envisioned by the treaties." 787 F Supp 1557 at 1572, US v. Oregon, 1992, King Court filed April 11, 2008.* Therefore, it has been the goal of the US Judiciary through the Oregon District Court to recognize an Indian structure for fisheries administration. In 2018, US v. Oregon was dismissed without this recognition. However, in 2018, the treaty administration of Article III provisions was at the SCOTUS on 3 occasions, and on all 3 occasions the SCOTUS affirmed, albeit awkwardly, the rights of Indians but still no recognition of treaty administrational rights. See *HERRERA V. WYOMING, US V. WA - CULVERTS CASE, AND COUGAR DEN INC.*

However, now we turn to a 2020 treaty travel rights decision from the Montana District Court in Missoula with *LAKE COUNTY BOARD OF COMMISSIONERS V. CONFEDERATED SALISH AND KOOTENAI TRIBES*. Importantly, the Indians of the CSKT treaty have an exact copy of the Nez Perce Treaty as Article III, with exception to the Clearwater. It is instructive as to the rights of the United States through treaty. It reads, *"Similar to the Hell Gate Treaty, the Lame Bull Treaty includes provisions regarding non-Indians' right to travel through tribal lands." 454 F. Supp 3d 957, CSKT v. LAKE COUNTY, 2020.* This case is written with the rights of non-Indians in mind. Which is difficult to understand because we, Indians, are conditioned to always express the treaty rights reserved to us. Read Art III, again, and see what rights were reserved to *NON-INDIANS*.

Whether we are discussing a Territorial or US Citizens right by treaty is paramount to understanding the true intent of both contracting sovereign parties. For example, very important

3

*expressio unius est exclusio alterius*

context to read Art III *non-Indian* fishing comes from the US plenipotentiary, in 1854, Isaac Stevens outlines the meaning of the fisheries provisions by stating, **"The right of fishing at all common and accustomed places is further secured to them: Proviso against <u>States</u> or fenced claims."** *US State Department Treaty 281 documents page 4, Medicine Creek Treaty, National Archives and Records Administration, Regional and National.*

In 2019, SCOTUS Chief Justice warns in his dissenting opinion, *"In the meantime, do not assume today's decision is good news for tribal members across the country. Application of state safety regulations, for example, could prevent Indians from hunting and fishing in their traditional or preferred manner, or in particular "usual and accustomed places." I fear that, by creating the need for this untested exception, the unwarranted expansion of the Yakamas' right to travel may undermine rights that the Yakamas and other tribes **really did reserve.**" 139 S. Ct. 1000 at 1026, Washington State Department of Revenue v. Cougar Den Inc.*

I am in agreement with the Chief Justice. The self-clauses of the Treaty are being blindly exercised by our sister sovereigns and represented in the highest court of the USA all the while keeping us from the rights we really did reserve. In other words, correct the errors and the rights reserved will present themselves.

### Correction of Repeated Errors of Material Fact

1. The 1855 Walla Walla Treaty Council(the Council) was in English and translated into Sahaptian, not Salish or Chinook. Recently 5-4 SCOTUS decision in *COUGAR DEN INC, 2019*, the majority citing Judge McDonald in Y*AKAMA INDIAN NATION, 1996,* based on the William Yallup testimony that the Walla Walla Treaty Council was in Chinook. I have in my possession two copies of the council minutes from 1878 from the Bureau of Indian

4

*expressio unius est exclusio alterius*

Affairs and a copy from the Superintendent of Indian Affairs from 1856-59, James Nesmith, both copies state nothing about the Chinook Trade Language.

2. The Nez Perce could both read and write. Indian Canons of Construction need not apply. Simple Statutory Interpretation is sufficient to clearly understand the letter of the law and intent of both parties at treaty time. *Hudson Bay Archives - Winnipeg, Manitoba.* In 1826, after the Oregon Treaty, several young men went to school at Red River, the seat of the Hudson Bay Company. See Nez Perce Ellis and the 11 laws of the Nez Perce 1841. Also researching, Tom Hill, Delaware Indian, 99.9% sure he graduated Dartmouth Law School and resigned that distinction to live here as a free Indian with the Nez Perce. Spokane Garry was also a well known writer, his letters and penmanship are immaculate. Although he was a Spokane Indian, he was present at the Council and was intimately knowledgeable of the affairs of the Nez Perce.

