ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
MICHAEL R. EITEL, Acting Assistant Chief
JOHN H. MARTIN, Senior Trial Attorney
ROMNEY PHILPOTT, Senior Trial Attorney
Natural Resources Section
Wildlife and Marine Resources Section
999 18th Street, Suite 600 North Terrace
Denver, Colorado 80202
Tel: (303) 319-5359 Martin; (202) 532-5077
(Philpott); Fax: (303) 844-1350
Email: John.H.Martin@usdoj.gov;
Romney.Philpott@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

|  |  |
|---|---|
| **NATIONAL WILDLIFE FEDERATION,** et al., | Case No.: 3:01-cv-00640-SI |
| Plaintiffs, | **FEDERAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND MEMORANDUM IN SUPPORT** |
| and | |
| **STATE OF OREGON**, et al., | |
| Intervenor-Plaintiffs, | |
| v. | |
| **NATIONAL MARINE FISHERIES SERVICE,** et al., | |
| Defendants, | |
| and | |
| **PUBLIC POWER COUNCIL, et al.**, | |
| Intervenor-Defendants. | |

## TABLE OF CONTENTS

**PAGE**

MOTION..................................................................................................................................6

MEMORANDUM IN SUPPORT ............................................................................................6

I.    INTRODUCTION ........................................................................................................6

II.    BACKGROUND ..........................................................................................................9

III.    STANDARD OF REVIEW ........................................................................................12

IV.    ARGUMENT ..............................................................................................................13

      A.    The Northwest Power Act grants exclusive jurisdiction to the Court of Appeals to hear suits challenging Bonneville's final decisions and actions, and their implementation. .........................................................................................................14

      B.    Bonneville's final actions in the Joint Decision are directly at issue here, precluding this Court's jurisdiction. ......................................................................16

      C.    The Northwest Power Act's exclusive review provision covers those actions that are inextricably intertwined with Bonneville's final action or decision.................17

            1.    Ninth Circuit law holds that exclusive review provisions apply to actions that are inextricably intertwined with the covered action. ..........................17

            2.    As a factual and legal matter, the Corps' and Reclamation's actions are inextricably intertwined with Bonneville's final action and decision. .......20

            3.    The Court cannot adjudicate claims over NMFS's Biological Opinion without attacking an essential ingredient of Bonneville's decision, rendering those claims subject to the Northwest Power Act's exclusive review provision.........................................................................................26

      D.    "Careful Pleading" cannot overcome the Northwest Power Act's jurisdictional barrier.................................................................................................................28

V.    CONCLUSION...........................................................................................................30

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Adorers of the Blood of Christ U.S. Province v. Transcon. Gas Pipe Line Co LLC,*
53 F.4th 56 (3d Cir. 2022) ..........................................................................17, 22

*Akkerman v. United States,* 731 F. Supp. 3d 1165 (C.D. Cal. 2024)......................................18, 19

*Am. Bird Conservancy v. FCC,* 545 F.3d 1190 (9th Cir. 2008)........................................18, 19, 29

*Ass'n of Pub. Agency Customers v. Bonneville,* 126 F.3d 1158 (9th Cir. 1997)...........................14

*Cal. Save Our Streams Council v. Yeutter,* 887 F.2d 908 (9th Cir. 1989)............18, 20, 26, 28, 29

*Cent. Montana Elec. Power Co-op., Inc. v. Adm'r of Bonneville Power Admin.,*
840 F.2d 1472 (9th Cir. 1988) .......................................................................14

*City of Tacoma v. FERC,* 460 F.3d 53 (D.C. Cir. 2006)...................................................27

*City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320 (1958)..........................................20

*Ctr. for Biological Diversity v. Bernhardt,* 982 F.3d 723 (9th Cir. 2020)...................................26

*Ctr. for Biological Diversity v. Env't Prot. Agency,* 847 F.3d 1075 (9th Cir. 2017) ..............19, 24

*Dep't of Water & Power of City of L.A. v. Bonneville Power Admin.,* 759 F.2d 684 (9th Cir.
1985) ............................................................................................................6

*Forelaws on Bd. v. Johnson,* 709 F.2d 1310 (9th Cir. 1983)............................................20

*Idaho Rivers United v. Foss,* 373 F. Supp. 2d 1158 (D. Id. 2005) ....................................26

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994) ...................................12

*Me. Council of Atl. Salmon Fed'n v. NMFS,* 858 F.3d 690 (1st Cir. 2017)...................................27

*Nader v. U.S. EPA,* 859 F.2d 747 (9th Cir. 1988) ........................................................30

*NRIC v. NMFS,* 818 F. Supp. 1399 (W.D. Wash. 1993) ....................................15, 22, 24

*Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp. Rsch. & Special Programs Admin.,*
457 F.3d 956 (9th Cir. 2006) .......................................................................30

*Nw. Res. Info. Ctr. v. NMFS (NRIC I),* 25 F.3d 872 (9th Cir. 1994) ...................14, 15, 16, 25, 30

*Nw. Res. Info. Ctr. v. Nw. Power & Conservation Council (NRIC II),* 35 F.3d 1371
    (9th Cir. 1994) ..............................................................................................................9

*Pac. Power & Light Co. v. Bonneville Power Admin.,* 795 F.2d 810
    (9th Cir. 1986) ...........................................................................6, 14, 15, 17, 18

*Pub. Util. Dist. No. 1 of Clark Cnty. v. Johnson,* 855 F.2d 647 (9th Cir. 1988) ...........................15

*Shafer & Freeman Lakes Env't Conservation Corp. v. FERC,* 992 F.3d 1071
    (D.C. Cir. 2021) ........................................................................................................27

*Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83 (1998) ..........................................................13

*Sw. Ctr. for Biological Diversity v. FERC,* 967 F. Supp. 1166 (D. Ariz. 1997) ...........................26

*Transmission Agency of N. Cal. v. Sierra Pac. Power Co.,* 295 F.3d 918 (9th Cir. 2002) ..........30

*United Aeronautical Corp. v. U.S. Air Force,* 80 F.4th 1017 (9th Cir. 2023) ........................18, 19

*United States v. Texas,* 599 U.S. 670 (2023) ................................................................................17

*White v. Lee,* 227 F.3d 1214 (9th Cir. 2000) ................................................................................12

**STATUTES**

16 U.S.C. § 832a(a) ..............................................................................................................11, 20

16 U.S.C. § 832f ..........................................................................................................................25

16 U.S.C. § 838b(b) ..............................................................................................................21, 24

16 U.S.C. § 838b(d) ...................................................................................................10, 11, 21, 24

16 U.S.C. § 839(2) .......................................................................................................................24

16 U.S.C. § 839b(h)(5) ..................................................................................................................6

16 U.S.C. § 839b(h)(6)(E) .............................................................................................................9

16 U.S.C. § 839b(h)(11)(A)(i) .....................................................................................................10

16 U.S.C. § 839b(h)(11)(B) ...................................................................................................10, 27

16 U.S.C. § 839c(b)(1) .................................................................................................................10

16 U.S.C. § 839d-1 ................................................................................................................20, 25

16 U.S.C. § 839e(a)(1) .................................................................................................................25

