ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

MICHAEL R. EITEL, Acting Assistant Chief
JOHN H. MARTIN, Senior Trial Attorney
ROMNEY PHILPOTT, Senior Trial Attorney
Wildlife and Marine Resources Section
999 18th Street, Suite 600 North Terrace
Denver, Colorado 80202
Tel: (303) 319-5359 Martin; (202) 532-5077
(Philpott); Fax: (303) 844-1350
Email: John.H.Martin@usdoj.gov;
Romney.Philpott@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

**NATIONAL WILDLIFE FEDERATION**, et al.,

    Plaintiffs,

and

**STATE OF OREGON**, et al.,

    Intervenor-Plaintiffs,

v.

**NATIONAL MARINE FISHERIES SERVICE**, et al.,

    Defendants,

and

**PUBLIC POWER COUNCIL**, et al.,

    Intervenor-Defendants.

Case No.: 3:01-cv-00640-SI

**OBJECTIONS TO COURT-ORDERED CONFERRAL AND MOTION TO STAY INJUNCTION**

At the February 6 hearing, the Court stated that it intended to rule on Plaintiffs' motions for preliminary injunction on or about February 23, 2026. If the Court enjoins federal operations at the Columbia River System projects, Federal Defendants respectfully request that the Court stay any such order to allow Federal Defendants to pursue an appeal (if authorized by the Solicitor General). Federal Defendants also object to the Court-ordered conferral on Plaintiffs' proposed order. Under Local Rule 7-1, Federal Defendants conferred with the parties. Plaintiffs oppose this motion; the remaining parties either did not oppose or did not respond.

* * *

The Court ordered the parties to confer on Plaintiffs' proposed preliminary injunction order at the February 6, 2026, hearing, and it permitted Federal Defendants to file an objection to this process. They do so here. Federal Defendants engaged in the conferral process in good faith. *See* Exhibit 1 (Federal Defendants' comments on, and proposed changes to, the proposed order). But Plaintiffs' proposed order was flawed from its conception; the problems are structural, and redrafting will not save it. Further, given the issues at stake with the proposed injunction—including its threats to ESA-listed species, critical infrastructure, communities, and human life and safety, as well as restrictions on Federal Defendants' authority to resolve such threats—Federal Defendants should be afforded the opportunity to seek appellate review before any injunction takes effect. We request that any injunction be stayed—at a minimum for 30 days—to allow Federal Defendants to pursue an appeal. This relief is warranted given the current procedural posture, where the Court may order mandatory injunctive relief but the precise terms and scope of that relief are unknown. A 30-day stay will allow the United States to make an informed decision on whether to appeal and, if so, whether to seek an emergency stay pending appeal in the Ninth Circuit. We therefore ask that, if the Court grants a preliminary injunction, it

rule on the stay motion at the same time.

        1.     *The law compels denial of Plaintiffs' preliminary injunction.* The Court's conclusion that conferral is needed to address implementation problems with Plaintiffs' proposal shows that Plaintiffs' motions should be denied. Plaintiffs do not seek to preserve the status quo or the Court's ability to resolve their claims—the purposes of a preliminary injunction. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024). Plaintiffs instead seek to affirmatively alter the status quo with mandatory relief. To prevail in this extraordinary request, Plaintiffs must show that "the facts and law clearly favor" their proposed injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). It is not Federal Defendants' burden to prove that a proposed injunction should not issue, much less to rehabilitate a defective request for relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 442–43 (1974). The proposed injunction here exceeds the bounds of the Court's equitable discretion. ECF 2569 at 30-38.[1] Equally problematic, the proposed order was unilaterally developed by parties with no real-world experience operating or maintaining these federal projects, and this likely explains why it is so deeply and irreparably flawed. *See, e.g.*, Exhibit 1. For example, the proposed order creates unresolvable compliance dilemmas for the federal agencies: it would compel the agencies to adhere to novel and strict limits on spill and operating pool elevations, while requiring all other legal and operational concerns to fall within ill-defined and uncertain exceptions to the spill and operating pool requirements. *Id.* Plaintiffs may then second-guess any attempt to operate under an exemption, potentially leading to satellite litigation over compliance. This is not how preliminary injunctions work. By failing to propose an injunction that can be implemented and complies with Rule 65(d), Plaintiffs have not met their

---

[1] In this brief, we cite the ECF-generated page number in the header.

burden. The Court therefore should deny the motion, not try to fix the proposed order.[2]

