# EXHIBIT 1

DAN RAYFIELD
Attorney General
DEANNA CHANG  #192202
CHRISTINA L. BEATTY-WALTERS #981634
AUSTIN D. SAYLOR #085614
Senior Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Deanna.J.Chang@doj.oregon.gov
        Tina.BeattyWalters@doj.oregon.gov
        Austin.Saylor@doj.oregon.gov

Attorneys for Intervenor-Plaintiff/Counter-Defendant State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NATIONAL WILDLIFE FEDERATION**, et al. | Case No.  3:01-cv-00640-SI |
| Plaintiffs, | [PROPOSED] ORDER |
| and | |
| **STATE OF OREGON**, et al., | |
| Intervenor-Plaintiffs, | |
| v. | |
| **NATIONAL MARINE FISHERIES SERVICE**, et al., | |
| Defendants, | |
| and | |
| **PUBLIC POWER COUNCIL**, et al., | |
| Intervenor-Defendants. | |

Page 1 -    [PROPOSED] ORDER

This matter comes before the Court on the motions for preliminary injunctive relief (hereafter, "Motions") filed by Plaintiffs and Intervenor-Plaintiff State of Oregon.  The Court has reviewed the filings submitted by all parties and taken oral argument and, deeming itself fully advised, GRANTS the Motions and hereby ORDERS:

**I.     FISH PASSAGE SPILL OPERATIONS INJUNCTION**

    A.    Definitions:

        1.    "125% Gas Cap spill" means spill to the maximum level that meets, but does not exceed, the Total Dissolved Gas ("TDG") criteria allowed under state laws.

        2.    "FOP" means the U.S. Army Corps of Engineers' ("Corps") annual Fish Operations Plan.

        3.    "FPP" means the Corps' annual Fish Passage Plan.

        4.    "FPP spill patterns" means the project-specific spill bay gate openings reflected in the FPP tables.

        5.    "MIP" means Minimum Irrigation Pool elevation as measured in feet above mean sea level in the reservoir forebay.

        6.    "MOP" means Minimum Operating Pool elevation as measured in feet above mean sea level in the reservoir forebay.

    B.    Except as provided in Paragraph 3 and Section V below, ~~Federal Defendants~~the Corps shall implement the spill operations set forth in Table 1 below beginning in Spring 2026 and continuing until otherwise ordered by this Court.

**Commented [A1]:** The comments of the Federal Defendants ("USG") herein are a non-exclusive list. The USG may provide additional comments or revised comments if the proposed Order is modified.

**Commented [A2]:** It is not possible under real-world conditions to both meet 125% TDG "to the maximum level" but also not exceed that level. "Maximum" implementation will cause exceedance of the water quality standard and applicable conditions.

**Commented [A3]:** It is unclear if reference to the FOP and FPP allow for the annual and periodic revisions. USG intends to revise the FOP and FPP in 2026 and operate pursuant to the revised documents.

**Commented [A4]:** Spill patterns are addressed in several agency guidance documents including the FOP. See, e.g., paragraph B.2 below. This definition may also preclude discretion to adjust spill patterns.

**Commented [A5]:** The definitions of MOP and MIP are ambiguous without specification of where and how measured, such as duration, hourly average, etc. Does this provision incorporate the agencies' established measurement protocols?

**Commented [A6]:** This sentence is unreasonably narrow. It is also ambiguous whether the language covers just spill operations or the range of issues addressed in the charts.

The USG interprets reference to "spill" to mean the proposed injunction only covers spill operations and not the other items identified in the Table.

**Commented [A7]:** Obligating all Federal Defendants to comply with all obligations in the PI is overbroad and impossible for those agencies that lack the authority to perform such duties. The order is therefore not specific to which obligations apply to specific Federal agencies.

**Table 1: Injunction spill operation**

| Project | Spring spill season (early April – mid-June) | Summer spill season (mid-June – end of August) | Fall/Winter spill season (early September – end November; early March – early April) **Shutdown period Dec. 1 – Feb. 28/29 to address freezing issues and maintenance except as noted below.** |
|---|---|---|---|
| Lower Granite | Apr. 3 – June 20<br><br>125% Gas cap spill<br><br>24 hours per day | June 21 – Aug. 31<br><br>18 kcfs<br><br>24 hours per day | Sep. 1 – Nov. 30; and Mar. 1 – Apr. 2<br><br>Low volume surface passage via spillway weir (Bay 1 RSW)<br><br>24 hours per day |
| Little Goose | Apr. 3 – June 20<br><br>125% Gas cap spill 24 hours per day until adult criteria reached[1]<br><br>After adult criteria reached:<br>125% Gas cap spill 16 hours/day and 30% for 8 consecutive daytime hours. | June 21 – Aug. 31<br><br>30% spill<br><br>24 hours per day | Sep. 1 – Nov. 30; and Mar. 1 – Apr. 2<br><br>Low volume surface passage via spillway weir (Bay 1 ASW @ high crest)<br><br>24 hours per day |

**Commented [A8]:** This Table lacks many footnote provisions included prior FOPs (like 2025).

This table does not specify how and how frequently this spill level is set. Is it calculated based on the previous day's average outflow, and not changed on an hourly basis?

This Table does not address the need for inspections or maintenance. Nor does the Table address the need to close removable spillway weirs earlier than Nov 30 in the event of freezing.

The Table does not include provisions for switching to flat spill based on low outflow.

**Commented [A9]:** USG notes new concern with risk of infrastructure failure in late November in the event of freezing temperatures insofar as this date is a delay from past usage of 16 Nov.

**Commented [A10]:** Is there no adult delay criteria here?

**Commented [A11]:** The Table does not address whether surface level spill requirements allow for a change to deep spill in low flow conditions and to maintain minimum generation. The Table does not reflect that the Corps cannot adjust the level of spill through the spillways.

**Commented [A12]:** This comment about adult delay applies to all LSR projects. This table does not include the adult delay criteria from '25 FOP Section 7, or use of DART to define a delay. The draft '26 FOP deleted that language as not necessary given the operations specified therein. If those operations are not implemented, then past data and experience establishes a need to apply adult delay criteria to the other three LSR projects.

