# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NATIONAL WILDLIFE FEDERATION**, et al.,<br><br>    Plaintiffs,<br><br>and<br><br>**STATE OF OREGON**, et al.,<br><br>    Intervenor-Plaintiffs,<br><br>    v.<br><br>**NATIONAL MARINE FISHERIES SERVICE**, et al.,<br><br>    Defendants,<br><br>and<br><br>**PUBLIC POWER COUNCIL**, et al.,<br><br>    Intervenor-Defendants. | Case No. 3:01-cv-640-SI<br><br>**SECOND DECLARATION OF BARTHOLOMEW A. MCMANUS IN SUPPORT OF FEDERAL DEFENDANTS' REQUEST FOR AN EMERGENCY STAY PENDING APPEAL** |

I, Bartholomew A. McManus, declare and state as follows:

1. My expertise and background remain consistent with my statements in my December 11, 2025 Declaration of Bartholomew A. McManus in Support of Federal Defendants' Opposition To Plaintiffs' Motions For a Preliminary Injunction (2025 McManus Decl.).[1]

2. I reviewed the Plaintiffs' Proposed Order (ECF No. 2530-2) ("Prop. Order") and would like to highlight the immediate impact of the Prop. Order on the reliability of the Federal Columbia River Transmission System. The Bonneville Power Administration ("Bonneville") will be unable to operate reliably and mitigate the impacts of the Prop. Order by March 1, 2026. As a result, there is a substantial risk that Bonneville will frequently need to declare transmission system emergencies and potentially shed load (blackout areas because there is insufficient power supply to balance supply and demand) to avoid larger power and transmission system issues.

### I. Bonneville will be unable to carry the required amount of Contingency and Balancing Reserves.

3. As explained in the 2025 McManus Decl., the ability to carry Contingency and Balancing Reserves is dependent on having water available to either increase generation ("*inc*") or decrease generation ("*dec*") when needed to ensure generation and load (demand) are balanced.[2] There are various Reliability Standards that govern the amount of Contingency and Balancing Reserves that Bonneville must hold, and Bonneville is required to follow these Reliability Standards pursuant to Section 215 of the Federal Power Act.[3]

4. Contingency Reserves are the capacity necessary to replace energy lost due to forced, unplanned outages of generation or transmission equipment. Bonneville has a legal requirement to carry enough Contingency Reserves to comply with Reliability Standard BAL-002-WECC-3 (3% of generation and 3% of load as additional *inc* reserves), as well as meet its contractual obligations to its transmission customers under its Tariff.[4] Bonneville forecasted it will need an average of 508 MW of *inc* reserves to meet its Contingency Reserve obligation for the BP-26 rate period (October 1, 2025 to September 31, 2028).[5]

5. Balancing Reserves are the capacity necessary to maintain within-hour load-resource balance.[6] Bonneville must carry enough Balancing Reserves to follow the performance

---

[1] ECF 2579.
[2] *Id.* at ¶¶7-8.
[3] *Id.* at ¶¶11-12.
[4] *Id.* at ¶¶10-13.
[5] *Id.* at ¶14.
[6] *Id.* at ¶7.

SECOND DECLARATION OF BARTHOLOMEW A. MCMANUS IN SUPPORT OF FEDERAL DEFENDANTS' REQUEST FOR AN EMERGENCY STAY PENDING APPEAL    2

standards set forth in Reliability Standard BAL-001-2, as well as meet its contractual obligations to its transmission customers under its Tariff.[7] To meet its Balancing Reserve obligation, Bonneville forecasted an average need of 1,030 MW of *inc* reserves and -1,113 MW of *dec* reserves for the BP-26 rate period.[8] In total, Bonneville forecasts an average need of 1,538 MW of *inc* reserves for both its Contingency Reserves and Balancing Reserves obligations, and at least 1,011.8 MW *inc* and -526 MW *dec* to hold its Contingency Reserve obligations and enough Balancing Reserves to avoid shedding load.[9]

6. As a result of the Prop. Order, the Columbia River System ("CRS") will be unable to provide the required amount of Contingency and Balancing Reserves resulting in immediate adverse impacts to the power and transmission system. With only a one to one and half-foot operating range (i.e., reservoir elevation) for the four lower Columbia River dams, these dams can only carry 100 MW of capacity for reserves.[10] Without the Prop. Order in place, the lower Columbia and lower Snake River dams typically carry between 200 and 500 MW, which gives Bonneville the capacity necessary to meet its reserves requirements and react to any unplanned disturbances on the system, especially with the geographic location of these dams. Without the capacity from the lower Columbia and lower Snake River dams, Bonneville's reserves obligations will be shifted to Grand Coulee and Chief Joseph dams, which are not situated geographically close to large load centers (e.g., Portland) and increases the likelihood of system reliability issues, especially during times of maintenance or when there are other issues on the transmission system that limit the deliverability of energy from these dams. Moreover, looking at historical generation levels at Grand Coulee and Chief Joseph dams, particularly in years where generation was more limited, if the Prop. Order was in effect, Bonneville would not have been able to carry the required amount of combined Contingency and Balancing Reserves between 29.5 and 35.8 percent of the time, and would not have been able to carry the minimum amount for Contingency Reserves and to avoid shedding load (blackouts) between 19.8 and 23.5 percent of the time.[11] This shift will put the region on the verge of transmission system emergencies on a more frequent basis, which could result in the interruption of fish operations or have adverse effects to human health and safety.

