# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NATIONAL WILDLIFE FEDERATION, PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, INSTITUTE FOR FISHERIES RESOURCES, SIERRA CLUB, IDAHO RIVERS UNITED, NORTHWEST SPORT FISHING INDUSTRY ASSOCIATION, NW ENERGY COALITION, COLUMBIA RIVERKEEPER,** and **FEDERATION OF FLY FISHERS**, | Case No. 3:01-cv-640-SI<br><br>**OPINION AND ORDER** |

                    Plaintiffs,

and

**STATE OF OREGON, SPOKANE TRIBE OF INDIANS,** and **COEUR D'ALENE TRIBE**,

                    Intervenor-Plaintiffs,

        v.

**NATIONAL MARINE FISHERIES SERVICE, U.S. ARMY CORPS OF ENGINEERS, U.S. BUREAU OF RECLAMATION,** and **U.S. FISH AND WILDLIFE SERVICE**,

                    Defendants,

PAGE 1 – OPINION AND ORDER

and

**PUBLIC POWER COUNCIL, COLUMBIA-SNAKE RIVER IRRIGATORS ASSOCIATION, NORTHWEST RIVER PARTNERS, CONFEDERATED SALISH AND KOOTENAI TRIBES, STATE OF MONTANA, INLAND PORTS AND NAVIGATION GROUP, STATE OF IDAHO, KOOTENAI TRIBE OF IDAHO**, **NORTHWEST IRRIGATION UTILITIES**, **FRANKLIN COUNTY FARM BUREAU FEDERATION, GRANT COUNTY FARM BUREAU FEDERATION, WASHINGTON FARM BUREAU FEDERATION,** and **NORTHWEST REQUIREMENTS UTILITIES**,

Intervenor-Defendants.

Amanda W. Goodin, Michael B. Mayer, Charisa Gowen-Takahashi, and Nicolas Wedekind, EARTHJUSTICE, 810 Third Avenue, Suite 610, Seattle, WA 98104; Daniel J. Rohlf, EARTHRISE LAW CENTER, Lewis & Clark Law School, 10015 SW Terwilliger Boulevard, MSC 51, Portland, OR 97219. Of Attorneys for Plaintiffs.

Dan Rayfield, Attorney General, Deanna J. Chang, Christina L. Beatty-Walters, and Austin D. Saylor, Senior Assistant Attorneys General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Intervenor-Plaintiff State of Oregon.

Theodore. C. Knight, Special Legal Counsel, SPOKANE TRIBE OF INDIANS, 9121 NE Briar Rose Lane, Bainbridge Island, WA 98110. Of Attorneys for Intervenor-Plaintiff the Spokane Tribe of Indians.

Richard K. Eichstaedt, REY-BEAR MCLAUGHLIN, LLP, 421 W. Riverside Avenue, Suite 1004, Spokane, WA 99201. Of Attorneys for Intervenor-Plaintiff Coeur d'Alene Tribe.

Sean E. Martin, Assistant United States Attorney, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Portland, OR 97204; Romney S. Philpott III, Senior Trial Attorney, U.S. DEPARTMENT OF JUSTICE, P.O. Box 7611, Washington, DC 20044; Michael R. Eitel and John H. Martin III, U.S. DEPARTMENT OF JUSTICE, ENVIRONMENT AND NATURAL RESOURCES DIVISION, 999 18th Street, North Terrace, Suite 600, Denver, CO 80202; Amanda Rudat, Elizabeth Kirby, and Frederick Turner, Trial Attorneys, U.S. DEPARTMENT OF JUSTICE, WILDLIFE AND MARINE RESOURCES SECTION AND NATURAL RESOURCES SECTION, P.O. Box 7611, Washington, DC 20044; Kieran O'Neil, U.S. DEPARTMENT OF JUSTICE, ENVIRONMENT

AND NATURAL RESOURCES DIVISION, 150 M. Street NE, Washington, DC 20002. Of Attorneys for Federal Defendants.

Irion Sanger and John Maxwell Greene, SANGER GREENE, PC, 4031 SE Hawthorne Blvd., Portland, OR 97214. Of Attorneys for Intervenor-Defendant Public Power Council.

James L. Buchal, MURPHY & BUCHAL LLP, P.O. Box 86620, Portland, OR 97286. Of Attorneys for Intervenor-Defendant Columbia Snake River Irrigators Association and *Amicus Curiae* Washington State Potato Commission and Eastern Oregon Irrigators Association.

Ryan P. Steen and Jason T. Morgan, STOEL RIVES LLP, 600 University Street, Suite 3600, Seattle, WA 98101. Of Attorneys for Intervenor-Defendant Northwest RiverPartners.

Stuart M. Levit, John T. Harrison, and Joseph P. Hovenkotter, TRIBAL LEGAL DEPARTMENT, CONFEDERATED SALISH AND KOOTENAI TRIBES, 42487 Complex Boulevard, P.O. Box 278, Pablo, MT 59855; Julie A. Weiss, HAGLUND KELLEY LLP, 2177 SW Broadway, Portland, OR 97201. Of Attorneys for Intervenor-Defendant Confederated Salish and Kootenai Tribes.

Jeremiah D. Weiner, 1539 Eleventh Avenue, Helena, MT 59601. Of Attorneys for Intervenor-Defendant State of Montana.

Lindsay M. Thane, Aukjen Ingraham, and Lawson E. Fite, SCHWABE, WILLIAMSON & WYATT, P.C., Pacwest Center, 1211 SW Fifth Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Intervenor-Defendant Inland Ports and Navigation Group.

Raúl R. Labrador, Attorney General, OFFICE OF THE ATTORNEY GENERAL, STATE OF IDAHO; Joy M. Vega, Cherese D. McLain, Marshall W. Toryanski, and Rowdy J. Keller, Deputy Attorneys General, OFFICE OF THE ATTORNEY GENERAL NATURAL RESOURCES DIVISION, P.O. Box 83720, Boise, ID 83720. Of Attorneys for Intervenor-Defendant State of Idaho.

Julie A. Weis and Christopher T. Griffith, HAGLUND KELLEY LLP, 2177 SW Broadway, Portland, OR 97201; William K. Barquin, KOOTENAI TRIBE OF IDAHO, Portland Office, 1000 SW Broadway, Suite 1060, Portland, OR 97205. Of Attorneys for Intervenor-Defendant Kootenai Tribe of Idaho.

Matthew A. Schroettnig, 825 NE Multnomah Street, Suite 1135, Portland, OR 97232. Of Attorneys for Intervenor-Defendants Northwest Irrigation Utilities and Northwest Requirements Utilities.