**Modern Reserved Rights of Nez Perce and Application to the Salmon BiOp case**

It is clear from US Jurisprudence that I as a Nez Perce Indian have an interest in the sole sovereign administrative power of fisheries in all contexts as my sovereign arm reaches. The USA and its grantees are to act in alignment with the Nez Perce Sovereignty. And as the application of Nez Perce Sovereignty meets the ground, the USA is to help meet the sovereign obligation of the treaty. Both should share the burden and benefit of the treaty. No other outcome will meet the standards of sovereign contract. We can check the historical record of how my Nez Perce people have aided, bled, and died for the protection of the US Constitution before, during, after the US Civil War. Remember our treaties during this time were with the USA and not the Confederacy of Southern States.

*expressio unius est exclusio alterius*

At 16 USC §832(a), enumerates the role of the Bonneville Power Administration(BPA) in the FCRPS. This code declares the BPA as a temporary(provisional) administration and seeks the establishment of a permanent administrator for the disposition of the sale of electricity of the FCRPS in the Columbia River Basin. This is my interest as a Nez Perce Indian as the legal permanent administrator.

National Marine Fisheries Service(NMFS) is responsible for overseeing the scientific compliance standards of the ESA with federal law. However many times it has been, since the listing of the fish species in 1990's, the NMFS has had their BiOp remanded for failure to comply with federal law namely ESA under the APA. NMFS continues to not define Salmon Recovery as a goal or metrics for the completion of the goal. If NMFS provided a clear standard to meet Salmon Recovery, that would be a harmful act to the Nez Perce sovereign. So by NMFS remaining on the contours of Salmon Recovery, the USA is preserving my interest in the status as master fisheries administrator. This is my interest to set administrative goals and standards by reserved rights at treaty time, in common with noone except those similarly situated.

The US Army Corps of Engineers oversees a majority of the maintenance and operation of the FCRPS. In 1858, the Nez Perce and US Army signed a military agreement. This agreement is the main reason why my Chief Lawyer agrees to the 1863 treaty and gives to the USA a temporary portion of the reservation and resources to help the USA win the Civil War. We agreed to commonly defend the soil from *de facto* regimes of administration and to protect each other at all times. *Essayons (Let us try)*.

The 3 federal action agencies responsible for ESA, cannot fully exercise the trust that is required to save the fish. The trust belongs to me, and others similarly situated.

*expressio unius est exclusio alterius*

## Ripeness

I am only one Indian. I would have liked more time to come to a very civil arrangement for the transitional clarity of treaty reserved rights of fisheries administration but the language that is being used to describe the Salmon BiOp case and the media posts that discuss US Congressional fixes or stays of legal proceedings to come to an agreement are not necessary and are contrary to the operation of my treaty and the USA. I am forced to write this because none of the agreements, accords, fixes, etc. contain standards that can be defended because Discovery standards of the Salmon BiOp case and complaint have not been met. It is not clear to me how I can timely inform the Nez Perce sovereign before July 31, 2022, as the joint motion for a stay in the proceeding ends and the parties are supposedly going to make a long-term agreement to save the fish. The late Judge James R. Redden wisely once stated during a Salmon BiOp hearing, "I know of no agreement that supersedes the law." Fisheries Administrational power has been ripe for the exercise by the Nez Perce since the surrounding Territories of the United States, lost their territorial distinction and joined the other States with voting power in Congress and became a US Citizen. This is what our sovereign contract details as agreed to by the USA.

## This Indian's Prayers

I have spent many hours and at personal financial cost to be able to further enumerate and/or describe any portion of this document. During the beginning of this journey into the legal history of Nez Perce legal rights reserved at treaty time, I prayed for understanding. My prayer was answered. Now I pray for the strength and humility to express clearly that a firm and definite mistake has been made. I pray to find my mistakes and remedy them by my law and meet my Nez Perce sovereign standards of *sui juris*.

                                                    Nez Perce Indian