16 U.S.C. § 839f(e)(5) ................................................................................................ passim

16 U.S.C. § 1536(a)(2) ......................................................................................................27

16 U.S.C. § 1536(o)(2) ......................................................................................................27

28 U.S.C. § 1631 ................................................................................................................30

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1)...............................................................................................6, 12

Fed. R. Civ. P. 12(c) ...................................................................................................6, 12

Fed. R. Civ. P. 12(h)(3)...............................................................................................6, 12

**OTHER AUTHORITIES**

H.R. Rep. No. 96-976(I) (May 15, 1980), reprinted in 1980 U.S.C.C.A.N. 5989..........................9

85 Fed. Reg. 63834 (Oct. 8, 2020)........................................................................ passim

## MOTION

Federal Defendants move to dismiss National Wildlife Federation (NWF) Plaintiffs' and State of Oregon's supplemental complaints (ECF 2325, 2396) for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), 12(c), and 12(h)(3).[1] This Court lacks subject matter jurisdiction because NWF Plaintiffs' and the State of Oregon's claims challenge the final actions and decision of the Bonneville Power Administration and thus are subject to the exclusive and original jurisdiction of the Ninth Circuit under the judicial review provision of the Pacific Northwest Electric Planning and Conservation Act (Northwest Power Act), 16 U.S.C. § 839f(e)(5).

Under Local Rule 7-1(a), undersigned counsel certifies that Federal Defendants, NWF Plaintiffs, and the State of Oregon made a good-faith effort to resolve the dispute and have been unable to do so.

## MEMORANDUM IN SUPPORT

## I.     INTRODUCTION

Congress assigned the Ninth Circuit with exclusive original jurisdiction to review "final actions and decisions taken pursuant to [the Northwest Power Act] by the Administrator" of the Bonneville Power Administration, "or the implementation of such final actions." 16 U.S.C. § 839f(e)(5); *Dep't of Water & Power of City of L.A. v. Bonneville Power Admin.*, 759 F.2d 684, 685 (9th Cir. 1985). Any "final actions and decisions ... or the implementation of such final actions" Bonneville takes pursuant to any of its four enabling statutes are thus subject to direct review by the Ninth Circuit. *Pac. Power & Light Co. v. Bonneville Power Admin.*, 795 F.2d

---

[1] At this time, and without waiving the ability to do so, Federal Defendants are not moving to dismiss the Spokane Tribe of Indians' and the Coeur d'Alene Tribe's complaints (ECF 2320, 2330) given the complaints are stayed by the Court's Sept. 28, 2023, Order. *See* ECF 2443.

810, 814 (9th Cir. 1986) (original jurisdiction of courts of appeal under Northwest Power Act is "exclusive"). Plaintiffs' supplemental complaints and their injunction motions flout this law.

In 2020, Bonneville, the U.S. Army Corps of Engineers, and the Bureau of Reclamation jointly issued a Record of Decision to govern Columbia River System operations, maintenance, and configuration. *See* Record of Decision ("Joint Decision"), 85 Fed. Reg. 63834 (Oct. 8, 2020). This Joint Decision was supported by the Columbia River System Operations Environmental Impact Statement (ACE001055181) and the National Marine Fisheries Service's (NMFS) Biological Opinion (NMFS00362178).[2] Plaintiffs raise Endangered Species Act (ESA) and National Environmental Policy Act (NEPA) claims challenging the Joint Decision and the Biological Opinion, but only against the Corps, Reclamation, and NMFS.

Bonneville, however, has shared and overlapping responsibilities with the Corps and Reclamation over fish and wildlife conservation, hydropower production, and water management for the Columbia River projects. "The co-lead agencies share a mandate to exercise their responsibilities for management and operation of the [Columbia River System], consistent with the purposes of the Northwest Power Act and other applicable laws." 85 Fed. Reg. at 63859; *id*. at 63837 (third column). To meet these obligations, the three action agencies exercise their various authorities in an integrated and coordinated way—demonstrated by the *joint* analysis and *joint* decision-making at issue in this case. *Id*. The Corps' and Reclamation's decisions in the Joint Decision are thus inextricably intertwined with Bonneville's final action and decision.

Consequently, when Plaintiffs challenge the decisions of the Corps and Reclamation in the Joint Decision relating to the adequacy of fish and wildlife conservation, hydropower

---

[2] For the Administrative Record, *see* ECF 2371, 2372.

production, and water management—actions that implicate Bonneville's authorities—they are challenging Bonneville's actions in the Joint Decision. Bonneville's decisions regarding the Columbia River System cannot be segregated from the Corps' and Reclamation's decisions, necessarily rendering any challenge to the Joint Decision a challenge to Bonneville's decision. This is evident in Plaintiffs' supplemental complaints, which expressly seek to vacate the Joint Decision in its entirety, including Bonneville's decisions and actions. *See* ECF 2396 at 72 (¶ 7); ECF 2325 at 59 (¶ 9).

Plaintiffs' injunction motions lay bare this attack on Bonneville's final decision. Congress intended Bonneville's decisions under the Northwest Power Act—including the balance of fish and wildlife and power considerations—to be reviewed in the court of appeals. 16 U.S.C. § 839f(e)(5). Yet, through the request for extraordinary preliminary relief, Plaintiffs ask the Court to remove Bonneville's objectives and authorities from operational decision-making in the Columbia River System, including the Northwest Power Act's obligation to provide "an adequate, efficient, economic, and reliable power supply." *Id*. § 839b(h)(5).[3]

Plaintiffs go further, asking the Court to enjoin activities undertaken by Bonneville.[4] Even Plaintiffs' challenge to NMFS's 2020 Biological Opinion attacks Bonneville's decisions; for example, arguing that NMFS's consideration of Bonneville's funding and implementation of a comprehensive habitat restoration program is arbitrary and capricious.[5]

---

[3] *See, e.g*., ECF 2530 at 48 (asking the Court to modify spill operations to remove "BPA's power purposes" from consideration); *id*. at 52 (asking to enjoin operations needed to "benefit power generation"); *id*. at 54 (asking to remove the "power-cost objective" from decision-making).

[4] *See, e.g*., ECF 2530-2 at 13 (requesting an injunction to fund tribal kelt program); ECF 2531 at ¶ 137 (Plaintiffs admitting Bonneville funds kelt reconditioning).

[5] *Compare* ECF 2526 at 44-46 (challenging adequacy of habitat mitigation), *with* 85 Fed. Reg. 63866 ("Bonneville proposes to implement targeted tributary and estuary improvements during the term of this [Biological Opinion] to provide meaningful biological benefits for ESA-listed species"); *see also* ACE000339735-37 (Bonneville's mitigation action plan that includes habitat

Plaintiffs' complaints and injunction motions run afoul of Congress' decision to place the exclusive authority to review these claims in the court of appeals. They are attacking Bonneville's actions and decisions in the Joint Decision and seeking to alter and constrain Bonneville's authorities over the Columbia River System. These are claims that Congress said belong only in the courts of appeals. Because the Court cannot adjudicate Plaintiffs' claims against the Corps, Reclamation, and NMFS without attacking critical ingredients of the Joint Decision by Bonneville, the Court lacks jurisdiction over Plaintiffs' supplemental complaints.