    2.    *Modifying the proposed order conflicts with the civil adversarial process*. Federal Defendants restate their objection to any modification of the proposed order at this late stage. The adversarial system "works to produce a just result under the standards governing decision." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). It "relies on the advocates to inform the discussion and raise the issues to the court." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). "To put it plainly, courts call balls and strikes; they don't get a turn at bat." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curiam); *see also United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) ("Courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right.") (citation modified). Plaintiffs identified the mandatory injunctive relief they seek in their opening motion (ECF 2530-2), and Federal Defendants expended extraordinary resources to comprehensively identify the legal, scientific, and practical problems with Plaintiffs' request. If Plaintiffs or the Court now shift the requested relief, they will deprive Federal Defendants of the opportunity to test the revised proposal through the adversarial process, thus violating Rule 65(a)'s notice requirements. *Granny Goose Foods*, 415 U.S. at 432 n.7 ("The notice requirement [of] Rule 65(a) . . . implies a hearing in which the defendant is given a fair opportunity *to oppose the application* and to prepare for such opposition." (emphasis added)).

    3.    *The Court lacks evidence on modified relief.* Shifting the nature of proposed relief after briefing, depositions, and a hearing creates an additional problem: the Court lacks evidence

---

[2] This is especially so given Federal Defendants' motion to dismiss, which establishes that the Court lacks jurisdiction over this case. Even if that were not the case, the Court should still deny the motions for preliminary injunction because the parties can proceed expeditiously to the merits, thus obviating the need to issue the extraordinary relief of a mandatory injunction.

on the likely consequences of any new measures. As demonstrated by Federal Defendants' filings (ECF 2569-2584, 2638-2644), the Columbia River System is exceedingly complex. Even seemingly minor changes to dam operations can have dire consequences—to salmon and steelhead, to aquatic ecosystems, and to the agencies' operation of a system that provides for flood risk management, power generation and reliability, navigation, and many other public purposes. It is impossible to accurately assess the effects of a specific operation that has not been reviewed by federal operators and experts.[3] If the Court alters the proposed injunction, it cannot reliably predict the consequences, much less issue the requisite findings of fact. Fed. R. Civ. P. 52(a)(1), (2); *see also* Wright & Miller, 9C Fed. Prac. & Proc. Civ. § 2576 (3d ed.) ("The findings on a grant or denial of an injunction must be based on something more than a one-sided presentation of the evidence, and the district court must weigh and appraise the evidence offered by both parties impartially.").

    4.    *The Court should stay any injunction*. If the Court grants a preliminary injunction, Federal Defendants should be afforded an opportunity to seek review on appeal before an injunction goes into effect. The Supreme Court has established four factors governing the stay determination: likelihood of success on appeal, irreparable injury to the United States, balancing of harms, and the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009). The Court should stay its order pending a determination to pursue an appeal or, at a minimum, delay implementation for 30 days. A stay or delayed

---

[3] Like Plaintiffs' decision not to provide or confer over a proposed order before filing their preliminary injunction motions, and despite admitting during briefing the proposed order was ambiguous in important respects, Plaintiffs chose not to provide any revisions to the proposed order until the afternoon on February 19, 2026. Likewise, Defendant-Intervenors provided comments on the proposed order on February 17-18, 2026. Given this, Federal Defendants have not had a meaningful opportunity to evaluate these new proposals, much less provide evidence regarding feasibility or how the alternative proposals would impact ESA-listed species, critical infrastructure, and human health and safety.

implementation will allow the parties sufficient time to seek authorization to appeal and, if granted, for the Ninth Circuit to consider a stay pending appeal—five days[4] is simply not enough time for the Solicitor General and Ninth Circuit to consider and weigh the complicated issues here. A stay is fully justified here.

      a.      First, Plaintiffs seek judicial control over complex dam operations based solely on an Administrative Procedure Act challenge to NMFS's 1500-page expert biological opinion. But the Supreme Court has rejected the premise that courts can or should usurp Executive functions based on disagreements with an agency's environmental analysis. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. 168, 182 (2025) ("Black-letter administrative law instructs that when an agency makes those kinds of speculative assessments or predictive or scientific judgments, and decides what qualifies as significant or feasible or the like, a reviewing court must be at its 'most deferential.'"). As explained in detail in the Federal Defendants' response to the motion for a preliminary injunction (ECF 2569 at 63-104), because Plaintiffs have not made the required showing on the merits for a preliminary injunction, Defendants are likely to succeed on the merits and this Court should stay any preliminary injunction. *Nken*, 556 U.S. at 434 (noting the "substantial overlap between [the stay factors] and the factors governing preliminary injunctions").

      b.      Second, the proposed injunction, even if modified, will irreparably harm the United States. Empirical evidence and the institutional expertise of six federal agencies overwhelmingly prove that the proposed injunction will harm juvenile and adult migrants (Smith, Feil, Faulkner); salmonid life-cycle productivity (Faulkner, Swieca); bull trout (Kuttel); migratory birds protected under international treaties (McDowell); and aquatic ecosystems

---

[4] The Court said that it will enter an order on February 23, and, under Plaintiffs' proposed order, Court-ordered operations would begin on March 1.