---

[1] Little Goose Adult Criteria –Within 1 business day of when the earliest of the following conditions occurs: (1) a cumulative total of 25 adult spring Chinook salmon (not including jacks) pass Lower Monumental Dam; or (2) a cumulative total of 50 adult spring Chinook salmon (not including jacks) pass Ice Harbor Dam; or (3) April 24, 2026, the Corps will implement performance standard spill at Little Goose Dam for 8 consecutive AM hours (April 3–15 starting at 0500 hours; April 16–June 20 starting at 0400 hours) to target hours of peak adult passage. If lack of load conditions preclude the implementation of performance standard spill during the targeted periods, performance standard spill will begin as soon as practicable during AM hours and continue for up to 8 consecutive hours. If a second block is needed, it will start as soon as load conditions allow, continue for at least two consecutive hours, and conclude no later than 2000 hours.

| Project | Spring spill season (early April – mid-June) | Summer spill season (mid-June – end of August) | Fall/Winter spill season (early September – end November; early March – early April) Shutdown period Dec. 1 – Feb. 28/29 to address freezing issues and maintenance except as noted below. |
|---|---|---|---|
| Lower Monumental | Apr. 3 – June 20<br><br>125% Gas cap spill (uniform spill pattern)[2],[3]<br><br>24 hours per day | June 21 – Aug. 31<br><br>17 kcfs<br><br>24 hour per day | Sep. 1 – Nov. 30; and Mar. 1 – Apr. 2<br><br>Low volume surface passage via spillway weir (Bay 8 RSW)<br><br>24 hours per day |
| Ice Harbor | Apr. 3 – June 20<br><br>125% Gas cap spill<br><br>24 hours per day | June 21 – Aug. 31<br><br>45 kcfs<br><br>24 hours per day | Sep. 1 – Nov. 30; and Mar. 1 – Apr. 2<br><br>Low volume surface passage via spillway weir (Bay 2 RSW)<br><br>24 hours per day |
| McNary | Apr. 10 – June 15<br><br>125% Gas cap spill<br><br>24 hours per day | June 16 – Aug. 31<br><br>57% spill<br><br>24 hours per day | Sep. 1 – Nov. 30; and Mar. 1 – Apr. 9<br><br>Low volume surface passage via both spillway weirs (Bay 19 and Bay 20 TSWs)<br><br>24 hours per day |

**Commented [A9]:** USG notes new concern with risk of infrastructure failure in late November in the event of freezing temperatures insofar as this date is a delay from past usage of 16 Nov.

**Commented [A13]:** The USG understands the sentence in FN 2 to refer to existing coordination processes. As such, it is unnecessary.

**Commented [A14]:** FN 3 is ambiguous whether all fish transportation is part of the proposed order, or whether the agencies retain discretion to suspend all fish transportation operations.

**Commented [A15]:** Is there no adult delay criteria here despite observed delay?

**Commented [A16]:** USG reiterates its position that hourly gate movements cause unnecessary wear and increased maintenance. Such movements would likely be necessary in spring at minimum generation/spill the rest and with no capability to fill into a pool to respond to flow fluctuations from Priest Rapids Dam.

**Commented [A17]:** This language is ambiguous as to how and how frequently this spill level is set. Is it calculated based on the previous day's average outflow, as would be appropriate to minimize wear on infrastructure? Is this spill level subject to the condition that it applies only if granted necessary state regulatory approval for TDG limits?

---

[2] Monitor and manage adult conversion rates in-season via Technical Management Team (TMT) process.

[3] Suspend juvenile fish transportation at Lower Monumental to avoid within day spill fluctuation.

| Project | Spring spill season (early April – mid-June) | Summer spill season (mid-June – end of August) | Fall/Winter spill season (early September – end November; early March – early April) Shutdown period Dec. 1 – Feb. 28/29 to address freezing issues and maintenance except as noted below. |
|---|---|---|---|
| John Day | Apr. 10 – June 15<br><br>125% Gas cap spill<br><br>24 hours per day | June 16 – Aug. 31<br><br>40% spill<br><br>24 hours per day | Sep. 1 – Nov. 30; and Mar. 1 – Apr. 9<br><br>Low volume surface passage via both spillway weirs (Bay 18 and Bay 19 TSWs)<br><br>24 hours per day<br><br>Approximately 1.6 kcfs Bay 2 for adult attraction when adult ladder is watered up (not during winter maintenance). |
| The Dalles | Apr. 10 – June 15<br><br>40% spill up to 125% Gas cap spill[4]<br>(Gas cap fish passage spill prioritizes spillbays 1-8 and Ice Trash Sluiceway)<br><br>24 hours per day | June 16 – Aug. 31<br><br>40% (fish passage spill prioritizes spill bays 1-8 and Ice Trash Sluiceway)<br><br>24 hours per day | Sep. 1 – Apr. 9<br><br>Ice Trash Sluiceway will operate at the lowest functional level using current FPP guidelines (~3 to 5 kcfs)<br><br>24 hours per day<br><br>Scheduling routine or non-routine below waterline maintenance will be coordinated in FPOM. |

Commented [A9]: USG notes new concern with risk of infrastructure failure in late November in the event of freezing temperatures insofar as this date is a delay from past usage of 16 Nov.

Commented [A18]: This provision is ambiguous as to when and how it would be implemented, or the USG' discretion to stage this transition. The JDA TSW requires a crew and crane and must be done during daylight hours, affecting practicability and timing of any transition.

Commented [A19]: This provision may not be implementable during low flows, especially Sep-Nov. JDA TSWs require a crane crew and several hours to open/close (requires advanced planning and scheduling). This provision does not allow closure of the TSWs when flows are approaching min gen limits and until flows are reliably sufficient for the foreseeable future.