7. In order to potentially avoid impacts from a lack of reserves, Bonneville will need to purchase Contingency and Balancing Reserves from a third-party. Bonneville has never purchased third-party Contingency Reserves before and is unsure if there is a market to cover its obligation. For example, from 2014 to 2018, Bonneville had a program to acquire third-party

---

[7] *Id.* at ¶12.
[8] *Id.* at ¶14.
[9] *Id.*
[10] *Id.* at ¶16.
[11] *Id.* at ¶17; Fed. Def.'s Opp. To Pls Mot. to Compel, ECF No.2608-4 at 4.

SECOND DECLARATION OF BARTHOLOMEW A. MCMANUS IN SUPPORT OF FEDERAL
DEFENDANTS' REQUEST FOR AN EMERGENCY STAY PENDING APPEAL           3

Balancing Reserves and found that there was little to no market for the acquisition of third-party Balancing Reserves. Bonneville is not aware of any new, readily available market, and is unsure it will be able to mitigate the loss of either Balancing or Contingency Reserves through purchases. This presents a real concern for the region and may cause adverse effects to human health and safety if there is no way to mitigate the transmission effects from the Prop. Order.

### II.     Bonneville's Automatic Generation Control systems do not allow for integration of third-party reserves.

8. Even if Bonneville could purchase enough Contingency Reserves through a potential third-party, Bonneville's systems are not currently programmed to allow the use of third-party Contingency Reserves, and reprogramming to allow for this cannot be accomplished until May 1, 2026, at the earliest. Bonneville relies on its Automatic Generation Control ("AGC") system to deploy reserves when needed.[12] Bonneville is already conducting a time sensitive five-year-long upgrade project to modernize AGC unrelated to the Prop. Order. This is an essential project to maintain critical energy infrastructure, as Bonneville relies on AGC to make instant adjustments to generation necessary to maintain the reliability of the transmission system. Any delays present the risk that AGC could fail, threatening reliability for the entire Pacific Coast region. Setting up AGC to integrate third-party Contingency Reserves will take approximately two to three months. During this time, Bonneville will have to dedicate the same personnel working on the existing AGC upgrade to making these new changes to comply with the Prop. Order, delaying the upgrade project by approximately the two to three-month timeframe needed to code for third-party Contingency Reserves. This means AGC will not be available for Contingency Reserves until at least May 1, 2026. As stated previously, Bonneville is required by Reliability Standard BAL-002-WECC-3 to carry a certain amount of Contingency Reserves. Assuming Bonneville can purchase these reserves, Bonneville still cannot utilize these reserves for at least two months due to the need to reprogram AGC, which could put Bonneville in a position of violating Reliability Standard BAL-002-WECC-3, which would threaten its ability to maintain the reliability of the transmission system.

9. Purchasing Balancing Reserves from a third-party also requires new programming that is even more complex, pushing the ability to integrate third-party Balancing Reserves out until March 1, 2027 at the earliest. In order to integrate third-party Balancing Reserves, Bonneville will need to code AGC to dispatch the purchased Balancing Reserves every two seconds, necessitating robust communication links to the third-party provider. In addition, Bonneville will also need to integrate the third-party Balancing Reserves into its methodology

---

[12] *Id.* at ¶7.

SECOND DECLARATION OF BARTHOLOMEW A. MCMANUS IN SUPPORT OF FEDERAL DEFENDANTS' REQUEST FOR AN EMERGENCY STAY PENDING APPEAL         4

used for dispatching Balancing Reserves by allocating a percentage of the total response to the third-party supplier. This is a very complex algorithm, requiring up to a year to incorporate these detailed requirements into AGC. A year's delay to Bonneville's existing AGC upgrade project would substantially undermine Bonneville's ability to maintain the reliability of the transmission system.

### III.     Conclusion

10.    In conclusion, immediate compliance with the Prop. Order will threaten the reliability of the power and transmission system, as the Prop. Order will not afford Bonneville the required amount of Contingency or Balancing Reserves needed to maintain reliability, resulting in a substantial risk of blackouts and threats to human health and safety. The uncertainty surrounding a reliable capacity market in the Pacific Northwest, in addition to the technical challenges requiring lengthy timeframes to incorporate third-party reserves, raises the risk that Bonneville will frequently need to declare transmission emergencies and implement load shedding (blackouts) to avoid larger system issues.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 19, 2026.

        /s/ Bartholomew A. McManus  
        BARTHOLOMEW A. MCMANUS  
        Electrical Engineer  
        Bonneville Power Administration