David J. Cummings, NEZ PERCE TRIBE, OFFICE OF LEGAL COUNSEL, P.O. Box 305, Lapwai, ID 83540; Geoffrey M. Whiting ATTORNEY AT LAW, P.O. Box 591, Joseph, OR 97846; Jane G. Steadman, KANJI & KATZEN, PLLC, 811 1st Ave., Suite 640, Seattle, WA 98104. Of Attorneys for *Amicus Curiae* Nez Perce Tribe.

PAGE 3 – OPINION AND ORDER

Alison Toivola and Josh Newton, BEST BEST & KRIEGER LLP, 360 SW Bond Street, Suite 400, Bend, OR 97702. Of Attorneys for *Amicus Curiae* Confederated Tribes of the Warm Springs Reservation of Oregon.

Bob Ferguson, Attorney General; Kristen K. Fitz, Senior Assistant Attorneys General, and John Heidinger and Adam L. Levitan, Assistant Attorneys General, Public Lands & Conservation Division, STATE OF WASHINGTON, OFFICE OF THE ATTORNEY Mitchell and Andrew A. GENERAL, 1125 Washington Street SE, P.O. Box 40100, Olympia, WA 98504. Of Attorneys for *Amicus Curiae* State of Washington.

Joseph R. Pitt, OFFICE OF LEGAL COUNSEL, CONFEDERATED TRIBES OF THE UMATILLA INDIAN RESERVATION, 46411 Timine Way, Pendleton, OR 97801. Of Attorneys for *Amicus Curiae* Confederated Tribes of the Umatilla Indian Reservation.

Kathryn E. Marckworth, Lead Attorney, and Jöelle C. Klein, Staff Attorney, YAKAMA NATION OFFICE OF LEGAL COUNSEL, P.O. Box 150, Toppenish, WA 98948. Of Attorneys for *Amicus Curiae* The Confederated Tribes and Bands of the Yakama Nation.

Brian C. Gruber, Beth A. Baldwin, and Anna E. Brady, ZIONTZ CHESTNUT, 2101 Fourth Avenue, Suite 1230, Seattle, WA 98121. Of Attorneys for *Amicus Curiae* Confederated Tribes of the Colville Reservation.

John Shurts, NORTHWEST POWER AND CONSERVATION COUNCIL, 851 SW Sixth Avenue, Suite 1100, Portland, OR 97204. Of Attorneys for *Amicus Curiae* Northwest Power and Conservation Council.

Román D. Hernández, CABLE HUSTON LLP, 1455 SW Broadway, Suite 1500, Portland, OR 97201; Michael B. Schon, LEHOTSKY KELLER COHN LLP, 200 Massachusetts Avenue, NW, Washington, DC 20001; Adeline K. Lambert, LEHOTSKY KELLER KOHN LLP, 940 Longley Avenue NW, Atlanta, GA 30318; Danielle K. Goldstein, LEHOTSKY KELLER COHN LLP, 3280 Peachtree Road NE, Atlanta, GA 30305. Of Attorneys for *Amicus Curiae* National Rural Electric Cooperative Association.

Harold S. Shepherd, CENTER FOR WATER ADVOCACY, P.O. Box 331, 90 West Center Street, Moab, UT 84532. Of Attorneys for *Amicus Curiae* Center for Tribal Water Advocacy.

Scott William Levy, PO Box 504, 309 Andora Lane #132, Ketchum, ID 83340. *Pro se Amicus Curiae.*

PAGE 4 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

A quarter-century ago, the NFW Plaintiffs[1] filed this lawsuit against the National Marine Fisheries Service ("NMFS").[2] ECF 1-1 (filed May 3, 2001). The NWF Plaintiffs originally sought review of a biological opinion ("BiOp") issued by NMFS in December 2000, after NMFS consulted the U.S. Army Corps of Engineers (the "Corps"),[3] the U.S. Bureau of Reclamation ("BOR"),[4] and the Bonneville Power Administration (the "BPA").[5] *Id.* By 2004, the Corps had been added as a defendant in this case. *See* ECF 502. By 2005, BOR had been added as a defendant. *See* ECF 833. The same year, the State of Oregon intervened as a plaintiff. *See* ECF 742. By 2021, the U.S. Fish and Wildlife Service ("USFWS")[6] had been added as a defendant. *See* ECF 2320. The BPA, however, never has been a defendant in this lawsuit. Instead, as more fully discussed below, BPA's actions related to the subject matter of this lawsuit have been separately and directly challenged in the Ninth Circuit by several parties here. In this Opinion and Order, the Court refers to NMFS, the Corps, BOR, and USFWS, collectively, as the "Federal Defendants," and BPA is not among them.

---

[1] Plaintiffs have changed over the years. For purposes of this Opinion and Order only, the NWF Plaintiffs are: National Wildlife Federation, Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, Sierra Club, Idaho Rivers United, Northwest Sport Fishing Industry Association, NW Energy Coalition, Columbia Riverkeeper, Federation of Fly Fishers.

[2] NMFS is a service within the National Oceanic and Atmospheric Administration ("NOAA"), which is an agency within the U.S. Department of Commerce. NMFS is sometimes referred to as "NOAA Fisheries."

[3] The Corps is part of the U.S. Army, under the U.S. Department of Defense.

[4] BOR is a bureau within the U.S. Department of the Interior.

[5] BPA is an agency under the U.S. Department of Energy.

[6] USFWS is a bureau within the U.S. Department of the Interior.

Against the Federal Defendants, Plaintiffs[7] allege violations of the Endangered Species Act regarding the management of certain salmon and steelhead (collectively, "salmonid") populations of the Columbia and Snake Rivers. In this lawsuit, environmental groups, the States of Oregon, Washington, Idaho, and Montana, eleven Native American tribes, four federal entities (NMFS, the Corps, BOR, and USFWS), and other organizations litigated in this Court the future of salmonids in the Columbia and Snake River basins as parties, intervenors, and *amici curiae*. In 2023, this case appeared to be heading toward a final resolution. At the parties' request, the Court stayed this lawsuit after the parties had signed a Memorandum of Understanding. ECF 2450; ECF 2466. On June 12, 2025, however, President Donald J. Trump withdrew the Federal Defendants from the Memorandum. Plaintiffs then filed a motion to lift the stay, which the Court granted. ECF 2493 at 2; ECF 2495. Now pending before the Court is Defendants' motion to dismiss the entirety of this lawsuit. ECF 2567. Defendants argue—for the first time— that, after 25 years and all the effort that has been expended, this Court lacks subject matter jurisdiction. For the reasons explained below, the Court denies that motion.