## II.     BACKGROUND

The waterflows through the Columbia River are the "linchpin" for "two great natural resources"—salmon and hydropower production—and these waterflows have been central in the struggle to balance the at times conflicting interests of the two. *Nw. Res. Info. Ctr. v. Nw. Power & Conservation Council (NRIC II)*, 35 F.3d 1371, 1375-79 (9th Cir. 1994); H.R. Rep. No. 96-976(I), at 45-49 (May 15, 1980), *reprinted in* 1980 U.S.C.C.A.N. 5989, 6011-16. Congress passed the Northwest Power Act in 1980 to address these competing, at times conflicting, interests in salmon and hydropower production. *NRIC II*, 35 F.3d at 1377; H.R. Rep. No. 96-976(I) at 48. The legislation did so by imposing obligations on the water management agencies—Bonneville, the Corps, Reclamation, and the Federal Energy Regulatory Commission—and by changing the status quo for water management on the river, to provide "improved survival of such fish at hydroelectric facilities" and "flows of sufficient quality and quantity between such facilities." *NRIC II*, 35 F.3d at 1378, n.12 (citing 16 U.S.C. § 839b(h)(6)(E)).

---

restoration actions to help fulfill Bonneville's "fish and wildlife responsibilities" under the Northwest Power Act).

Under the Northwest Power Act, Bonneville, the Corps, and Reclamation thus "share responsibility and legal authority for managing the Federal elements of the" Columbia River System. 85 Fed. Reg. at 63834. They also "coordinate the operation of the [Columbia River System]." *Id*. The three agencies, for example, share the obligation under the Northwest Power Act to give "equitable treatment" to fish and wildlife. 16 U.S.C. § 839b(h)(11)(A)(i); *see also id*. § 839b(h)(11)(B). The agencies, in turn, jointly adopted decisions in the Joint Decision to, in part, meet these Northwest Power Act obligations. *See* 85 Fed. Reg. at 63859 (addressing obligations to "adequately protect, mitigate, and enhance affected fish and wildlife in a manner that provides such fish and wildlife equitable treatment with the other purposes for which the [Columbia River System] is managed and operated."). The agencies described, for example, how water management actions continue to meet the Northwest Power Act's requirements, *inter alia*, the "equitable treatment" of fish and wildlife. *See* 85 Fed. Reg. at 63859-60 (describing operational and structural measures for fish, a "Water Management Plan," and flows that support wetland vegetation used by wildlife).

The Joint Decision thus reflects all three agencies' shared obligations under the Northwest Power Act. It also addresses Bonneville's actions under the Northwest Power Act to provide "an adequate, efficient, economical, and reliable power supply that supports the integrated Columbia River Power System." 85 Fed. Reg. at 63836 (Objective 4). Load shaping, for example, involves scheduling and operating power generation to match changes in power demand, adjusting water storage and releases accordingly, which Bonneville does "day-to-day, hour-to-hour, and even second-to-second." ACE001056157. In addition, Bonneville also "maintains the electrical stability and electrical reliability of" the federal transmission system, *see* 16 U.S.C. § 838b(d), and meets the power requirements of regional customers, *id*. §§

839c(b)(1), 838b(d). The ability of the transmission system to "reliably accommodate generation from the [Columbia River System] projects may impact water management functions at the projects (e.g., the location and amount of power generation required to maintain system reliability, and the best location to generate to meet the need.)." ACE001056157; 85 Fed. Reg. at 63864 ("transmission system reliability" depends on "power demand and supply fluctuations").

The Joint Decision therefore shows that management of the Columbia River System *requires* that Bonneville, the Corps, and Reclamation act in concert with each other. *See*, *e.g*., 16 U.S.C. § 838b(d) (Bonneville shall "maintain the electrical stability and electrical reliability of the Federal system"); *id*. § 832a(a) ("the Secretary of the Army shall schedule the operations of the several electrical generating units and appurtenant equipment of the Bonneville project in accordance with the requirements of the [Bonneville] Administrator."); 85 Fed. Reg. at 63834 ("Bonneville schedules and dispatches power" within the dam's operating limits).

Recognizing Bonneville's role in managing the Columbia River System, several Plaintiffs challenged Bonneville's final action to adopt the Joint Decision at the Ninth Circuit in *Pac. Coast Federation of Fishermen's Ass'n (PCFFA) v. Bonneville Power Admin.,* No. 20-73761 (9th Cir.). They then agreed to dismiss that petition based on an agreement reached in 2023. While Plaintiffs had the opportunity to reinstate the petition following termination of the 2023 agreement, they chose not to do so. *Id.* (Order of Feb. 23, 2024) ("Reinstatement shall be by notice filed by any party in this court and served on the other parties and the Circuit Mediator within 28 days of either the termination of the MOU or a request for mediation.").

Instead, Plaintiffs chose to maintain the lawsuit in this Court, which challenges two actions in this case: (1) the Joint Decision issued by Bonneville, the Corps, and Reclamation; and (2) NMFS's 2020 Biological Opinion reviewing the actions adopted in the 2020 Joint Decision.

*See* ECF 2325 ¶ 2.c. (Oregon challenging the Joint Decision "issued by the Corps, BOR, and BPA in September 2020" and NMFS's 2020 Biological Opinion); *id*. at 58-59 ¶¶ 2, 9 (Oregon seeking to vacate the Joint Decision and Biological Opinion); ECF 2396 at ¶¶ 5-6 (NWF Plaintiffs challenging the Joint Decision issued by "the Corps, BOR, and the Bonneville Power Administration" and NMFS's 2020 Biological Opinion); *id*. at 71-72 ¶¶ 2, 7 (NWF Plaintiffs' seeking vacatur of the Joint Decision and Biological Opinion). Neither NWF Plaintiffs nor the State of Oregon named Bonneville as a defendant, even though Plaintiffs challenge the three agencies' decision and NMFS's Biological Opinion that addresses the three agencies' compliance with the ESA. 85 Fed. Reg. at 63862 (Joint Decision, the three agencies adopting and relying on NMFS's 2020 Biological Opinion to satisfy their ESA obligations).

Plaintiffs then filed preliminary injunction motions, seeking to enjoin implementation of the Joint Decision and replace it with a mandatory injunction directly affecting Bonneville's, the Corps', and Reclamation's ongoing management and operation of the Columbia River System. ECF 2526; ECF 2530. In doing so, Plaintiffs expressly seek to impair and impede Bonneville's functions and authorities when managing the Columbia River System. *See* Section IV.C.2, *infra*.

## III.    STANDARD OF REVIEW

Federal Defendants move to dismiss Plaintiffs' complaints for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1), 12(c), and 12(h)(3). The party asserting subject-matter jurisdiction has the burden of proof to establish the Court's jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A jurisdictional attack can be either facial—confining the inquiry to the allegations in the complaint and assuming all facts as true—or factual—allowing the court to look beyond the complaint without necessarily presuming the facts to be true. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). This motion is

factual; it relies on Plaintiffs' supplemental Complaints (ECF 2325; ECF 2396), briefing of

Plaintiffs' Motions for Preliminary Injunction (ECF 2526; ECF 2530), and supporting materials.