(Plumb). *See* ECF 2570, 2575-78, 2580-81, 2584, 2639-42, 2644. The injunction also asks the Court to override the expert judgments of the U.S. Army Corps of Engineers (Marshall, Renholds, Turner) and the Bonneville Power Administration (Dibble, McManus, Stevenson) on operating and managing critical dam infrastructure to maintain a safe, reliable power and transmission system. *See* ECF 2571-74, 2579, 2582-83, 2638, 2643. Placing critical dam operations under judicial control in untested ways can immediately and irreparably harm the United States and ESA-listed species, which justifies a stay of the injunction. *See* Second McManus Declaration, filed concurrently.

   c.  Third, Plaintiffs would suffer no harm from a stay of the injunction, and Federal Defendants would not object to expedited appellate proceedings if a stay is issued. As Federal Defendants explained in the response to the motion for preliminary injunction (ECF 2569 at 41-43), Plaintiffs identify no irreparable harm to themselves; they instead try to resurrect a presumption of irreparable harm in ESA cases by arguing the mere status of an ESA-listed species constitutes irreparable harm justifying mandatory injunctive relief. Nor have Plaintiffs proven that federal operations in 2026 will irreparably harm ESA-listed species (ECF 2569 at 43-52).

   d.  Fourth, the public interest does not support the judicial overreach that Plaintiffs are asking for here. The preliminary injunction they seek would turn over control of the discretionary operations of the Columbia River System to the judiciary. But Congress assigned that control to the Executive Branch. The requested preliminary injunction conflicts with the predictive judgments of specialized agencies in ways that create new threats of harm to federally protected species, critical infrastructure, communities, and human life. *Fed. Power Comm'n v. Fla. Power & Light Co.*, 404 U.S. 453, 464-65 (1972) (holding courts must not supplant agency

judgments when supported by "well-reasoned expert testimony … based on what is known and uncontradicted by empirical evidence"). And the public interest certainly does not lie with judicial action compelling federal agencies to affirmatively violate federal laws, ECF 2569 at 35–38, especially when paired with Plaintiffs' admissions that their proposed injunction will not actually abate any alleged legal violation, *see, e.g.*, ECF 2526 at 12.

In sum, the only way to avoid threatened irreparable harm to ESA-listed species and the public interests served by the Columbia River System is to deny Plaintiffs' proposed injunction. But if the Court grants an injunction, relief should be stayed to provide an opportunity to seek review in the Ninth Circuit. At a minimum, the Court should stay any injunction for 30 days to allow the Solicitor General to make an informed decision and, if appropriate, for the Ninth Circuit to consider the complicated issues here before this Court assumes control over the complex Columbia River System in ways that risks harm to ESA-listed species, critical infrastructure, and human life—particularly when doing so at the behest of parties alleging only generalized aesthetic, recreational, and monetary interests in fish.

DATED: February 19, 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

*/s/ Michael R. Eitel*
MICHAEL R. EITEL, Acting Assistant Chief
JOHN H. MARTIN, Senior Trial Attorney
ROMNEY PHILPOTT, Senior Trial Attorney
Wildlife and Marine Resources Section
999 18th Street, Suite 600 North Terrace
Denver, Colorado 80202
Tel: (303) 319-5359 Martin; (202) 532-5077(Philpott) / Fax: (303) 844-1350
Email: John.H.Martin@usdoj.gov;
Romney.Philpott@usdoj.gov

        AMANDA K. RUDAT, Trial Attorney
Natural Resources Section
ELIZABETH A. KIRBY, Trial Attorney
KIERAN F. O'NEIL, Trial Attorney
Wildlife and Marine Resources Section
P.O. Box 7611, Washington D.C. 20044-7611
Tel: (202) 532-3201 Rudat; (202) 353-5588 Kirby; 202-598-0409 O'Neil
Email: Amanda.Rudat@usdoj.gov; Elizabeth.Kirby@usdoj.gov; Kieran.O'Neil@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed through the Court's CM-ECF system, which will automatically serve counsel of record. A copy of this filing has also been served on:

Scott William Levy
309 Andora Lane #132
Ketchum, ID 83340

                                                                                               */s/ Michael R. Eitel*
                                                                                               MICHAEL R. EITEL