For all 4 LCR projects, this provision must also be conditional upon Oregon modifying its water quality standards to allow for increased pollution to 120% TDG, and Federal Defendants do not intend to ask Oregon to modify its own pollution limits under the Clean Water Act.

Commented [A20]: This provision is ambiguous as to how it would operate in conjunction with the FPP. For example, FPP Table JDA-5 provides that adult attraction flow applies only during daylight hours.

Commented [A21]: This term is ambiguous how it operates with (or overrides) current FPP guidelines, especially for sluiceway operation and the yearly winter maintenance schedule. Current FPP guidelines have the ITS closed during this extended timeframe.

---

[4] TDG in The Dalles tailrace may fluctuate up to 125% prior to reducing spill at upstream projects or reducing spill at The Dalles below 40%. Maintain 40% spill for 24 hours at The Dalles and reduce John Day spill below the 125% TDG spill cap as needed for TDG management. Spill above 40%, up to 125% TDG, may occur for TDG management or for carrying reserves.

| Project | Spring spill season (early April – mid-June) | Summer spill season (mid-June – end of August) | Fall/Winter spill season (early September – end November; early March – early April) Shutdown period Dec. 1 – Feb. 28/29 to address freezing issues and maintenance except as noted below. |
|---|---|---|---|
| Bonneville | Apr. 10 – June 15<br><br>125% Gas Cap spill (Prioritizes concurrent operation of spillway, Power House 1 Ice Trash Sluiceway, and Power House 2 Corner Collector)<br><br>24 hours per day | June 16 – Aug 31<br><br>95 kcfs plus Powerhouse 1 Ice Trash Sluiceway and Powerhouse 2 Corner Collector<br><br>24 hours per day | Sep. 1 – Apr. 9<br><br>Powerhouse 1 Ice Trash Sluiceway will operate<br><br>24 hours per day<br><br>Sep. 1 – Apr. 9<br>Powerhouse 2 Corner Collector will operate<br><br>24 hours per day<br><br>Sep. 1 – Apr. 9<br>Adult attraction<br><br>24 hours per day<br><br>Scheduling routine or non-routine below waterline maintenance will be coordinated in FPOM. |

**Commented [A9]:** USG notes new concern with risk of infrastructure failure in late November in the event of freezing temperatures insofar as this date is a delay from past usage of 16 Nov.

**Commented [A22]:** Gas cap spill may not be attainable so long as one spillway is currently limited to 150 kcfs until repairs are completed. This term is ambiguous insofar as it includes surface passage routes that are not spill.

**Commented [A23]:** This term is ambiguous in whether it would permit corner collector maintenance that usually occurred when the structure wasn't being operated (Sep-Feb). This maintenance issue is not expressly addressed in current FPP, in contrast to some other maintenance.

**Commented [A24]:** This provision raises a conflict with the FPP, such as FPP provision that adult attraction spill occurs during daylight hours (FPP Table BON-5). Adults do not approach at night. Also, from Dec 1-end of Feb, adult attraction spill should only occur if the spillbay is adjacent to an operating ladder.

**Commented [A25]:** This operation as described here will not be implementable because Bonneville anticipates that zero generation would be a "pre-emptive" action prior to declaring a power or transmission system emergency. This prohibition is counter to Bonneville's discretion to adjust operations to meet system reliability needs during December through February when fish passage is minimal.

**Commented [A26]:** The USG anticipates revising these operational documents to address issues expected to arise under any Injunction, such as new reliability issues.

**Commented [A27]:** This sentence is ambiguous insofar as it excludes Tables 2 and 3.

**Commented [A28]:** Limiting this exception to just spill operations renders the entire PI ambiguous as spill is not the only variable involved in system operations or in deviating from generally applicable targets.

**Commented [A29]:** This exception is unduly restrictive insofar as the FOP does not specify every set of circumstances or process for adjusting CRS operations. Moreover, the USG may adjust more than spill operations when necessary.

1. Zero-flow operations (i.e., less than 5 kcfs) are prohibited at each of the four dams on the Lower Snake River, which shall instead always provide at least minimal discharge (5 kcfs or greater) from the dams (e.g., via spillways or powerhouses).

2. The annual FOP will be used by the Federal Defendants in determining spill patterns, processes, and procedures for implementation of the operations in Table 1 and the zero-flow prohibition stated above.

3. Federal Defendants may make planned or un-planned adjustments to the injunction spill operation for the reasons set forth in the annual FOP and

following the procedures set forth in the annual FOP, including deference provided to the Action Agencies for energy emergencies, human safety, or infrastructure integrity emergencies.

    a.    Any adjustments taken under this paragraph shall be limited to addressing the condition(s) at issue and shall not otherwise alter the injunction spill operation.

    b.    Federal Defendants shall restore the injunction spill operation as soon as practicable after the condition requiring adjustment is addressed.

    c.    Beginning in 2026, Water Management Plans and FOPs must require, before curtailing voluntary spill to help carry energy reserves (e.g., as outlined in the 2025 FOP), due diligence implementation of preemptive actions, as well as a declaration of power system emergency and/or spill variance reporting.

    d.    Deviations from spill orders, including rationale and resolution, shall be updated regularly on electronic platforms available to regional sovereigns.

**II.    RESERVOIR FOREBAY ELEVATION OPERATIONS INJUNCTION**

    A.    Except as provided in Section V below, Federal Defendants shall operate all Lower Snake River dam reservoirs (i.e., Lower Granite, Little Goose, Lower Monumental, and Ice Harbor) at MOP with a 1-foot operating range allowance from March 1 through August 31, as shown in Table 2. These operations shall commence in 2026 and are required until otherwise ordered by this Court.

| Table 2: Injunction for Lower Snake River Reservoirs | |
|---|---|
| Project | MOP (feet above mean sea level (ft msl) with 1-ft operating range from March 1 to August 31 starting in 2026 |
| Lower Granite | 733.0 |

Comments in right margin:

**Commented [A30]:** This final clause injects unnecessary ambiguity as a non-exclusive listing of emergencies, as well as whether the Order applies to Bonneville Power Administration.