## STANDARDS

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States,* 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("[T]he party opposing the motion [to

---

[7] For purposes of this Opinion and Order, "Plaintiffs" refers to the NWF Plaintiffs and Intervenor-Plaintiff the State of Oregon.

dismiss] must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." (quotation omitted)). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1) (allowing a party to raise the defense of lack of subject-matter jurisdiction by motion). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1110-11 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039).

Defendants now bring a factual challenge to the Court's subject matter jurisdiction. When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012);

PAGE 7 – OPINION AND ORDER

*Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (quotation marks omitted).

## BACKGROUND

### A. The Columbia River System Operations

The Columbia River is the fourth-largest river in North America. From British Columbia, Canada, it flows more than 1,200 miles before emptying in the Pacific Ocean near Astoria, Oregon. Its largest tributary, the Snake River, stretches more than 1,000 miles from Yellowstone National Park in Wyoming to Tri-Cities, Washington. In the 1930s, Congress began funding the construction of several dams on the Columbia and Snake Rivers. Together, the fourteen federally managed structures are known as the Columbia River System ("CRS"). To manage the CRS, Congress vests discrete regulatory authority in three distinct federal agencies: the Corps, the BOR, and the BPA.

All dams in the CRS are owned and operated by either the Corps or BOR. The first CRS structure—the Bonneville Dam—was completed in 1938. To "market[ ] the power generated by" it and other "federally owned dams on the Columbia River," Congress created the BPA, an agency within the U.S. Department of Energy. *See Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1013 (9th Cir. 2007); Bonneville Project Act of 1937, Pub. L. No. 75-329, 50 Stat. 731 (codified at 16 U.S.C. §§ 832-832m). "From the 1930s through the 1960s, BPA's relatively inexpensive power costs and broad control over most of the transmission facilities in the Pacific Northwest made it the region's dominant power supplier." *Portland Gen. Elec. Co.*, 501 F.3d at 1014. In the 1970s, however, the market for power in the Pacific Northwest ballooned. *See id.* "In order to avoid an energy crisis and to redress BPA's

diminishing ability to satisfy the region's power demands, Congress enacted the [Northwest Power Act]," 16 U.S.C. §§ 839-839h ("the Act"). *Id.*

Congress gave the Administrator of the BPA authority under the Act to set BPA's energy rates. *See* 16 U.S.C. § 839e. The Act also established the Pacific Northwest Electric Power and Conservation Planning Council, which would "develop and adopt . . . a program to protect, mitigate, and enhance fish and wildlife . . . on the Columbia River and its tributaries," "[b]ecause of the unique history, problems, and opportunities presented by the development and operation of hydroelectric facilities." *See* 16 U.S.C. § 839b(h). To ensure that power prices maintained relatively consistent among the states, Congress prohibited Federal district courts from reviewing certain BPA actions taken under the Act. *See* 16 U.S.C. § 839f(e).

## B.  National Environmental Policy Act ("NEPA")

Signed into law on January 1, 1970, NEPA is a procedural law that requires Federal agencies to prepare environmental reports before contributing to certain "infrastructure projects that are built, funded, or approved by the Federal Government." *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 172 (2025). An agency must prepare an environmental impact statement ("EIS") "if there are 'substantial questions' regarding whether the agency's proposed action may have significant impacts" on the environment. *See Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 878 (9th Cir. 2022) (quoting *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 864-65 (9th Cir. 2005)).[8] "The EIS must address the significant

---

[8] *See also* 42 U.S.C. § 4336(b)(1) (explaining that an agency "shall issue" an EIS when agency proposed action "has a reasonably foreseeable significant effect on the quality of the human environment"); *id.* § 4332(2)(C) ("all agencies of the Federal Government shall . . . include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed" EIS).

Proposed actions with unknown environmental impacts do not require an EIS, but an environmental assessment. *See* 40 C.F.R. § 6.205 ("The Responsible Official must prepare an

environmental effects of a proposed project and identify feasible alternatives that could mitigate those effects." *Seven Cnty.*, 605 U.S. at 172. NEPA, however, "imposes no substantive environmental obligations or restrictions" on an agency and "does not require the agency to weigh environmental consequences in any particular way." *Id.* at 173. When an agency completes an EIS, it is required to promulgate a public record of decision ("ROD"). 40 C.F.R. § 1505.2. A ROD is "a concise public document summarizing the findings in the EIS and the basis for the [agency's] decision" based on those findings. *See* 32 C.F.R. § 651.26 (describing ROD); 40 C.F.R. § 1505.2(a)-(c). The "EIS and [ROD] . . . culminate the agencies' environmental review process" under NEPA. *Env't Def. Ctr.*, 36 F.4th at 868.

Federal infrastructure projects often call for the expertise of multiple agencies. Federal law requires that a "lead agency . . . supervise the preparation of an [EIS] if more than one Federal agency either: (1) Proposes or is involved in the same action; or (2) Is involved in a group of actions directly related to each other because of their functional interdependence or geographical proximity." 40 C.F.R. § 1501.7(a); *accord* 42 U.S.C. § 4336a(a)(1)(B) (statutorily requiring same). More than one Federal agency "may serve as a joint lead agency" to prepare an EIS, meaning that each "joint lead agency" works together to supervise the preparation of the report. *See* C.F.R. § 1501.7(b). In fact, "[t]o the extent practicable, if a proposed agency action will require action by more than one Federal agency and the lead agency has determined that it requires preparation of" an EIS, the "agencies *shall* evaluate the proposal in a single environmental document." *See* 42 U.S.C. § 4336a(b) (emphasis added). RODs also may be jointly published. *See* 40 C.F.R. § 1505.2 ("At the time of its decision [in cases requiring

environmental assessment (EA) for a proposed action that is expected to result in environmental impacts and the significance of the impacts is not known." (citation omitted)). The Court does not endeavor to map the entire regulatory scheme relevant to NEPA in this Opinion and Order.

issuance of an EIS] . . . , each agency shall prepare and timely publish a concise public record of decision or joint record of decision.").

## C. Procedural History

Here, acting as joint lead agencies, the Corps, BOR, and BPA performed a NEPA analysis based in part on preexisting NMFS BiOps.[9] *See* 2020 Columbia River Systems Operations Environmental Impact Statement Record of Decision ("2020 ROD") (describing procedural history of agencies' environmental studies and district court litigation).[10] The agencies accordingly created an EIS and a subsequent ROD about their continued operation of the CRS dams. In the 2020 ROD, each agency issued a separate decision, with the Corps and

---

[9] NMFS issued BiOps in 2014, 2019, and 2020 after the Corps, BOR, and BPA consulted with NMFS under Section 7 of the ESA. *See* 16 U.S.C. § 1536; 50 C.F.R. § 402.14(g)(5). The Court discusses briefly the interplay between the ESA and NEPA to clarify the role that each statute plays in *this* Opinion and Order, which chiefly examines the jurisdictional concerns created by joint issuance of the 2020 ROD.