This Court should also rule on this motion—and whether the Northwest Power Act, 16

U.S.C. § 839f(e)(5), precludes subject matter jurisdiction—*before* deciding Plaintiffs' motions

for a preliminary injunction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)

("Without jurisdiction the court cannot proceed at all in any cause.") (citation omitted).

## IV.    ARGUMENT

The Northwest Power Act grants exclusive authority to the courts of appeal to hear cases

against Bonneville challenging final actions and decisions it takes under the Northwest Power

Act and several other statutes. When Congress passed the Northwest Power Act, Congress

intended that Bonneville's final actions would only be reviewable in the court of appeals, not the

district court. By challenging the Joint Decision, Plaintiffs fail to heed this jurisdictional

allocation.

As explained below, Bonneville made decisions and acted in the Joint Decision under the

Northwest Power Act, thus triggering the Act's exclusive jurisdiction provisions. And Plaintiffs

seek to vacate the Joint Decision, including Bonneville's actions. ECF 2325 at 59 ¶ 9; ECF 2396

at 72 ¶ 7. This is a direct challenge to Bonneville's final decisions and action, which is only

reviewable in the Ninth Circuit. Plaintiffs cannot avoid this result by purporting to challenge

only the actions taken by other agencies involved in the Joint Decision. Actions by agencies

other than Bonneville are still subject to the exclusive jurisdiction provision when they are

inextricably intertwined with a Bonneville action, like the Joint Decision. Here, the three

agencies' actions are inextricably intertwined. Each agency shares intertwined responsibilities

under a panoply of laws, including the Northwest Power Act. The agencies, in turn, must jointly

manage the Columbia River System to meet these shared responsibilities. And the Joint Decision implements this joint and coordinated management of the System by setting out how the agencies collectively implement their shared responsibilities. Because Plaintiffs' complaints and the claims for injunctive relief would interfere with the coordinated and integrated management of the Columbia River System—including vacating Bonneville's final actions and decision—jurisdiction over these controversies lies exclusively in the Ninth Circuit.

A.    **The Northwest Power Act grants exclusive jurisdiction to the Court of Appeals to hear suits challenging Bonneville's final decisions and actions, and their implementation.**

The Ninth Circuit's exclusive original jurisdiction under the Northwest Power Act includes "suits to challenge . . . final actions and decisions taken pursuant to this chapter by the Administrator . . . or the implementation of such final actions, whether brought pursuant to [the Northwest Power Act], the Bonneville Project Act, the [Pacific Northwest Consumer Power Preference Act], or the Federal Columbia River Transmission System Act." 16 U.S.C. § 839f(e)(5) (citation modified). The Ninth Circuit has "consistently interpreted this judicial review provision [of the Northwest Power Act] with a broad view of" its original jurisdiction under that Act "and a narrow definition of district court jurisdiction." *Cent. Montana Elec. Power Co-op., Inc. v. Adm'r of Bonneville Power Admin.*, 840 F.2d 1472, 1475 (9th Cir. 1988) (citing *Pac. Power & Light* Co., 795 F.2d at 814).

The Ninth Circuit, for example, has held that it has exclusive jurisdiction under the Northwest Power Act, to the exclusion of district court jurisdiction, over claims challenging Bonneville's compliance with the ESA and NEPA. *Nw. Res. Info. Ctr. v. NMFS (NRIC I)*, 25 F.3d 872, 875 (9th Cir. 1994); *Ass'n of Pub. Agency Customers v. Bonneville*, 126 F.3d 1158, 1182-83 (9th Cir. 1997) (reviewing NEPA claims).

In *NRIC I,* the plaintiffs brought an ESA citizen suit in district court against a Bonneville decision, along with related claims against the Corps, Reclamation, and NMFS. Like the Joint Decision here, the Bonneville decision was called a "Water Management Record of Decision" and "[set] out a program designed to improve the life cycle of anadromous fish stocks." *NRIC I,* 25 F.3d at 874. The Ninth Circuit upheld the district court's dismissal, explaining that, while the plaintiffs structured their complaint as an ESA challenge, the *actions* challenged were "final actions by the agency carrying out its authorized mission of managing the river system and enhancing the fish stock" under the Northwest Power Act and thus covered by its exclusive review provision. *Id.* at 875.[6]

Thus, it simply does not matter under the Northwest Power Act what legal violation a plaintiff alleges. Rather, the Court must determine jurisdiction for judicial review under the Northwest Power Act "by looking to the nature of the conduct challenged rather than the label given the cause of action." *Pub. Util. Dist. No. 1 of Clark Cnty. v. Johnson*, 855 F.2d 647, 649 (9th Cir. 1988). If "the factual basis for the attack is an agency action authorized by the Act," the conduct challenged falls under the exclusive jurisdiction provided by the Northwest Power Act. *NRIC I*, 25 F.3d at 875. Thus, for jurisdictional purposes, "it matters not whether the [plaintiffs'] suit is grounded in contract, administrative law or some other legal theory. Instead, jurisdiction arises because the actions of the particular agency are being challenged and because of the nature of the agency action at issue." *Pac. Power & Light Co.*, 795 F.2d at 816.

---

[6] It is not material that the result of the decision in *NRIC I* was that the ESA claims against the Corps, Reclamation, and the Service remained in the district court. That Court did not address the issue presented here. In *NRIC I*, no party argued that the ESA claims against the other federal agencies were also subject to the exclusive jurisdiction provision of the Northwest Power Act. Bonneville, in fact, was the only action agency to take a formal final action by issuing a Record of Decision. *NRIC*, 818 F. Supp. at 1401; *NRIC I*, 25 F.3d at 874. In contrast, here the three action agencies issued one Joint Decision, and Plaintiffs challenge that one Joint Decision.

Thus, the question is whether Bonneville's action in the Joint Decision was made pursuant to its authority under the Northwest Power Act. *NRIC I*, 25 F.3d at 875. There can be no debate about that fact. *See* 85 Fed. Reg. 63859-63861 (describing obligations of Bonneville, Corps, and Reclamation under the Northwest Power Act that they share, as well as duties that fall solely to Bonneville, and how the Joint Decision discharges those duties); *id*. at 63862-63 ("Bonneville considered the ESA, NEPA and Northwest Power Act in making its decision" and adheres to all applicable laws); *id*. at 63870 (same). The Joint Decision therefore is very much like the Bonneville decision at issue in *NRIC I*, insofar as it represents "final actions by the agency carrying out its authorized mission of managing the river system and enhancing the fish stock" and includes "increasing spills and flows to benefit salmon and ways of replacing power that was lost through water storage, flow augmentation and spill benefitting the salmon." *NRIC I*, 25 F.3d at 874-75.

In short, there is no doubt the exclusive review provision of the Northwest Power Act would apply if Plaintiffs had, as in *NRIC I*, named Bonneville as a defendant in this Court and challenged its adoption or implementation of the Joint Decision. And as explained below, Plaintiffs cannot avoid the Northwest Power Act's exclusive review provision by simply leaving Bonneville's name off the pleadings.