**Commented [A31]:** This paragraph is ambiguous. Does it apply to Bonneville Power Administration? It creates ambiguity whether this term requires ordinary application of, e.g., Water Management Plan (WMP) Appendix 1 and Section 4 of the Fish Operations Plan (FOP), or a different scheme. It is also not clear how the WMP and FOP must be amended from their current terms or how the agencies are to comply with this ambiguous language.

**Commented [A32]:** This provision is ambiguous in light of the fact that the CRS does more than carry reserves. Such reserves must also be deployable by Bonneville within the system's operating constraints.

**Commented [A33]:** The reference to power system emergency is confusing as agencies make deviations to carry reserves before any emergency declaration so as to avoid the emergency. It is also ambiguous about the role and authority of Bonneville.

**Commented [A34]:** It is not clear what the expected reporting period will be under this term (e.g., is the duration expanded to all months of the year). Or is this a reference to pre-existing reporting processes. See, e.g., our next comment.

**Commented [A35]:** The sentence is ambiguous on "regional sovereigns" and whether this provision requires use of the existing regional coordination processes (TMT, RIOG) or if such processes are superseded by this Order.

The sentence is also ambiguous unless it means only that the USG will use existing reporting processes, such as monthly FOP implementation reports. It is unclear whether this section requires a new or different electronic platform with a different process. USG is not able to create a new platform and process prior to March 1.

**Commented [A36]:** This provision is ambiguous insofar as it provides no flexibility for the USG to ramp flows up or down to specified levels after entry of a court order or to transition between seasons. This ramping between elevations may take an extended period of time depending on conditions.

**Commented [A37]:** LG is currently at MOP plus 2 ft due to sedimentation issues. It is unclear if this requirement is subject to variation to address navigation and other established bases for variation.

| Little Goose | 633.0 |
|---|---|
| Lower Monumental | 537.0 |
| **Ice Harbor** | **437.0** |

> **Commented [A38]:** This table is ambiguous without specification of ranges for the 4 projects. USG reiterates the infeasibility of operating with a 1.0 ft hard constraint.

B.   Except as provided in Section V below, Federal Defendants shall operate McNary, the Dalles, and Bonneville dam reservoirs at a combination of lowest "normal" (i.e., recent) operating elevation and MOP with a 1.5-foot operating range allowance from March 1 through August 31, as shown in Table 3. These operations shall commence in 2026 and are required until otherwise ordered by this Court.

> **Commented [A39]:** This provision is infeasible if it requires a Court Order for any change in a specified operating range. There is a further ambiguity insofar as this provision provides no flexibility for the USG to ramp flows up or down to specified levels after entry of a court order or to transition between seasons. This ramping between elevations may take an extended period of time depending on conditions.

| Table 3: Injunction for Lower Columbia River Reservoirs | |
|---|---|
| Project | Required pool elevations (ft msl) with 1.5-ft operating range March 1 through August 31 starting in 2026 |
| McNary | 337.0 |
| The Dalles | 155.0 |
| Bonneville | 71.5 |

> **Commented [A40]:** This table is ambiguous without specification of ranges for the three projects. USG reiterates the infeasibility of operating with a 1.5 ft hard constraint in light of adverse consequences for fish passage structures, navigation safety, flood risk management, power and transmission system stability, and other project purposes. For example, a 155 ft MOP restriction at the Dalles will require/result in a violation of the minimum tailwater requirement at John Day.

C.   By July 1, 2026, the Federal Defendants will provide a summary to regional fish managers of which operational criteria and authorized purposes are associated with pool elevation lower limits that exceed original MOP designations for each of the lower Columbia River and Lower Snake River Projects. For Bonneville, The Dalles, and McNary dams, this summary will include a description of when and why any minimum operation limits increased from the original MOP designations, and what actions are needed to return to original MOP elevations.

> **Commented [A41]:** This deadline is not capable of being implemented given limited staff and funding available to produce the specified report by July 2026. It is also ambiguous who the "regional fish managers" are given NMFS and FWS have regulatory authority over the ESA listed salmonids, and so the report would be directed to federal agencies.

D.   Except as provided in Section V below, John Day Reservoir:

1.   From March 1 through June 15, Federal Defendants shall operate John Day at MIP (262.0 ft msl) with a 1.5-foot operating range. This operation shall commence in 2026 and is required until otherwise ordered by this Court.

> **Commented [A42]:** MIP is 262.5 ft. This sentence is ambiguous as to the required levels.
>
> USG reiterates its prior point about the need for a transition period between pool operating ranges.

> **Commented [A43]:** This provision is ambiguous in providing no flexibility for the USG to ramp flows up or down to specified levels after entry of a court order or to transition between seasons. This ramping between elevations may take an extended period of time depending on conditions.

2.  From June 16 through August 31, Federal Defendants shall operate John Day at 1 foot above MIP (263.0 ft msl) with a 1.5-foot operating range. This operation shall commence in 2026 and is required until otherwise ordered by this Court.

> **Commented [A44]:** MIP is 262.5 ft. This sentence is ambiguous as to the required levels.
>
> USG reiterates its prior point about the need for a transition period between pool operating ranges.

3.  Within one year of entry of this Order, Federal Defendants shall submit to the Court a plan detailing actions necessary for the John Day reservoir to operate at MOP (257.0 ft msl) with a 1.5-foot operating range from March 1 through August 31.

> **Commented [A45]:** USG reiterates its position that this plan would require impacts to other authorized project purposes such as water supply uses, hydropower generation, navigation safety, flood risk management, and recreation.
>
> USG also notes that the Corps lacks the funding and staff for this planning exercise which will include many technical issues and require specialized expertise to analyze.

   a.  The plan developed by Federal Defendants must, at a minimum, identify and propose solutions to water supply impacts, if any, to municipalities, hatcheries, and irrigators associated with operating John Day reservoir at MOP with a 1.5-foot operating range from March 1 through August 31.

   b.  Within 30 days of submission of the plan, Federal Defendants must show cause why the Court should not order them to implement water supply mitigation actions necessary to operate the John Day reservoir at MOP with a 1.5-foot operating range from March 1 through August 31.  Any party may file a response in support of or in opposition to Federal Defendants' show cause response.