Under the ESA, any Federal agency that carries out an activity that may affect an ESA-listed species or critical habitat (often called an "action agency") must perform a biological assessment. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14. If the assessment shows that an agency's action "may affect" an ESA-listed species or designated critical habitat, the action agency must consult an agency with expertise in wildlife or habitat preservation (often called a "consulting agency"), which will determine whether that the action agency is "likely to adversely affect" the listed species or its critical habitat. If the action is likely to have an adverse effect, the consulting agency will develop a BiOp. 50 C.F.R. § 402.14(g). The BiOp must include reasonably prudent alternatives to the action agency's planned activities if the consulting agency determines that the activity will jeopardize a listed species or adversely modify a critical habitat. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(g)(5).

An agency performing its substantive obligations under the ESA must also comply with the separate procedural requirements of NEPA. Indeed, "Congress specifically contemplated that an action agency discharging its duties under Section 7 of the ESA would also comply with NEPA." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 647-48 (9th Cir. 2014). Thus, the "implementation of a BiOp is a 'major Federal action [ ] significantly affecting the quality of the human environment'" that requires an agency to prepare an EIS. *Id.* at 646. To consider implementation of the 2020 BiOp, therefore, the agencies performed the NEPA process.

[10] *See* 85 Fed. Reg. 63834 (Oct. 8, 2020); *see also* ACE000068151 (same).

---

BOR pledging to operate the CRS dams according to the EIS's "preferred alternative" and BPA deciding to refer to the 2020 EIS for any operational changes associated with its power marketing. *See* 85 Fed. Reg. 63862 ("Corps' Decision," "Reclamation's Decision," and "Bonneville's Decision").

On January 20, 2021, the NWF Plaintiffs filed their eighth supplemental complaint in this then-two-decade-long environmental lawsuit over the management of the CRS and its impact on Oregon's salmonid population. *See* ECF 2311. On March 4, 2021, Intervenor-Plaintiff State of Oregon filed its fifth supplemental complaint. *See* ECF 2325. On August 18, 2021, the NWF Plaintiffs filed their corrected eighth supplemental complaint. *See* ECF 2396. Plaintiffs alleged that the 2020 EIS and 2020 ROD and acts and omissions of the Corps and BOR violate NEPA and the Administrative Procedure Act, ("APA") and that the 2020 ROD also violates the Endangered Species Act ("ESA"). *See* ECF 2325 at 2-3; ECF 2396 ¶ 6. Plaintiffs also asserted that the 2020 BiOp violates the APA and ESA. ECF 2325 at 3; ECF 2396 ¶ 152. Plaintiffs sued only NMFS, the Corps, and BOR, however, and explained that "BPA is not named as a defendant . . . because jurisdiction to review final action by BPA lies in the Ninth Circuit." ECF 2396 ¶ 5 n.2; *see also* ECF 2325 ¶ 2(b) n.1 (same).[11]

## DISCUSSION

Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Supplemental Complaints for Lack of Jurisdiction. ECF 2567. In the Motion, filed nearly five years after Plaintiffs' supplemental complaints, Defendants argue that this Court lacks subject matter

---

[11] Plaintiff National Wildlife Federation accordingly sued BPA in the Ninth Circuit. *See Pac. Coast Fed'n of Fishermen's Assns. v. BPA*, No. 20-73761 (9th Cir. filed Dec. 23, 2020).

jurisdiction because Plaintiffs' challenges to the agencies' ROD and NMFS's BiOp[12] implicate

the Northwest Power Act's exclusive jurisdiction provision. Alternatively, Defendants argue that

Plaintiffs' suit challenges final agency actions that are "inextricably intertwined" with BPA's

final agency actions. *See, e.g.*, *Am. Bird Conservatory v. FCC*, 545 F.3d 1190, 1193 (9th

Cir. 2008). Neither argument is persuasive.

## A.  The Northwest Power Act (the "Act")

The Act streamlined judicial review of BPA action and vested in the U.S. Court of

Appeals for the applicable region exclusive jurisdiction over:

> Suits to challenge the constitutionality of this chapter, or any
> action thereunder, final actions and decisions taken pursuant to this
> chapter by the Administrator or the Council, or the implementation
> of such final actions, whether brought pursuant to this chapter, the
> Bonneville Project Act,[13] the Act of August 31, 1964,[14] or the
> Federal Columbia River Transmission System Act[15] . . . .

16 U.S.C. § 839f(e)(5) (internal citations cleaned up; moved to footnotes). "Suits challenging

any other actions under this chapter shall be filed in the appropriate court." *Id.*

---

[12] The Ninth Circuit has already rejected the argument that it has any supplemental jurisdiction over challenges to an NMFS BiOp when reviewing a petition against BPA under the Act. *See Aluminum Co. of Am. v. Adm'r, Bonneville Power Admin.*, 175 F.3d 1156, 1160 (9th Cir. 1999). For this reason, the Court need not further address Defendants' argument that the Court lacks jurisdiction to adjudicate claims over NMFS's BiOp because it is a "predicate action" to a BPA decision subject to the exclusive jurisdiction of the Ninth Circuit. Thus, the Court analyzes only whether Plaintiffs' NEPA, APA, and ESA claims against the Corps and BOR's decisions, as memorialized in the 2020 ROD, trigger the exclusive jurisdiction provision, either by the plain language of the Act or the "inextricably intertwined" test.

[13] Bonneville Project Act, 16 U.S.C. §§ 832 *et seq.*

[14] Pacific Northwest Consumer Power Preference; Reciprocal Priority in Other Regions, 16 U.S.C. §§ 837-837h.

[15] Pacific Northwest Federal Transmission System Act, 16 U.S.C. §§ 838 *et seq.*

Defendants argue that the Act's exclusive jurisdiction provision applies here. They contend that the 2020 ROD is a "joint decision" and that Plaintiffs' ESA, NEPA, and APA claims against the Corps and BOR attack that joint decision. Thus, argue Defendants, because BPA is an agency participating in the joint decision, the Act's exclusive jurisdiction provision applies here to Plaintiffs' claims against the Corps and BOR. Defendants are mistaken.