**B.      Bonneville's final actions in the Joint Decision are directly at issue here, precluding this Court's jurisdiction.**

Plaintiffs seek to avoid the applicability of the Northwest Power Act's exclusive review provision by not naming Bonneville as a defendant in this Court. But they cannot disregard the Northwest Power Act's limits on this Court's jurisdiction.

The Northwest Power Act "does not permit district court jurisdiction where the effect of an action is to challenge a [Bonneville action] … subject to direct review" by the Ninth Circuit.

*Pac. Power & Light Co.*, 795 F.2d at 815; *see also Adorers of the Blood of Christ U.S. Province v. Transcon. Gas Pipe Line Co LLC*, 53 F.4th 56, 66 (3d Cir. 2022) (holding that, when judicial review in a district court would "directly imperil" an agency action that is subject to exclusive court of appeals jurisdiction, the Court should exercise caution) (citation omitted).

Plaintiffs mount a direct challenge to the Joint Decision and seek its vacatur. *See* ECF 2396 ¶ 6 (challenging the Joint Decision); *id*. at 72 ¶ 7 (seeking relief in this case to vacate the Joint Decision, including Bonneville's decision); *see also* ECF 2325 at 59 ¶ 9 (same). Plaintiffs therefore *directly* attack Bonneville's final action and decision and ask this Court to enter relief that—if granted—would strip Bonneville's decision of legal force and effect. *See United States v. Texas*, 599 U.S. 670, 695-96 (2023) (vacatur "erase[s] [the agency action] from the books") (Gorsuch, J., concurring). Consequently, because the complaints challenge Bonneville's decision and seek relief against Bonneville, their claims belong in the Ninth Circuit irrespective of whether they named Bonneville as a defendant agency. 16 U.S.C. § 839f(e)(5) (providing jurisdiction over suits challenging "final actions and decisions" of Bonneville, not those that simply name Bonneville as a defendant).

### C.    The Northwest Power Act's exclusive review provision covers those actions that are inextricably intertwined with Bonneville's final action or decision.

Setting aside the direct challenge to Bonneville's final action and decision, Plaintiffs' challenge conflicts with the Northwest Power Act's exclusive review provision because their claims against the other agencies are inextricably intertwined with Bonneville's decision.

### 1.    Ninth Circuit law holds that exclusive review provisions apply to actions that are inextricably intertwined with the covered action.

The Northwest Power Act's exclusive review provision does not turn on the named party. The proper inquiry instead focuses on "whether the factual basis for that attack is an agency

action authorized by the" Northwest Power Act. *Pac. Power & Light Co*, 795 F.2d at 816. A
district court therefore cannot exercise jurisdiction where a claim against another agency is
inextricably intertwined with a Bonneville action or decision, and when resolving those claims
would affect that Bonneville decision. *Id.* at 815 (holding that the Northwest Power Act "does
not permit district court jurisdiction where the effect of an action is to challenge a BPA
proceeding . . . subject to direct review by" the Ninth Circuit).

The Ninth Circuit has explained how to assess the applicability of these exclusive review
provisions. Courts must consider whether the challenged actions are "inextricably intertwined"
with an agency decision subject to an exclusive review provision, as well as whether the practical
effect of proceeding in district court is to attack an agency decision subject to the exclusive
review provision. *Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1193 (9th Cir. 2008) (denying
district court jurisdiction over an ESA citizen suit because the ESA consultation obligation was
inextricably intertwined with FCC registrations subject to an exclusive review provision); *Cal.
Save Our Streams Council v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) (claim against the Forest
Service was subject to FERC's exclusive review provision, when "the practical effect of the
action in the district court is an assault on an important ingredient of the FERC license"). This
"functional approach" of considering the relationship between the actions and claims "is
necessary to prevent litigants from sidestepping Congress's carefully prescribed limits on district
courts' subject-matter jurisdiction 'through clever pleading.'" *Akkerman v. United States*, 731 F.
Supp. 3d 1165, 1171 (C.D. Cal. 2024) (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80
F.4th 1017, 1029 (9th Cir. 2023)).

In accord, it matters not that Plaintiffs raise claims arising under different statutes (i.e.,
the APA, ESA, and NEPA). When two statutes govern an action and offer different routes of

appeal, courts must apply the more specific jurisdictional requirement, lest the court "render nugatory [Congress'] carefully crafted scheme of review." *American Bird*, 545 F.3d at 1194 (citing *Yeutter*, 887 F.2d at 911); *accord Ctr. for Biological Diversity v. Env't Prot. Agency*, 847 F.3d 1075, 1089 (9th Cir. 2017) ("When a plaintiff's claims are inextricably intertwined between two statutes . . . and those statutes contain conflicting jurisdictional provisions, *American Bird* requires plaintiffs to comply with the more specific statute."). Thus, when an action is taken pursuant to two statutes—one which is specific and grants exclusive review in the court of appeals and one which is quiet on the judicial route—the action must be brought in the court of appeals. *United Aeronautical Corp.*, 80 F.4th at 1029.

American Bird Conservancy* is instructive. Plaintiffs there filed litigation to enforce ESA compliance in the Federal Communications Commission's ("FCC") approval of several communications towers. 545 F.3d at 1192. The court found the ESA claim was inextricably intertwined with the FCC's approval of the towers, which was covered by an exclusive review provision, and thus granted the motion to dismiss. *Id.* at 1193 ("The tower registrations are therefore inextricably intertwined with the FCC's obligation to consult with the Secretary . . . American Bird cannot elude the Communications Act's exclusive review provision by disguising its true objection to the tower registrations as a 'failure to act' claim."). The Ninth Circuit rejected plaintiffs' arguments seeking to avoid applying exclusive review provisions to their ESA claim because the agency's decisions on the two statutes were inextricably intertwined. *See also Akkerman*, 731 F. Supp. 3d at 1172 (granting motion to dismiss based on exclusive review provision in the Federal Food, Drug, and Cosmetic Act after finding that issues in citizen petitions were inextricably intertwined with underlying FDA decision).

In short, when these conditions are met—actions that are inextricably intertwined,

whether under the same or different statutes—the applicable exclusive jurisdiction provision

"necessarily preclude[s] de novo litigation between the parties of all issues inhering in the

controversy, and all other modes of judicial review." *City of Tacoma v. Taxpayers of Tacoma*,

357 U.S. 320, 336-37 (1958).[7]

> ### 2.    As a factual and legal matter, the Corps' and Reclamation's actions are inextricably intertwined with Bonneville's final action and decision.

In their NEPA and ESA claims against the Corps and Reclamation, Plaintiffs challenge a

Joint Decision that establishes the Corps', Reclamation's, *and* Bonneville's actions taken to

comply with their overlapping and coordinated statutory responsibilities over Columbia River

System operations. Moreover, granting any relief on the merits—or the preliminary injunctive

relief requested by Plaintiffs—will not merely affect the Corps and Reclamation; it will affect the

*three agencies'* implementation of their Joint Decision.

The three agencies work in concert to manage the Columbia River System, including to

implement each of the congressionally authorized purposes at each dam. *See, e.g.*, 85 Fed. Reg.

at 63868 ("Bonneville will use the [Columbia River System Operations Environmental Impact

Statement] for operational changes associated with [Columbia River System] power marketing

activities. These operations will be coordinated with other operational, maintenance or

configuration actions for flood risk management, irrigation, fish and wildlife conservation, water

quality, navigation and other congressionally authorized purposes."); *see also* Section II, *supra*.