## III.  INFRASTRUCTURE REPAIR AND MAINTENANCE INJUNCTION

> **Commented [A46]:** USG reiterates its position that appropriated funds for these projects are not currently available and that the timelines are not feasible. USG has project-specific concerns for each proposed timeline as detailed in declarations.  The provisions are also ambiguous because they do not identify the entities specifically subject to these paragraphs.

A.  The Dalles Dam Spillway:  No later than February 28, 2027, Federal Defendants shall complete necessary repairs as set forth in the Corps' design documentation to return spill bay 9 to service.  Once returned to service, Federal Defendants shall ensure it remains fully functional and able to effectuate spill as identified in Table 1.

B.  Bonneville Dam Stilling Basin Modification:  No later than February 28, 2027, Federal Defendants shall complete installation of barriers in the stilling basin as

set forth in the Corps' design documentation that will allow Bonneville to operate at 125% TDG spill during spring spill. Once barriers have been installed, Federal Defendants shall ensure the stilling basin remains unobstructed and Bonneville Dam is able to effectuate spill as identified in Table 1.

C.    John Day Fish Ladder Temperatures: No later than February 29, 2028, Federal Defendants shall complete installation of a cooling structure, with real-time temperature recording, at the exit of the John Day fish ladder. Federal Defendants shall provide real-time temperature data from John Day Dam to regional fish managers to allow for in-season management beginning in 2026. Once the cooling structure is installed, Federal Defendants shall ensure it remains fully functional.

D.    Lower Granite Auxiliary Water Supply (AWS) Pumps: No later than February 28, 2027, Federal Defendants shall replace Lower Granite fishway AWS pumps with pumps that will allow Little Goose Reservoir to be operated at the above-specified MOP elevation (i.e., 633 ft msl). Once the pumps have been installed, Federal Defendants shall ensure they remain fully functional.

E.    Lower Monumental Dam Fish Transport: Federal Defendants shall cease transportation of juvenile fish from Lower Monumental Dam, effective with the 2026 juvenile fish passage operations.

## IV.    EMERGENCY NON-OPERATIONAL CONSERVATION MEASURES INJUNCTION

A.    Predation Reduction and Management

    1.    Avian Predation – Astoria-Megler Bridge:  Federal Defendants shall ensure that the double-crested cormorant colony nesting on the Astoria-Megler Bridge has been relocated to East Sand Island.

        a.    Relocation efforts shall begin March 15, 2026, and continue until the colony has been fully relocated.

        b.    Hazing efforts at the Astoria-Megler Bridge should begin March 15 annually and continue every year until otherwise ordered by the Court to ensure that reestablishment of a colony does not occur.

    2.    Avian Predation – Blalock Islands:  Federal Defendants shall begin efforts to ensure that there are no nesting Caspian terns and no more than 1,000 nesting gulls on the Blalock Islands on March 1 of each year, beginning in 2026 and continuing every year until otherwise ordered by the Court.

        a.    Habitat manipulation, active hazing, and/or lethal removal may be used to manage Caspian tern and gull populations, as long as there are no adverse impacts to fish travel time or juvenile fish survival (*e.g.*, birds are not displaced to Badger Island).

    3.    Non-Native Piscine Predation – Beginning no later than March 1 of each year, beginning in 2026 and continuing every year until otherwise ordered

---

**Commented [A47]:** The USG reiterates its position that the Federal Defendants do not have the statutory authority, collectively or singly, to implement these actions and the impropriety of prejudging the merit and feasibility of each measure. Nor is any of the necessary regulatory and legal compliance, funding, or logistical planning in place to permit action.

USG has specific concerns with each project that further detail these general objections.

USG also notes that this provision is ambiguous because it does not identify the entities specifically subject to these paragraphs.

by the Court, Federal Defendants shall take measures to reduce non-native piscine predation on listed species as follows:

    a.    Federal Defendants shall remove all non-native piscine predators encountered at the Lower Granite adult trap.

    b.    Federal Defendants shall provide a written annual report by December 31 of each year detailing the number and type of non-native piscine predators removed.

B.    Steelhead Kelt Reconditioning

    1.    Federal Defendants shall ensure that wild/natural steelhead kelts in Snake Basin tributary weirs and Lower Granite, Little Goose, and Lower Monumental dams are collected and transported to the steelhead kelt reconditioning facility at the Nez Perce Tribal Hatchery within 24 hours of being notified of their presence, and are reconditioned at the Hatchery. These actions shall commence in 2026 and continue until otherwise ordered by the Court.

    a.    Collection and transportation at Snake Basin tributary weirs shall begin when tributary weirs are installed (on or about March 1) and will no longer be required when the steelhead kelt reconditioning facility has reached full capacity (750 steelhead kelt) or June 30, whichever comes first.

    b.    Collection and removal at Lower Granite, Little Goose, and Lower Monumental dams shall begin when the Corps initiates operation of the juvenile bypass facility  and will no longer be required when the steelhead kelt reconditioning facility has reached full capacity (750 steelhead kelt) or June 30, whichever comes first.

C.    Snake River Sockeye:  Federal Defendants shall undertake the following actions to reduce adult migration mortality, establish a secondary broodstock and

hatchery safety net, and reduce the risk of further genetic and demographic decline:

1.    Federal Defendants shall maximize adult trap-and-transport operations by:

    a.    expanding operation of the Lower Granite Dam trap to seven days per week, during the Snake River sockeye migration season (the last week of June through the last week of July); and,

    b.    targeting collection of at least 25% and up to 50% of the adult sockeye return at Lower Granite Dam for transport; and,

    c.    providing holding ponds for adult sockeye at Dworshak Hatchery.

2.    Federal Defendants shall work with the Nez Perce Tribe to develop and finalize a Hatchery and Genetic Management Plan (HGMP) for a non-captive brood safety-net hatchery program for Snake River sockeye by September 1, 2026.