The 2020 ROD is not a joint "decision" in the manner described by Defendants. Although the agencies participated in the NEPA process together, they operate under discrete grants of statutory authority, making their actions—and their decision-making with respect to their implementations of the NMFS BiOps, as shown in the 2020 ROD—separate. Neither the Corps nor BOR has statutory authority under the Act or the four other statutes that Congress enumerated therein. Thus, this lawsuit does not challenge any implementation of any final agency action taken under the Act, so the exclusive jurisdiction provision of that law does not apply here.

### 1. The Exclusive Jurisdiction Provision

The text of the exclusive jurisdiction provision focuses on the "nature of the conduct challenged," not the label given to the cause of action. *Pub. Util. Dist. No. 1 of Clark Cnty. v. Johnson*, 855 F.2d 647, 649 (9th Cir. 1988). Thus, the Ninth Circuit has instructed that the provision applies only when a suit challenges: "(1) the constitutionality of the Act; (2) the constitutionality of any action taken pursuant to the Act's statutory authority; (3) final actions or other decisions by BPA or the Northwest Power Planning Council, taken pursuant to the Act's statutory authority; and (4) the implementation of final actions by BPA or the Northwest Power Planning Council, taken pursuant to the authority of any of four enumerated federal power statutes." *Pac. Power & Light Co. v. BPA*, 795 F.2d 810, 814 (9th Cir. 1986). "The proper

PAGE 14 – OPINION AND ORDER

inquiry focuses on the agency being attacked and whether the factual basis for that attack is an agency action authorized by the Act." *Id.* at 816.

### 2.  No Joint Substantive Agency Action

Defendants' main argument for invoking the exclusive jurisdiction provision is that the 2020 ROD is a "joint" decision. Although the agencies engaged in a single NEPA process, NEPA is a "purely procedural" law." *See Seven Cnty.*, 605 U.S. at 177 (citation omitted). Thus, Defendants' focus on that joint procedural mechanism is misplaced. That the Corps, BOR, and BPA jointly published the 2020 ROD does not mean that these agencies jointly promulgated any regulation or engaged in joint final agency action. They did not.

Substantively, the agencies could not—and did not—act jointly because they do not share a common source of statutory authority to perform final agency action. The 2020 ROD reflects and confirms this reality by containing separate decisions by each agency. *See* 85 Fed. Reg. 63862 ("Final Agency Findings," listing "Corps' Decision," "Reclamation's Decision," and "Bonneville's Decision" under *separate* headings). Thus, although BPA's final agency action ("taken pursuant to the Northwest Power Act," *see id.* at 63870) may only be challenged in the Ninth Circuit under the Act's exclusive jurisdiction provision, the Corps' and BOR's final agency actions (taken under other legislative grants) may properly be challenged in this Court, as they have been for the past 25 years.

### a.  Collaboration During NEPA Process

The agencies "worked together to develop [the] EIS" and "issued [a] joint Record of Decision." *Id.* at 63834. As the agencies explain in the 2020 ROD, however, they were required

by Executive Order to create those joint NEPA reports for the CRO. *See id.*[16] In March 2018, the Office of Management and Budget issued a memorandum to the heads of all federal agencies titled, "One Federal Decision Framework for the Environmental Review and Authorization Process for Major Infrastructure Projects under Executive Order 13807." *Id.* Under E.O. 13807, "[w]ith respect to the applicability of NEPA to a major infrastructure project, the . . . agencies for each major infrastructure project *shall all record any individual agency decision* in one [ROD] . . . coordinated by the lead Federal agency." 82 Fed. Reg. 40466 (Aug. 15, 2017) (emphases added).[17] The 2020 ROD complies with that directive: the Corps, BOR, and BPA each recorded and explained their individual agency decisions. *See* 85 Fed. Reg. 63834 (Section 1.1 Decision Summary), 63862 (Section 6. Final Agency Findings).

That the agencies published the EIS and ROD jointly also is irrelevant to their interdependence because "NEPA, as a procedural device, does not work a broadening of the agency's substantive powers." *S. Coast Air Quality Mgmt. Dist. v. FERC*, 621 F.3d 1085, 1092 (9th Cir. 2010) (quoting *Nat. Res. Def. Council, Inc. v. U.S. EPA*, 822 F.2d 104, 129 (D.C. Cir. 1987)). *See also Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 912 (D.C. Cir. 2024) ("NEPA contains nothing close to the sort of clear language Congress typically uses to confer rulemaking authority." (citation omitted)). In other words, "NEPA does not expand the jurisdiction of an agency beyond that set forth in its organic statute," *S. Coast Air Quality*, 621 F.3d at 1092 (quoting *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 188 (3d Cir. 1983) (brackets omitted)), but operates as "an environmental overlay on the statutory responsibilities of

---

[16] Although the agencies did not mention it in the 2020 ROD, they are also statutorily required to create one EIS whenever practicable. *See* 42 U.S.C. § 4336a(b).

[17] By federal regulation, the presence of joint lead agencies on an ROD does not mean that the agencies are involved in "joint action." *See* 40 C.F.R. § 1501.7(a).

PAGE 16 – OPINION AND ORDER

all federal agencies," *Gov't of Province of Manitoba v. Norton*, 398 F. Supp. 2d 41, 52 n.11 (D.D.C. 2005) (quoting DANIEL R. MANDELKER, NEPA L. & LITIG. § 1.1 (2d ed. 2004)). Agencies "are creatures of statute, bound to the confines of the statute that created them" and any other powers vested in them by Congress. *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1135 (9th Cir. 2001).

Thus, the Corps and BOR's decisions in the 2020 ROD to operate their CRS projects in a certain manner must be authorized by some statutory text that allows them to operate those CRS projects. So too for BPA's pledge to market and transmit the CRS projects' power consistent with the 2020 EIS. Defendants appear to agree that agencies' environmental reviews under NEPA are only "component[s] of" the agencies' broader exercise of their statutory authorities." *See* ECF 2626 (citing *Seven Cnty.*, 605 U.S. at 185).[18] Because BPA acted under the Act, Defendants argue that the exclusive jurisdiction provision of the Act applies. *See* ECF 2567 at 16.[19] In so arguing, Defendants essentially acknowledge that the question relevant to jurisdiction is what *substantive* statutory authority the agencies acted under in the 2020 ROD. Their NEPA collaboration is irrelevant to whether the agencies acted "jointly," or whether the exclusive jurisdiction provision applies to lawsuits challenging only BPA's actions and decisions. The Court agrees that, to determine whether the Act's exclusive jurisdiction provision applies under the "proper inquiry," it must identify the challenged agency action and under what

---

[18] Consistent with that understanding, the Supreme Court recently explained that "the adequacy of an EIS is relevant only to the question of whether an agency's final decision . . . was reasonably explained." *Seven Cnty.*, 605 U.S. at 180. Because "NEPA imposes no *substantive* constraints on the agency's ultimate decision," the "only role for a court" in a NEPA challenge "is to confirm that the agency has addressed environmental consequences and feasible alternatives to the relevant project." *Id.* (emphasis in original, quotation omitted).