Bonneville, for example, must ensure system reliability and constantly coordinate with

the Corps and Reclamation to adjust each dam's operations to meet changing power demands

---

[7] The Ninth Circuit construes administrative review provisions such as those in the Northwest Power Act in a manner consistent with other such provisions, including the Federal Power Act. *Yeutter*, 887 F.2d at 911; *Forelaws on Bd. v. Johnson*, 709 F.2d 1310, 1311 (9th Cir. 1983).

and maintain electrical stability and reliability. 16 U.S.C. §§ 838b(b), 838b(d). The Corps and

Reclamation, in turn, operate in response to power system needs. *See, e.g.*, ACE001056155

(explaining that, "in emergency situations or when managing the system to avoid an impending

emergency, power system operations can be prioritized to protect … the safety and reliability of

the power grid"); *id*. at ACE001056156 ("The amount of electricity generated depends on

available storage capacity and overall system flexibility, given other constraints."); *id*.

("Minimum generation at the lower Columbia River projects is determined by grid reliability

needs and generally requires more than one turbine to be operating.").[8] The Corps, Reclamation,

and Bonneville also must coordinate to determine what investments are needed for Columbia

River System dam reliability, and the best timing for those investments. ACE001070561

(Appendix H); ACE001073318 (Appendix Q); *see also* ECF 2145 ¶¶ 36, 43-46, 53-63; ECF

2142 ¶¶ 10-14, 16-22, 31-33. And all three agencies' compliance with applicable laws depends,

in part, on Bonneville's comprehensive habitat restoration program. *See* NMFS00362255-57

(NMFS's Biological Opinion analyzing the habitat restoration actions funded by Bonneville

under the Northwest Power Act); 85 Fed. Reg. at 63862 (three agencies relying on the Biological

Opinion for ESA compliance).

　　　　These several examples—and those set forth above, *see* Section II, *supra*— demonstrate

how the three agencies' activities adopted in the Joint Decision are inextricably intertwined.

Thus, by its very nature, this case is "central to [Bonneville's] ability to implement its power

marketing functions and statutory responsibilities." *NRIC v. NMFS*, 818 F. Supp. 1399, 1403

---

[8] *See also* ACE001056155 ("The coordinated water management of the [Columbia River
System] therefore includes managing the amount of water used for hydropower generation. In
conjunction with the Corps and Reclamation carrying out project-specific requirements,
Bonneville plans system operations to meet both power and non-power objectives and shapes
any remaining flexibility to manage water flow for power generation.").

(W.D. Wash. 1993). If the Corps and Reclamation are compelled to act on water management operations—like increasing spill or lowering reservoir elevations—Bonneville's discretion and authorities are necessarily constrained. Bonneville cannot, for example, coordinate with the agencies to meet its statutory obligations under the Northwest Power Act (and other laws) when the Court has vacated the Joint Decision or when *the Court*—not the Corps or Reclamation—controls hydropower and water management operations through injunctive relief.

At the very least, the prospect that a preliminary injunction or other relief would directly imperil Bonneville's ability to implement the Joint Decision and meet its statutory responsibilities under the Northwest Power Act proves that the practical effect of proceeding in district court is to attack a Bonneville decision subject to exclusive jurisdiction in the Ninth Circuit. *See Adorers*, 53 F.4th at 64 (finding that where the plaintiff's claim directly imperils the agency action, the agency's exclusive jurisdiction statute applies). Thus, where "the relief sought would prevent Bonneville from satisfying its statutory obligations," that fact alone renders the claims here "a matter for Ninth Circuit review." *NRIC*, 818 F. Supp. at 1403.

Plaintiffs' motions for preliminary injunction explicitly show the intertwined nature of the agencies' decisions. Plaintiffs request that the Court enjoin Columbia River System operations adopted in the Joint Decision that serve Bonneville's objective of supporting reliable and stable hydropower operations. *See, e.g.*, ECF 2530 at 48 (asking the Court to modify spill operations to remove "BPA's power purposes" from consideration); *id*. at 52 (asking to enjoin operations needed to "benefit power generation"); *id*. at 52 (asking to remove the "power-cost objective" from decision-making). Plaintiffs also request increased funding of a Bonneville-funded mitigation program in their Proposed Order. *See* ECF 2530-2 at 12–13 (proposing language to enjoin steelhead kelt reconditioning program); ECF 2531 at ¶ 137 (admitting

Bonneville funds this program); ECF 2538 ¶ 71. And Plaintiffs seek to increase other expenditures by Bonneville. ECF 2530 at 44, 46-48; ECF 2526 at 45-47, 51-52 (advocating increased spill and reduction of power production and requesting increased federal expenditures).

Plaintiffs also recognize that Bonneville is an "action agency" for the purposes of the Joint Decision. ECF 2325 ¶ 2.c. (Oregon challenging the Joint Decision "issued by the Corps, BOR, and BPA in September 2020"); ECF 2396 at ¶¶ 5-6 (NWF Plaintiffs challenging the Joint Decision issued by "the Corps, BOR, and the Bonneville Power Administration"). Moreover, Plaintiffs *expressly acknowledge* that Bonneville's interests and authorities are at stake when they describe the Joint Decision (and description of that proposed action in the Biological Opinion) as requiring that Bonneville be no worse financially due to the spill operations proposed therein. *See, e.g.*, ECF 2530 at 12, 20, 32, 54; ECF 2526 at 45. Yet Plaintiffs seek to have the Court order different spill operations that would reconfigure operations at the Columbia River System dams away from power production, thus directly harming Bonneville. ECF 2350 at 32; ECF 2526 at 45. Plaintiffs therefore admit that they seek relief specifically to countermand Bonneville's actions and decision in the Joint Decision.

The Proposed Order also invokes the three action agencies' Water Management Plan to restrict Bonneville's ability to carry transmission reserves. ECF 2530-2 at 8 (Section I.B.3.c.) (asking the Court to impose obligations on and thus dictate the agencies' implementation of "preemptive actions" and their "declaration[s] of power system emergency."). These injunctive terms seek to enjoin Bonneville. The "preemptive actions" Plaintiffs refer to are listed in the Water Management Plan's Appendix 1 at 8 (listing eleven actions).[9] Many of these actions are

---

[9] https://public.crohms.org/tmt/documents/wmp/2026/Appendix/Appendix_1_Emergency_Protocols_20251202.pdf (last visited Dec. 13, 2025).

ones that *only* Bonneville can take, including:

- Purchase energy and/or reserves at prices up to the applicable FERC and Western Electricity Coordination Council (WECC) price cap;
- Request the transmission dispatcher consider adjusting transmission system maintenance or other possible actions that would allow increases or decreases in [Columbia River System] generation as appropriate;
- Cut any interruptible power commitments, and,
- After exhausting all available reserve sharing opportunities, ask the transmission dispatcher to request the Reliability Coordinator to declare an Energy Emergency ALERT 1 when there is concern about sustaining required operating reserves.