D.    Tucannon River Spring Chinook:   Federal Defendants shall take the following actions to enhance hatchery operations and address adult salmon and steelhead access and juvenile salmon and steelhead predation bottlenecks at the mouth of the Tucannon River, in coordination with Washington Department of Fish Wildlife, Nez Perce Tribe and Confederated Tribes of the Umatilla Indian Reservation.  These actions shall commence in 2026 and continue until otherwise ordered by the Court.

1.    Federal Defendants shall scope and develop a plan for dredging the sedimentation at the mouth of the Tucannon River and the adjacent Lower Monumental reservoir to improve  juvenile and adult access to and from the River.  Dredging shall be completed during the 2026/2027 in-water work window.

2.    Federal Defendants shall locate, scope, and design a weir and an associated adult trap in the lower Tucannon River and downriver of the

current trap, to facilitate more efficient broodstock collection, more effective exclusion of non-native fish, and safer passage of fish destined for natural spawning.  The design documents shall be submitted to the Washington Department of Fish and Wildlife, Nez Perce Tribe, and Confederated Tribes of the Umatilla Indian Reservation for approval no later than December 31, 2026.  Within 60 days of approval of the design documents, Federal Defendants shall submit permit applications necessary to commence construction of the weir and trap.

V.    GENERAL PROVISIONS

A.    In the event any party alleges that any Federal Defendant has failed to comply with any term of this Order, that party's sole remedy shall be a motion to enforce the terms of this Order. This Order shall not be enforceable through a proceeding for contempt of Court.

B.    This Order imposes no obligations, prohibitions, or duties on the Bonneville Power Administration ("Bonneville").

C.    Notwithstanding any provision of this Order, any Federal Defendant, including the Corps or U.S. Bureau of Reclamation, may adhere to Bonneville's guidance or direction regarding any pre-emptive or emergency action that Bonneville in its sole discretion deems necessary to maintain the reliability or function of the Federal power or transmission system.

D.    Federal Defendants' implementation of this Order is subject to the terms of the following documents, and the following documents control to the extent there is a conflict between this

Order and the terms present in the following documents. These documents shall be available on the Technical Management Team website,[5] including all updates following entry of this Order:

1.      The   annual Water Management Plan and its appendices, including (but not limited to):

        i.      Appendix 1 "Emergency Protocols"

        ii.     Appendix 2 "Project Data"

        iii.    Appendix 4 "Total Dissolved Gas Management Plan"

        iv.     Appendix 6 "Regional Implementation Oversight Group, Technical Management Team Guidelines"

2.      Annual Fish Passage Plan, including all appendices (e.g., Fish Operations Plan)

3.       Flood risk management, engineering and safety protocols contained within the Corps and Reclamation guidance documents.


_____
Michael H. Simon
United States District Judge


Submitted by:  Deanna Chang
               Senior Assistant Attorney General
               Attorney for State of Oregon


_____
[5] The Technical Management Team website is located here: https://public.crohms.org/tmt/.

Page 15 -  [PROPOSED] ORDER

Proposed Order - Feb 18 USG rev.docx

**Main document changes and comments**

| Page 2: Commented [A1] | Author |
|---|---|

The comments of the Federal Defendants ("USG") herein are a non-exclusive list. The USG may provide additional comments or revised comments if the proposed Order is modified.

| Page 2: Commented [A2] | Author |
|---|---|

It is not possible under real-world conditions to both meet 125% TDG "to the maximum level" but also not exceed that level. "Maximum" implementation will cause exceedance of the water quality standard and applicable conditions.

| Page 2: Commented [A3] | Author |
|---|---|

It is unclear if reference to the FOP and FPP allow for the annual and periodic revisions. USG intends to revise the FOP and FPP in 2026 and operate pursuant to the revised documents.

| Page 2: Commented [A4] | Author |
|---|---|

Spill patterns are addressed in several agency guidance documents including the FOP. See, e.g., paragraph B.2 below. This definition may also preclude discretion to adjust spill patterns.

| Page 2: Commented [A5] | Author |
|---|---|

The definitions of MOP and MIP are ambiguous without specification of where and how measured, such as duration, hourly average, etc. Does this provision incorporate the agencies' established measurement protocols?

| Page 2: Added | Author |
|---|---|

and Section V

| Page 2: Commented [A6] | Author |
|---|---|

This sentence is unreasonably narrow. It is also ambiguous whether the language covers just spill operations or the range of issues addressed in the charts.

The USG interprets reference to "spill" to mean the proposed injunction only covers spill operations and not the other items identified in the Table.

| Page 2: Deleted | Author |
|---|---|

Federal Defendants

| Page 2: Added | Author |
|---|---|

the Corps

| Page 2: Commented [A7] | Author |
|---|---|

Obligating all Federal Defendants to comply with all obligations in the PI is overbroad and impossible for those agencies that lack the authority to perform such duties. The order is therefore not specific to which obligations apply to specific Federal agencies.

| Page 3: Commented [A8] | Author |
| --- | --- |

This Table lacks many footnote provisions included prior FOPs (like 2025).

This table does not specify how and how frequently this spill level is set. Is it calculated based on the previous day's average outflow, and not changed on an hourly basis?

This Table does not address the need for inspections or maintenance. Nor does the Table address the need to close removable spillway weirs earlier than Nov 30 in the event of freezing.