[19] It does, but only in a lawsuit challenging BPA actions and final decisions.

statute that action was authorized. *See Pac. Power*, 795 F.2d at 816. *See also Nw. Res. Info. Ctr., Inc. v. Nat'l Marine Fisheries Serv.*, 25 F.3d 872, 875 (9th Cir. 1994) ("*NRIC I*") ("Jurisdiction depends upon the kind of action taken."). The Court turns to that issue next.

### b.  Statutory Authority

In the 2020 ROD, the agencies identified the statutes under which they were acting. According to the agencies, these statutes "define the full extent of the agencies' abilities to operate, maintain, and configure the CRS." 85 Fed. Reg. 63837. As for the Corps' and BOR's ability to operate the CRS projects, Congress specifically authorized "the construction and operation of each CRS project" by statute.[20] *See id.* None of these project-specific laws, however, grant any affirmative powers to BPA. The 2020 ROD also lists "general agency statutes [that] guide the agencies' operation, maintenance, and configuration of the CRS," including the Bonneville Project Act of 1937 (BPA), the Reclamation Project Act of 1939

---

[20] As explained by the agencies in the 2020 ROD:

> Congress authorized the first two projects, Bonneville and Grand Coulee, in the Rivers and Harbors Act of 1935, Pub. L. No. 74-409. Congress then authorized Hungry Horse in 1944 under Pub. L. No. 78-329; McNary and the four lower Snake River dams (Ice Harbor, Lower Monumental, Little Goose and Lower Granite) in the River and Harbor Act of 1945, Pub. L. No. 79-14; and Chief Joseph in the Rivers and Harbors Act of 1946, Pub. L. No. 79-525. Congress authorized the remaining CRS projects in the Flood Control Act of 1950, Pub. L. No. 81-516, except for Dworshak, which Congress authorized in the Flood Control Act of 1962, Pub. L. No. 87-874.

85 Fed. Reg. 63837.

(BOR),[21] and the Flood Control Act of 1944 (the Corps).[22] *Id.* Generally applicable to all three agencies, the 2020 ROD identified the ESA, the Clean Water Act ("CWA"), and the National Historic Preservation Act. *Id.*

Agencies engaging in "joint action" operate under the same statutory authority. In *Coeur Alaska, Inc. v. Southeast Conservation Council*, 557 U.S. 261 (2009), for example, the Supreme Court reviewed joint final agency action by the Corps and the Environmental Protection Agency ("EPA"). *Id.* at 276 (citing 40 C.F.R. § 232.2). In that case, the agencies shared duties under the CWA—one section required the Corps to issue permits; another section required EPA to issue permits. *See id.* at 266. To clarify those permitting roles, the agencies jointly promulgated regulations defining CWA terms. *See id.* Although, as here, the agencies made joint "published statements," *id.* at 278, they also participated jointly in formal rulemaking processes, including the notice-and-comment process, *see id.* at 289. For example, the agencies responded to comments by stating: "The [Corps] and [EPA] are promulgating a final rule to reconcile our [CWA] section 404 regulations . . . . in which we jointly proposed to amend our respective regulations so that both agencies would have identical definitions of these key terms." 67 Fed. Reg. 31129 (May 9, 2002). The joint rulemaking process led the Supreme Court to describe the resultant regulation as a "joint regulation," such that the terms therein were those that "[t]he Corps and the EPA have together defined." *Coeur Alaska*, 557 U.S. at 275, 268.

---

[21] Pub. L. No. 76-260. Guides Reclamation's operation of its two CRS projects (Grand Coulee and Hungry Horse).

[22] Pub. L. No. 78-534. Authorizes the sale of power from Corps dams, defines the Corps' role in flood risk management at non-Corps dams, and establishes recreation as a purpose of Corps projects.

Defendants argue that the agencies act under the same statutory authority here, because Congress requires the three agencies to manage the CRS "consistent with the purposes" of the Act. *See* 16 U.S.C. § 839b(h)(11)(A). Indeed, the agencies quoted a portion of the Act in the 2020 ROD, noting that the statute's obligations "[o]verlay[ ] [the Corps' and BOR's] specific project laws." 85 Fed. Reg. 63837. That provision of the Act applies not only to the BPA Administrator, but also to all "other Federal agencies responsible for managing, operating, or regulating Federal or non-Federal hydroelectric facilities located on the Columbia River or its tributaries." 16 U.S.C. § 839b(h)(11)(A). Under the Act, those agencies "shall":

> (i)    exercise such responsibilities consistent with the purposes of this chapter and other applicable laws, to adequately protect, mitigate, and enhance fish and wildlife, including related spawning grounds and habitat, affected by such projects or facilities in a manner that provides equitable treatment for such fish and wildlife with the other purposes for which such system and facilities are managed and operated;
>
> (ii)    exercise such responsibilities, taking into account at each relevant stage of decisionmaking processes to the fullest extent practicable, the program adopted by the Council under this subsection. If, and to the extent that, such other Federal agencies as a result of such consideration impose upon any non-Federal electric power project measures to protect, mitigate, and enhance fish and wildlife which are not attributable to the development and operation of such project, then the resulting monetary costs and power losses (if any) shall be borne by the Administrator in accordance with this subsection.

*Id.* Defendants also argue that the "laws applicable to the [CRS], are all intended to be construed in a consistent manner," to "ensure the Pacific Northwest of an adequate, efficient, economical, and reliable power supply" and "protect, mitigate and enhance the fish and wildlife, including related spawning grounds and habitat, of the Columbia River and its tributaries." 16 U.S.C. § 839(2), (6).

These provisions no doubt constrain the Corps and BOR, but Federal agencies are creatures of statute that possess only those powers that Congress confers upon them. *U.S. Fid. & Guar. Co.*, 641 F.3d at 1135. Further, "an agency literally has no power to act, . . . unless and until Congress confers power upon it." *See North Carolina v. EPA*, 531 F.3d 896, 992 (D.C. Cir. 2008) (holding that the EPA lacked authority in that case because agencies are "creature[s] of statute," and "if there is no statute conferring authority, a federal agency has none" (quotation omitted)). That principle is determinative here: the Corps and BOR cannot act "pursuant to" the Act or "pursuant to the authority of any of four enumerated federal power statutes" because none of those statutes give the agencies any *power to act*.[23] *See Pac. Power*, 795 F.2d at 814. Accordingly, Plaintiffs' claims against the Corps and BOR do not challenge any final actions to which the exclusive jurisdiction provision of the Act applies. *See Pac. Power*, 795 F.2d at 814.