*Id*. The other preemptive actions in the Proposed Order occur upon a request to the Corps or Reclamation to take certain actions, *subject to* Bonneville's analysis of how such actions will impact system reliability. *Id*. Plaintiffs thus ask the Court to impose obligations on Bonneville and otherwise constrain its authorities.

Clearly, the "relief sought would prevent Bonneville from satisfying its statutory obligations." *NRIC*, 818 F. Supp. at 1403. Plaintiffs seek relief that would in fact vacate Bonneville's actions and decision in the Joint Decision, ECF 2396 at 72, ¶ 7; ECF 2325 at 59, ¶ 9. It would also remove power considerations from Columbia River System operations. The result would be to disrupt power and transmission system reliability, require Bonneville to take certain actions to comply with a preliminary injunction where it is not a named party, and impair Bonneville's compliance with its statutory duties under 16 U.S.C. §§ 838b(b), 838b(d), 839(2), and other laws.

Finally, Plaintiffs' Proposed Order directs specific investments to be made at the Columbia River System infrastructure—which directly impacts specific congressional delegations granted to Bonneville. Bonneville must pay for the power share of all costs at the Federal Columbia River Power System facilities, including those tied to the infrastructure

projects listed in Plaintiffs' Proposed Order. *See, e.g.*, 16 U.S.C § 832f ("Rate Schedules shall be drawn having regard to the recovery . . . of the cost of producing and transmitting such electric energy . . . ."); *id*. § 839e(a)(1) (similar).

In fulfilling this responsibility, Congress has entrusted Bonneville, in consultation with the Corps and Reclamation, to determine how and when it will invest in the Columbia River System. *See, e.g.*, 16 U.S.C. § 832a(a) ("The Secretary of the Army shall install and maintain additional machinery, equipment, and facilities for the generation of electric energy at the Bonneville project when in the judgment of the administrator such additional generating facilities are desirable to meet actual or potential market requirements."); 16 U.S.C. § 839d-1 ("The Secretaries of the Interior and Army are authorized to plan, design, construct, operate and maintain generation additions, improvements and replacements . . . with any funds that the Administrator determines to make available. . . ."). The agencies have a robust system in place to evaluate and implement investments given many factors and budget constraints. But it is ultimately within Bonneville's authority to determine what funds Bonneville will make available.

Through its infrastructure investment requests, Plaintiffs' suit takes aim at Bonneville's exercise of that authority under the Northwest Power Act. Any change to the agreed-upon investment strategy, such as that requested by the Plaintiffs, will directly subvert Bonneville's authority to determine the timing and type of investments. The result is a cascading effect on Bonneville's overall investment strategy given limitations on how much work can be done at any given time. Plaintiffs' requested relief for infrastructure investments therefore will have an immediate and direct effect on Bonneville's spending and investment decisions.

In short, Plaintiffs' claims—in the complaints and preliminary injunction motions—are directed specifically at Bonneville's interests and equities and prove that they are challenging

overall implementation of the Joint Decision, *including* Bonneville's actions and decisions, and implementation of them.

> ### 3. The Court cannot adjudicate claims over NMFS's Biological Opinion without attacking an essential ingredient of Bonneville's decision, rendering those claims subject to the Northwest Power Act's exclusive review provision.

Like their challenge to the Joint Decision, Plaintiffs' legal claims against NMFS's Biological Opinion attack an important ingredient of Bonneville's decision to adopt and implement the Joint Decision and, thus, constitute an impermissible challenge to Bonneville's decision itself. For that reason, all claims against NMFS's Biological Opinion also are subject to the Northwest Power Act's exclusive review provision.

The weight of authority in the Ninth Circuit, and elsewhere, is that challenges to predicate actions—like an ESA Biological Opinion—are also subject to exclusive jurisdiction provisions. In *Center for Biological Diversity v. Bernhardt*, for example, the Ninth Circuit found that its original jurisdiction under another special-review provision includes challenges to NEPA analysis and the Fish and Wildlife Service's biological opinion because the agency's "lawful approval under [the Outer Continental Shelf Leasing Act] is contingent on whether it properly complies with the ESA." 982 F.3d 723, 733 (9th Cir. 2020); *see also Yeutter*, 887 F.2d at 911 (suit against Forest Service's conditions identified for inclusion in a FERC license was in effect an attack on the FERC license itself); *Sw. Ctr. for Biological Diversity v. FERC*, 967 F. Supp. 1166, 1175 (D. Ariz. 1997) ("One glaring difficulty in Plaintiff's Complaint is the failure to set apart actions by the Forest Service complained of from actions by the FERC"); *Idaho Rivers United v. Foss*, 373 F. Supp. 2d 1158, 1161 (D. Id. 2005) (same regarding challenge to the Fish and Wildlife Service in issuing a biological opinion).

The First Circuit likewise decided that the exclusive jurisdiction provision under the

Federal Power Act required that a challenge to ESA biological opinions be heard only in the court of appeals because the opinions "were by any measure inherent in the statutory process for consideration of" FERC's decision. *Me. Council of Atl. Salmon Fed'n v. NMFS*, 858 F.3d 690, 693 (1st Cir. 2017). Likewise, in *City of Tacoma v. FERC*, the D.C. Circuit held that when a biological opinion "is prepared in the course of a FERC licensing proceeding, the only means of challenging the substantive validity of the [biological opinion] is on review of FERC's decision in the court of appeals." 460 F.3d 53, 76 (D.C. Cir. 2006); *see also Shafer & Freeman Lakes Env't Conservation Corp. v. FERC,* 992 F.3d 1071, 1087 (D.C. Cir. 2021) (same).

This law applies here. Both the ESA and the Northwest Power Act impose procedural obligations on the action agencies to consult with NMFS when carrying out their obligations under applicable laws. 16 U.S.C. § 1536(a)(2) (ESA procedural consultation obligation); 16 U.S.C. § 839b(h)(11)(B) (Bonneville, the Corps, and Reclamation "shall consult with … [NMFS] …. in carrying out the provisions of this paragraph…"). The ESA also imposes substantive obligations on agencies to avoid jeopardizing listed species, 16 U.S.C. § 1536(a)(2), and to refrain from "taking" listed species without an exemption or permit, among others. *id.* § 1536(o)(2) (agencies may lawfully "take" ESA listed species if exempted through an incidental take statement). The three action agencies therefore consulted with NMFS. *See* NMFS00362178. And, in the Joint Decision, the three action agencies relied on this consultation to satisfy their ESA and Northwest Power Act obligations, including the ESA's substantive mandates. *See, e.g.*, 85 Fed. Reg. at 63857-58, 63862-66. And the Biological Opinion and associated incidental take statement provide the three agencies—including Bonneville—with an exemption of liability for "take." NMFS00363558 (incidental take statement, providing a liability exemption for Bonneville); 85 Fed. Reg. at 63863 ("Bonneville also concludes that it has the authority and

discretion to implement the proposed action and the actions described in the Incidental Take Statements in cooperation with the other co-lead agencies.").