The Table does not include provisions for switching to flat spill based on low outflow.

| Page 3: Commented [A9] | Author |
| --- | --- |

USG notes new concern with risk of infrastructure failure in late November in the event of freezing temperatures insofar as this date is a delay from past usage of 16 Nov.

| Page 3: Commented [A10] | Author |
| --- | --- |

Is there no adult delay criteria here?

| Page 3: Commented [A11] | Author |
| --- | --- |

The Table does not address whether surface level spill requirements allow for a change to deep spill in low flow conditions and to maintain minimum generation. The Table does not reflect that the Corps cannot adjust the level of spill through the spillways.

| Page 3: Commented [A12] | Author |
| --- | --- |

This comment about adult delay applies to all LSR projects. This table does not include the adult delay criteria from '25 FOP Section 7, or use of DART to define a delay. The draft '26 FOP deleted that language as not necessary given the operations specified therein. If those operations are not implemented, then past data and experience establishes a need to apply adult delay criteria to the other three LSR projects.

| Page 4: Commented [A13] | Author |
| --- | --- |

The USG understands the sentence in FN 2 to refer to existing coordination processes. As such, it is unnecessary.

| Page 4: Commented [A14] | Author |
| --- | --- |

FN 3 is ambiguous whether all fish transportation is part of the proposed order, or whether the agencies retain discretion to suspend all fish transportation operations.

| Page 4: Commented [A15] | Author |
| --- | --- |

Is there no adult delay criteria here despite observed delay?

| Page 4: Commented [A16] | Author |
| --- | --- |

USG reiterates its position that hourly gate movements cause unnecessary wear and increased maintenance. Such movements would likely be necessary in spring at minimum generation/spill the rest and with no capability to fill into a pool to respond to flow fluctuations from Priest Rapids Dam.

| Page 4: Commented [A17] | Author |
| --- | --- |

This language is ambiguous as to how and how frequently this spill level is set. Is it calculated based on the previous day's average outflow, as would be appropriate to minimize wear on infrastructure? Is this spill level subject to the condition that it applies only if granted necessary state regulatory approval for TDG limits?

| Page 5: Commented [A18] | Author |
|---|---|

This provision is ambiguous as to when and how it must be implemented, or the USG' discretion to stage this transition. The JDA TSW requires a crew and crane and must be done during daylight hours, affecting practicability and timing of any transition.

| Page 5: Commented [A19] | Author |
|---|---|

This provision may not be implementable during low flows, especially Sep-Nov. JDA TSWs require a crane crew and several hours to open/close (requires advanced planning and scheduling). This provision does not allow closure of the TSWs when flows are approaching min gen limits and until flows are reliably sufficient for the foreseeable future.

For all 4 LCR projects, this provision must also be conditional upon Oregon modifying its water quality standards to allow for increased pollution to 120% TDG, and Federal Defendants do not intend to ask Oregon to modify its own pollution limits under the Clean Water Act.

| Page 5: Commented [A20] | Author |
|---|---|

This provision is ambiguous as to how it would operate in conjunction with the FPP. For example, FPP Table JDA-5 provides that adult attraction flow applies only during daylight hours.

| Page 5: Commented [A21] | Author |
|---|---|

This term is ambiguous how it operates with (or overrides) current FPP guidelines, especially for sluiceway operation and the yearly winter maintenance schedule. Current FPP guidelines have the ITS closed during this extended timeframe.

| Page 6: Commented [A22] | Author |
|---|---|

Gas cap spill may not be attainable so long as one spillway is currently limited to 150 kcfs until repairs are completed. This term is ambiguous insofar as it includes surface passage routes that are not spill.

| Page 6: Commented [A23] | Author |
|---|---|

This term is ambiguous in whether it would permit corner collector maintenance that usually occurred when the structure wasn't being operated (Sep-Feb). This maintenance issue is not expressly addressed in current FPP, in contrast to some other maintenance.

| Page 6: Commented [A24] | Author |
|---|---|

This provision raises a conflict with the FPP, such as FPP provision that adult attraction spill occurs during daylight hours (FPP Table BON-5). Adults do not approach at night. Also, from Dec 1-end of Feb, adult attraction spill should only occur if the spillbay is adjacent to an operating ladder.

| Page 6: Commented [A25] | Author |
|---|---|

This operation as described here will not be implementable because Bonneville anticipates that zero generation would be a "pre-emptive" action prior to declaring a power or transmission system emergency. This prohibition is counter to Bonneville's discretion to adjust operations to meet system reliability needs during December through February when fish passage is minimal.

| Page 6: Commented [A26] | Author |
|---|---|

The USG anticipates revising these operational documents to address issues expected to arise under any Injunction, such as new reliability issues.

| Page 6: Commented [A27] | Author |
|---|---|

This sentence is ambiguous insofar as it excludes Tables 2 and 3.

| Page 6: Commented [A28] | Author |
|---|---|

Limiting this exception to just spill operations renders the entire PI ambiguous as spill is not the only variable involved in system operations or in deviating from generally applicable targets.

| Page 6: Commented [A29] | Author |
|---|---|

This exception is unduly restrictive insofar as the FOP does not specify every set of circumstances or process for adjusting CRS operations. Moreover, the USG may adjust more than spill operations when necessary.

| Page 7: Commented [A30] | Author |
|---|---|

This final clause injects unnecessary ambiguity as a non-exclusive listing of emergencies, as well as whether the Order applies to Bonneville Power Administration.

| Page 7: Commented [A31] | Author |
|---|---|

This paragraph is ambiguous. Does it apply to Bonneville Power Administration? It creates ambiguity whether this term requires ordinary application of, e.g., Water Management Plan (WMP) Appendix 1 and Section 4 of the Fish Operations Plan (FOP), or a different scheme. It is also not clear how the WMP and FOP must be amended from their current terms or how the agencies are to comply with this ambiguous language.

| Page 7: Commented [A32] | Author |
|---|---|

This provision is ambiguous in light of the fact that the CRS does more than carry reserves. Such reserves must also be deployable by Bonneville within the system's operating constraints.

| Page 7: Commented [A33] | Author |
|---|---|

The reference to power system emergency is confusing as agencies make deviations to carry reserves before any emergency declaration so as to avoid the emergency. It is also ambiguous about the role and authority of Bonneville.

| Page 7: Commented [A34] | Author |
|---|---|

It is not clear what the expected reporting period will be under this term (e.g., is the duration expanded to all months of the year). Or is this a reference to pre-existing reporting processes. See, e.g., our next comment.

| Page 7: Commented [A35] | Author |
|---|---|

The sentence is ambiguous on "regional sovereigns" and whether this provision requires use of the existing regional coordination processes (TMT, RIOG) or if such processes are superseded by this Order.