### 3.  Ninth Circuit Law

In *NRIC I*, the Ninth Circuit implicitly endorsed the jurisdictional split the Court follows here. *See* 25 F.3d at 875. At the district court, Northwest Resources Information Center ("NRIC") sued NMFS, the Corps, BOR, *and BPA* in the Western District of Washington, alleging violations of both the ESA and the APA. *See Nw. Res. Info. Ctr. v. Nat'l Marine Fisheries Serv.*, 818 F. Supp. 1399, 1400 (W.D. Wash. 1993). BPA moved to dismiss for lack of subject matter jurisdiction. *Id*. The district court granted BPA's motion, and the Ninth Circuit affirmed, citing the exclusive jurisdiction provision of the Act. *Id.* at 874-75.

---

[23] This is not to suggest that the Corps or BOR have no duties under the Act. The Court sees no reason why the agencies could not be sued under the APA for failing to exercise their responsibilities consistent with the purposes of the Act or with the program adopted by the Council. But being constrained by the Act is different than being empowered by it. For the exclusive jurisdiction provision to apply, Congress must first grant the agency power to act, and the agency must exercise it. Neither happened here.

In dismissing only BPA, however, and not any other defendant, the district court explained:

> BPA's action must stand or fall on the reasonableness of its decisions based upon its administrative record; the reasonableness of the other agencies final actions also must be reviewed against their own records. Plaintiffs and the Public Power Council can maintain their lawsuit against NMFS, COE and BOR in the District Court, while challenging the actions of the BPA in the Ninth Circuit.

*Nw. Res. Info. Ctr.*, 818 F. Supp. at 1403. In affirming that decision and its jurisdictional divide, the Ninth Circuit directly addressed the jurisdictional awkwardness created by the Act:

> The appellants contend that the result will be an irrational bifurcation of their suit, with some of their claims against some of the defendants remaining in the district court and the rest needing to be brought in this court. It is no doubt true that the jurisdictional provision works against the plaintiffs. But the jurisdictional allocation was made by Congress.

*NRIC I*, 25 F.3d at 875 (citation omitted).

Indeed, perverse outcomes would occur if the Act had jurisdictional penumbras like Defendants suggest. *Contra Hellon & Assocs., Inc. v. Phx. Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("[T]o the extent that statutes can be harmonized, they should be."). Imagine, as Defendants urge, that the Corps' and BOR's NEPA collaboration with BPA was sufficient to strip the district court of jurisdiction over every claim touching that NEPA process. In that world, it would be unclear if *any court* would have jurisdiction over Plaintiffs' claims against the Corps and BOR. Under the plain text of the Act, a U.S. Court of Appeals would have exclusive jurisdiction over a challenge to BPA's actions. But only "the district courts shall have supplemental jurisdiction," 28 U.S.C. § 1367, and this district court cannot locate any other statutory basis for a federal appellate court to hear in the first instance Plaintiffs' NEPA, ESA, or

PAGE 22 – OPINION AND ORDER

APA challenges to actions taken by the Corps or BOR.[24] Congress intended the district courts to retain jurisdiction over these claims, even if they in some way impact BPA.

### 4. No Vacatur of BPA Action

Finally, Defendants argue that the exclusive jurisdiction provision is triggered by Plaintiffs' request to vacate the 2020 ROD. *See* ECF 2325 at 59 ¶ 9; ECF 2396 at 72 ¶ 7. At the outset, "the type of relief requested does not bear on whether this court has subject matter jurisdiction." *Nat'l Wildlife Fed'n v. Cosgriffe*, 21 F. Supp. 2d 1211, 1218 (D. Or. 1998) (rejecting argument from agency that the court lacked subject matter jurisdiction to enter an injunction compelling comprehensive management plan for Columbia River tributaries). *See also* 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1255 (4th ed. 2025) (a prayer is not considered to be part of a complaint). Thus, even if a plaintiffs' prayer requested relief beyond the Court's jurisdiction to provide, the request contained in that *prayer* would not deprive the Court of subject matter jurisdiction over the entire lawsuit.

Here, the Court could vacate the Corps' or BOR's decisions in the 2020 ROD without affecting any final agency action taken by BPA. The Court cannot issue an order against entities that are not parties to a suit pending before it. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969). Thus, any relief entered by the Court necessarily must be limited to NMFS, the Corps, BOR, and USFWS. This is precisely the relief that Plaintiffs requests in the operative pleadings. *See* ECF 2325 at 59 ¶ 9 ("Vacate the 2020 ROD and *remand* [the 2020 EIS] *to the Corps and BOR*"); ECF 2396 at 72 ¶ 7 (same). Indeed, the effect of a vacatur is to restore

---

[24] In fact, available Ninth Circuit precedent suggests that the Courts of Appeals will rightly decline to extend that sort of extra-statutory supplemental jurisdiction. *See Aluminum Co. of Am.*, 175 F.3d at 1160 (declining to hear challenges to NMFS BiOp when reviewing BPA petition in first instance under Northwest Power Act).

the *status quo* before the invalid action took effect, requiring the agency to "initiate another . . . proceeding if it would seek to confront the problem anew." *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854 (D.C. Cir. 1987). If the Court were to vacate and remand the 2020 ROD and EIS, respectively, to the Corps and BOR for those agencies to reconsider and re-promulgate their own decisions, the 2020 ROD and EIS would still be in effect with respect to BPA.[25]

Judicial review of NEPA actions lends itself to just that sort of agency-by-agency lawfulness determination. A court may vacate an agency decision under NEPA only if it is arbitrary and capricious, an abuse of discretion, or the agency has failed to satisfy the procedural requirements of the statute. *Myersville Citizens for a Rural Cmty., Inc. v. FERC*, 783 F.3d 1301, 1323 (D.C. Cir. 2015). To determine whether vacatur of a particular agency's action is appropriate, a court compares the challenged agency's actions to its statutory authority and NEPA obligations. *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) ("Both [agencies'] power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires."); *cf. Ctr. for Food Safety v. Regan*, 56 F.4th 648, 659 (9th Cir. 2022) (holding that, when an agency "does not comply" with a statute's "consultation requirement, the agency effectively exceeds its authority"). When, as here, the agencies act under different sources of statutory authority, separately explain their reasoning, and issue unique decisions, it is easy to see how that relief may be appropriate against one agency but not another.