NMFS's Biological Opinion thus constitutes a predicate determination on compliance with the Northwest Power Act and the ESA, which has "no significance outside the [Joint Decision] process." *Yeutter*, 887 F.2d at 912. Plaintiffs challenge NMFS's Biological Opinion for this very reason—it forms the legal basis of and serves as an "important ingredient" for the Joint Decision they allege is unlawful and want the Court to enjoin. *Id.*; *see, e.g.*, ECF 2396 ¶ 155 (alleging the agencies are unlawfully "operating their projects"—the decision reflected in the Joint Decision—given alleged deficiencies with NMFS's Biological Opinion); ECF 2526 (seeking injunctive relief against the agencies on system operations in view of alleged inadequacies with NMFS's Biological Opinion).

In sum, it is impossible for the Court to separate the decisions of the Corps, Reclamation, and Bonneville in the Joint Decision, or to segregate the Biological Opinion from the Joint Decision. The intertwined nature of the action agencies' decisions to approve, adopt, and implement the Joint Decision demonstrates that Plaintiffs' ESA, NEPA, and APA challenges against the Corps, Reclamation, and NMFS are no more than "a means to a broader end—a challenge to the validity" of the Joint Decision, *including* Bonneville's final actions and decision. *Ctr. for Biological Diversity*, 847 F.3d at 1089 (ESA claims "inherently challenge the validity" of EPA order subject to exclusive review in courts of appeal). As such, Plaintiffs' challenges to those agency actions are subject to the special-review provisions of the Northwest Power Act.

## D.    "Careful Pleading" cannot overcome the Northwest Power Act's jurisdictional barrier.

Plaintiffs cannot circumvent the Ninth Circuit's exclusive jurisdiction by arguing their claims are carefully tailored to avoid naming Bonneville as a defendant. *See, e.g.*, *American*

*Bird*, 545 F.3d at 1193 ("American Bird cannot elude the Communications Act's exclusive review provision by disguising its true objection . . . ."). This is an impermissible strategy to avoid exclusive jurisdiction under the Northwest Power Act. The Ninth Circuit has continuously held that a plaintiff may not seek through "careful pleading" to circumvent the exclusive jurisdiction granted by statute. *Yeutter*, 887 F.2d at 911.

The Ninth Circuit dealt with a similar situation in *Yeutter*, involving a permit issued by FERC for construction of a hydroelectric dam. *Yeutter*, 887 F.2d at 911. As required by the Federal Power Act, FERC consulted with the U.S. Forest Service and accepted conditions on the permit promulgated by the Forest Service. *Id*. at 910. Plaintiffs sued the Forest Service in district court, omitting FERC and alleging that the Forest Service's conditions on the permit violated laws other than the Federal Power Act. *Id.* Like the Northwest Power Act, the Federal Power Act grants the court of appeals exclusive jurisdiction over challenges to FERC's actions under that statute. *Id*. at 911. The Ninth Circuit rejected this challenge to the Forest Service, holding the district court lacked subject-matter jurisdiction because the "practical effect" of the litigation was to attack an "important ingredient" of the FERC action. *Id.* at 912.

So too here. Plaintiffs' filings reflect exactly the type of "careful pleading" that the court in *Yeutter* prohibited. Plaintiffs sued two of the three action agencies for decisions over Columbia River System Operations, even though all three agencies engage in the joint and coordinated management of the System under shared legal obligations under the Northwest Power Act and other laws. Plaintiffs also seek to eliminate the basis for Bonneville's ESA compliance—including its coverage for incidentally taking ESA-listed species—without joining Bonneville. Since Bonneville, the Corps, and Reclamation jointly manage the Columbia River System, a lawsuit against NMFS, Corps, and Reclamation under the facts here is, in fact, a

lawsuit against Bonneville—which cannot be adjudicated by this Court.

## V.    CONCLUSION

Plaintiffs have recognized that the proper way to challenge Bonneville's actions in the

Joint Decision is to seek review in the Ninth Circuit—as many Plaintiffs did in *PCFFA v.*

*Bonneville,* No. 20-73761 (challenging the same Joint Decision at issue here). They abandoned

that challenge in favor of litigating their claims in this Court.[10] But Plaintiffs' artful pleadings

and their strategic decisions do not establish this Court's jurisdiction. Nor do equitable

considerations. As the Ninth Circuit explained:

> It is no doubt true that the jurisdictional provision works against the plaintiffs. But the
> jurisdictional allocation was made by Congress. It would be even less satisfying if
> different district courts in the states of the Columbia basin could entertain suits affecting
> the administration of the river system, instead of the single comprehensive jurisdiction of
> the Ninth Circuit.

*NRIC I*, 25 F.3d at 875. Because Plaintiffs' supplemental complaints raise claims that are subject

to the exclusive original jurisdiction of the Ninth Circuit, the Court should dismiss NWF

Plaintiffs' and the State of Oregon's supplemental complaints.


DATED: December 15, 2025.                    ADAM R.F. GUSTAFSON
                                             Principal Deputy Assistant Attorney General
                                             U.S. Department of Justice
                                             Environment and Natural Resources Division

                                             */s/ Michael R. Eitel*
                                             MICHAEL R. EITEL, Acting Assistant Chief

---

[10] Plaintiffs abandoned their opportunity to challenge Bonneville's final action in the Ninth
Circuit and are time-barred from reinstating it. When Congress sets a time limit to sue in a court
of appeals—here, 90 days after a final action or decision, 16 U.S.C. § 839f(e)(5)—the district
court cannot usurp that time bar. *Nader v. U.S. EPA*, 859 F.2d 747, 753 (9th Cir. 1988). The
Court therefore should not transfer this case to the Ninth Circuit under 28 U.S.C. § 1631 because
the applicable statute of limitations has run. *Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp.
Rsch. & Special Programs Admin.*, 457 F.3d 956, 962–63 (9th Cir. 2006) (if the statute of
limitations has run, the court of appeals cannot assert jurisdiction and dismissal is necessary);
*Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 927 (9th Cir. 2002).

*/s/ John H. Martin*
JOHN H. MARTIN, Senior Trial Attorney
ROMNEY PHILPOTT, Senior Trial Attorney
Natural Resources Section
Wildlife and Marine Resources Section
999 18th Street, Suite 600 North Terrace
Denver, Colorado 80202
Tel: (303) 319-5359 Martin; (202) 532-
5077(Philpott) / Fax: (303) 844-1350
Email: John.H.Martin@usdoj.gov;
Romney.Philpott@usdoj.gov

AMANDA K. RUDAT, Trial Attorney
Natural Resources Section
ELIZABETH A. KIRBY, Trial Attorney
KIERAN F. O'NEIL, Trial Attorney
Wildlife and Marine Resources Section
P.O. Box 7611, Washington D.C. 20044-7611
Tel: (202) 532-3201 Rudat; (202) 353-5588 Kirby;
202-598-0409 O'Neil
Email: Amanda.Rudat@usdoj.gov;
Elizabeth.Kirby@usdoj.gov;
Kieran.O'Neil@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed through the Court's CM-ECF system, which will

automatically serve counsel of record. A copy of this filing has also been served on:

Scott William Levy
309 Andora Lane #132
Ketchum, ID 83340

*/s/ Michael R. Eitel*
MICHAEL R. EITEL