The sentence is also ambiguous unless it means only that the USG will use existing reporting processes, such as monthly FOP implementation reports. It is unclear whether this section requires a new or different electronic platform with a different process. USG is not able to create a new platform and process prior to March 1.

| Page 7: Added | Author |
|---|---|

Except as provided in Section V below,

| Page 7: Commented [A36] | Author |
|---|---|

This provision is ambiguous insofar as it provides no flexibility for the USG to ramp flows up or down to specified levels after entry of a court order or to transition between seasons. This ramping between elevations may take an extended period of time depending on conditions.

| Page 7: Commented [A37] | Author |
|---|---|

LG is currently at MOP plus 2 ft due to sedimentation issues. It is unclear if this requirement is subject to variation to address navigation and other established bases for variation.

| Page 8: Commented [A38] | Author |
|---|---|

This table is ambiguous without specification of ranges for the 4 projects. USG reiterates the infeasibility of operating with a 1.0 ft hard constraint.

| Page 8: Added | Author |
|---|---|

Except as provided in Section V below,

| Page 8: Commented [A39] | Author |
|---|---|

This provision is infeasible if it requires a Court Order for any change in a specified operating range. There is a further ambiguity insofar as this provision provides no flexibility for the USG to ramp flows up or down to specified levels after entry of a court order or to transition between seasons. This ramping between elevations may take an extended period of time depending on conditions.

| Page 8: Commented [A40] | Author |
|---|---|

This table is ambiguous without specification of ranges for the three projects. USG reiterates the infeasibility of operating with a 1.5 ft hard constraint in light of adverse consequences for fish passage structures, navigation safety, flood risk management, power and transmission system stability, and other project purposes. For example, a 155 ft MOP restriction at the Dalles will require/result in a violation of the minimum tailwater requirement at John Day.

| Page 8: Commented [A41] | Author |
|---|---|

This deadline is not capable of being implemented given limited staff and funding available to produce the specified report by July 2026. It is also ambiguous who the "regional fish managers" are given NMFS and FWS have regulatory authority over the ESA listed salmonids, and so the report would be directed to federal agencies.

| Page 8: Added | Author |
|---|---|

Except as provided in Section V below,

| Page 8: Commented [A42] | Author |
|---|---|

MIP is 262.5 ft. This sentence is ambiguous as to the required levels.

USG reiterates its prior point about the need for a transition period between pool operating ranges.

| Page 8: Commented [A43] | Author |
| --- | --- |

This provision is ambiguous in providing no flexibility for the USG to ramp flows up or down to specified levels after entry of a court order or to transition between seasons. This ramping between elevations may take an extended period of time depending on conditions.

| Page 9: Commented [A44] | Author |
| --- | --- |

MIP is 262.5 ft. This sentence is ambiguous as to the required levels.

USG reiterates its prior point about the need for a transition period between pool operating ranges.

| Page 9: Commented [A45] | Author |
| --- | --- |

USG reiterates its position that this plan would require impacts to other authorized project purposes such as water supply uses, hydropower generation, navigation safety, flood risk management, and recreation.

USG also notes that the Corps lacks the funding and staff for this planning exercise which will include many technical issues and require specialized expertise to analyze.

| Page 9: Commented [A46] | Author |
| --- | --- |

USG reiterates its position that appropriated funds for these projects are not currently available and that the timelines are not feasible. USG has project-specific concerns for each proposed timeline as detailed in declarations. The provisions are also ambiguous because they do not identify the entities specifically subject to these paragraphs.

| Page 11: Commented [A47] | Author |
| --- | --- |

The USG reiterates its position that the Federal Defendants do not have the statutory authority, collectively or singly, to implement these actions and the impropriety of prejudging the merit and feasibility of each measure. Nor is any of the necessary regulatory and legal compliance, funding, or logistical planning in place to permit action.

USG has specific concerns with each project that further detail these general objections.

USG also notes that this provision is ambiguous because it does not identify the entities specifically subject to these paragraphs.

| Page 14: Added | Author |
| --- | --- |

V.    GENERAL PROVISIONS

A.    In the event any party alleges that any Federal Defendant has failed to comply with any term of this Order, that party's sole remedy shall be a motion to enforce the terms of this Order. This Order shall not be enforceable through a proceeding for contempt of Court.

B.    This Order imposes no obligations, prohibitions, or duties on the Bonneville Power Administration ("Bonneville").

C.      Notwithstanding any provision of this Order, any Federal Defendant, including the Corps

or U.S. Bureau of Reclamation, may adhere to Bonneville's guidance or direction regarding any

pre-emptive or emergency action that Bonneville in its sole discretion deems necessary to

maintain the reliability or function of the Federal power or transmission system.

| Page 14: Added | Author |
|---|---|

D.      Federal Defendants' implementation of this Order is subject to the terms of the following

documents, and the following documents control to the extent there is a conflict between this

Order and the terms present in the following documents. These documents shall be available on

the Technical Management Team website,[1] including all updates following entry of this Order:

1.      The   annual Water Management Plan and its appendices, including (but not

limited to):

i.      Appendix 1 "Emergency Protocols"

ii.      Appendix 2 "Project Data"

iii.      Appendix 4 "Total Dissolved Gas Management Plan"

iv.      Appendix 6 "Regional Implementation Oversight Group, Technical

Management Team Guidelines"

2.      Annual Fish Passage Plan, including all appendices (e.g., Fish Operations Plan)

3.      Flood risk management, engineering and safety protocols contained within the Corps and

Reclamation guidance documents.

| Page 15: Deleted | Author |
|---|---|

---

[1] The Technical Management Team website is located here: https://public.crohms.org/tmt/.

| Header and footer changes |
| Text Box changes |
| Header and footer text box changes |
| Footnote changes |

| Page 15: Added | Author |

[1] The Technical Management Team website is located here: https://public.crohms.org/tmt/.

| Endnote changes |