---

[25] The Court also could tailor relief by refusing to order anything that would require agency action by BPA. Defendants argue, for example, that Plaintiffs ask the Court to impose obligations on BPA, such as requesting BPA's analysis on how much alternative systems would affect system reliability. As explained, however, the Court cannot—and does not plan to—enjoin any non-parties, including BPA.

PAGE 24 – OPINION AND ORDER

Although Defendants argue that this sort of piecemeal vacatur is uncommon, "[i]t is a routine feature of severability doctrine that a court may invalidate only some applications of indivisible text, so long as the 'valid applications can be separated from invalid ones.'" *Nat'l Res. Def. Council v. Wheeler*, 955 F.3d 68, 81-82 (D.C. Cir. 2020) (quoting Fallon, *et al.*, HART & WECHSLER'S: THE FEDERAL COURTS & THE FEDERAL SYSTEM 170 (7th ed. 2015)). Indeed, the Supreme Court has urged district courts to consider partial vacatur of agency action where such a remedy is sufficient to redress the plaintiffs' injuries. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010). Thus, federal courts may—and regularly do—enter partial vacatur, even when the text of the agency rule or action does not expressly invite such division. *See, e.g.*, *Nat'l Res. Def. Council*, 955 F.3d at 82-83 (discussing holding in *Mexichem Fluor, Inc. v. EPA*, 866 F.3d 451 (D.C. Cir. 2017)); *GPA Midstream Ass'n v. U.S. Dep't of Transp.*, 67 F.4th 1188, 1201-02 (D.C. Cir. 2023); *Neighbors of the Mogollon Rim, Inc. v. U.S. Forest Serv.*, 2023 WL 3267846, at *4 (9th Cir. May 5, 2023) (unpublished) (citing *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843-44 (9th Cir. 2007)).

## B.  The "Inextricably Intertwined" Test Is Inapplicable

Defendants also argue that Plaintiffs' claims are "inextricably intertwined" with BPA's final agency action and, therefore, the exclusive jurisdiction provision is triggered. *See* ECF 2567 at 17-26 ("As a factual and legal matter, the Corps' and Reclamation's actions are inextricably intertwined with Bonneville's final action and decision."). Whether the agencies' actions are, as a factual matter, "inextricably intertwined" with BPA's actions is irrelevant—that is not the test. Rather, the Ninth Circuit directs district courts to apply the narrower jurisdictional statute when "a plaintiff's claims are inextricably intertwined *between two statutes* . . . and those statutes contain conflicting jurisdictional provisions." *Ctr. for Bio. Diversity v. EPA*, 847 F.3d 1075, 1089 (9th Cir. 2017) (emphasis added, citing *Am. Bird*, 545 F.3d at 1194-95); *see also Ctr. for*

*Bio. Diversity v. Bernhardt*, 982 F.3d 723, 733 (9th Cir. 2020) (same). The test is inapplicable where, as here, a plaintiff's claims are not caught between two jurisdictional statutes.

The Ninth Circuit developed the inextricably intertwined test in *American Bird*. *See Ctr. for Bio. Diversity*, 847 F.3d at 1089 ("When a plaintiff's claims are inextricably intertwined . . . *American Bird* requires plaintiffs to comply with the more specific statute."). In that case, the Ninth Circuit reviewed whether a district court had subject matter jurisdiction over a plaintiff's ESA claim against the Federal Communications Commission ("FCC"). 545 F.3d at 1192-93. Although the ESA provided for general jurisdiction in the district courts, the Ninth Circuit held that it had exclusive jurisdiction over the suit because two other statutes "plainly require[d] that any suit challenging a 'final order' made by the FCC must be brought in the appropriate federal court of appeals." *Id.* at 1193. The FCC regulations reviewable only by the Ninth Circuit were "inextricably intertwined with the FCC's obligation[s]" under NEPA, thus the court explained that the narrower jurisdictional statutes (governing the regulations) must control over the broader jurisdictional grant (governing NEPA claims). *See id.* at 1193-94. In so holding, the court relied on *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989) ("*Yeutter*"), in which a plaintiff attempted to sue the Federal Energy Regulatory Commission ("FERC") in a district court. *See Am. Bird*, 545 F.3d at 1194 (citing *Yeutter*, 887 F.2d at 911). The Ninth Circuit also relied on *Turtle Island Restoration Network v. U.S. Department of Commerce*, 438 F.3d 937 (9th Cir. 2006), in which the plaintiffs sued NMFS over fisheries regulations. *Am. Bird*, 545 F.3d at 1194 (citing *Turtle Island*, 438 F.3d at 938).

Defendants rely on *American Bird*, *Yeutter*, and *Turtle Island* to argue that this Court must consider whether the challenged actions of the Corps and BOR were "inextricably intertwined" with the actions of BPA, as well as whether the practical effect of proceeding in the

PAGE 26 – OPINION AND ORDER

district court was to attack BPA's decisions. *See* ECF 2567 at 17-20. These cases, however, do not compel that result. Plaintiffs' claims—raised under NEPA, the APA, and the ESA—challenge Corps and BOR actions promulgated under the project-specific laws governing the CRS dams, none of which contain a jurisdiction-limiting provision. *See supra* Part A.2.b. By contrast, the plaintiffs in *American Bird* sued the FCC and challenged the process by which it approved communication towers—the very agency and regulations subject to the exclusive jurisdiction provision found in the Communications Act. *See* 545 F.3d at 1193. *Yeutter* and *Turtle Island* also dealt with direct challenges to the actions of the agency subject to the exclusive jurisdiction provision. *See Yeutter*, 887 F.2d at 910-11 (lawsuit challenged conditions of a FERC-issued license; Federal Power Act provided exclusive jurisdiction to courts of appeals over substantive modifications of FERC licenses); *Turtle Island*, 438 F.3d at 944-45 (explaining that through a NEPA and APA lawsuit, the plaintiff challenged regulations promulgated under the Magnuson Act; thus, the Magnuson Act's statute of limitations applied). The lawsuit now pending before this Court, however, does not do this.

These cases also confirm that the plain text of the Act—not vague principles of interconnectedness—governs the Court's jurisdictional inquiry. *See Yeutter*, 887 F.2d at 910 ("To determine whether the district court acted properly in concluding that it lacked subject matter jurisdiction, we must first look to the relevant statutory language."); *see also Am. Bird*, 545 F.3d at 1193 ("The beginning point of statutory interpretation must be the language of the statute." (quotation omitted)). For these reasons, the Act's exclusive jurisdiction provision does not apply in this case.

## CONCLUSION

The Court DENIES Defendants' Motion to Dismiss, ECF 2567.

**IT IS SO ORDERED**.

DATED this 26th day of February, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge